# *Institute for Child and*
# *Family Psychiatry, Inc.*

CLERK
US DISTRICT &
BANKRUPTCY COURTS

1306 Midwood Place
Silver Spring, MD 20910
(301) 588-3597

2014 MAR 30  P 4 44

Ms. Cathy Russell
FSI/EX
4000 Arlington, Blvd.
Arlington, VA  22004
3/10/12

*Medical cert freate
provided to the Agency —
the Agency refused during
two weeks to process Plaintiff's
leave request by pretending
this medical certificate
has too much in French
even if it had all information requested
by the Agency — FSI Exec. Director
Cathy Russell refused to receive it
by mail by pretending the letter has too*

RECEIVED

REF: TIEMOKO COULIBALY
DOB: 01/25/65
DOR: 03/10/12

Dear Ms. Russell,

Mr. Tiemoko Coulibaly is a forty seven year old male, State Department employee for the past thirteen years. Mr. Coulibaly reports a history of good employment performance evaluations over the past twelve years as a French teacher at the Foreign Service Institute.
Mr. Coulibaly has a PH.D in History and Political Science from Sorbonne University of Paris, France.

Mr. Coulibaly reported that he has been under severe stress, discrimination, harassment and retaliation against him by his supervisor, Ms. Laura Fyfe; who compared him to her former husband who was also from the Ivory Coast of Africa. Mr. Coulibaly detailed extreme harassment, character and professional performance and reputation assassination attempts by Ms. Fyfe. Mr. Coulibaly feels that she has created an extremely hostile work environment for him.

Mr. Coulibaly felt forced to file an Equal Employment Opportunity complaint (case number DOS-F-025-12).
Mr. Coulibaly reported that the harassment, hostility, retaliation, favoritism and attempts to fire him increased greatly after he filed his EEO complaint.

Mr. Coulibaly has repeatedly requested a supervisor change and transfer from the French Management to no avail.

Mr. Coulibaly initiated treatment for severe stress prior to his appointment in my office on February 27, 2012. Mr. Coulibaly was prescribed medication at that time and referred to see a mental health professional.

Mr. Coulibaly's symptoms are severe anxiety, depression, sleep and appetite disturbance, difficulties with focus and concentration, fears of losing his ability to support his children and

*Give Us A Chance*

wife because of unfair labor practices beyond his control, lowered self esteem, lowered self-confidence, isolation and withdrawal from family and friends, with feelings of helplessness and hopelessness. There is noted irritability towards his children and wife, decreased motivation and sexual interest, with resultant guilt feelings. There is noted hyper- vigilance and preoccupation. There was no elicited evidence of mental health issue prior to his current traumatic employment situation.

Mr. Coulibaly is currently in twice per week, supportive individual therapy with anti-depressant medication (i.e. Zoloft) and sleep medication.

It is not recommended for Mr. Coulibaly to attempt to function under the same supervisor, in the same hostile work environment. The potential for an exacerbation of his symptoms in that situation would be very high.

It is recommended that Mr. Coulibaly not return to work prior to March 26, 2012. It is not recommended for Mr. Coulibaly to return to the same hostile work environment and/or Supervisor.

Mr. Coulibaly's therapy and medication management will continue at this time.

**Diagnoses**: Depression, DSM-IV: 300.40; Post Traumatic Stress Disorder, (Moderate Symptoms), DSM-IV: 309.81.

If there are further questions please feel free to contact me.

Sincerely,

Willie T. Hamlin, M.D.
Child and Adult Psychiatrist
Medical Director

*(handwritten, left margin, rotated):* attached the GEO affidavit attached the day the Plaintiff was terminated

*(handwritten, far left margin, rotated):* Plaintiff's supervisor Pholipe Cuilolo affirmed in a by

United States Department of State

CLERK
US DISTRICT &
BANKRUPTCY COURTS

2014 MAR 30  P 2:51

RECEIVED

*Foreign Service Institute*

George P. Shultz National Foreign Affairs Training Center
*Washington, D. C. 20522-4201*

*April 2, 2012*

*(handwritten):* Termination letter during trial period (misconduct and leave issue)

Mr. Tiemoko Coulibaly
2013 Grace Church Road
Silver Spring, MD 20910

Dear Mr. Coulibaly:

This is to advise you that your limited Excepted Service appointment with the Foreign Service Institute will be terminated, during your trial period, on April 6, 2012.  This action is being taken as a result of your unacceptable conduct.

You have displayed unacceptable conduct that has adversely affected the operations of the French Section, European and African Languages.  Specifically, your inappropriate interactions with your supervisors, and your failure to follow established procedures for requesting leave.

Please come to FSI/EX/HR, Room F2210 on or before April 6, 2012 to sign separation papers, turn in your ID badges, and receive materials and information regarding your benefits.

You will receive a SF-50, Notification of Personnel Action, regarding this termination.  Since this document will verify your service at the Institute, it should be kept in a safe place in the event that the U.S. Government employs you in the future.  If you are entitled to receive a lump-sum payment for any annual leave balance at the time of separation, you should receive payment from the Department's payroll office approximately 6 – 8 weeks after the termination is effected.

You may also be eligible to receive unemployment benefits.  (See the attached SF-8 "Notice to Federal Employees About Unemployment Insurance.")  To obtain eligibility information, you should contact the local public employment service office in the state you reside.

If there is anything in this letter that you do not understand or wish to have explained in more detail, you may contact Bach Phuong Nguyen in the Human Resources Office, Foreign Service Institute on (703) 302-6813.

Sincerely,

*Catherine J. Russell*

Catherine J. Russell
Executive Director



CLERK
US DISTRICT &
BANKRUPTCY CO

2014 MAR 30  P

05/21/2012

**D.C. DEPARTMENT OF EMPLOYMENT SERVICES**
**CENTRAL ADJUDICATION BRANCH**
**P.O. BOX 23794**
**WASHINGTON, D.C. 20026**

RECEIVED

### DETERMINATION BY CLAIMS EXAMINER

**SOCIAL SECURITY NUMBER: XXX-XX-2089**   *The Agency failed to provide evidence of Misconduct*

**CLAIMANT:**

TIEMOKO COULIBALY
2013 GRACE CHURCH ROAD
SILVER SPRING, MD - 20910-0000

**EMPLOYER:**

DEPARTMENT OF THE STATE
2401 E ST NW RM H804
COLUMBIA PLAZA SA-1
WASHINGTON, DC - 20522

**ISSUE:**  Discharge for Misconduct

**REASON FOR DETERMINATION:**

The claimant stated upon filing for unemployment, he was discharged by the employer without any explanation given during his probationary period.

The District of Columbia Unemployment Compensation Act in D.C. Code, Title 51-110(b)(1), provides that an individual shall be disqualified from receiving benefits if it is found that he/she was discharged from his/her most recent employer for misconduct occurring in the course of the work.

The employer has the responsibility to provide evidence of this misconduct. In this case the employer has provided information stating the claimant was discharged during his probationary period with no additional information or documentation for initiating the separation to establish misconduct. Therefore, work related misconduct on the part of the claimant [has or has not] been established.

**DECISION:**

**Therefore the claimant listed herein is determined eligible for unemployment benefits effective 04/08/2012.**

I certify that a copy of this document was mailed to the employer and to the claimant named herein at the above addresses on 05/21/2012.   *The Agency used pretexts and false accusation to fire Plaintiff after he filed his*

YARBOROUGH APRIL
Claims Examiner

*EEO complaint*

**SEE THE ENCLOSED NOTICE OF APPEAL RIGHTS**   *and complained about Leave issues*

**United States Department of State**

*Office of Civil Rights*

CLERK
US DISTRICT & *Washington, D.C. 20520-7528*
BANKRUPTCY COURTS

2014 MAR 30 P 9 45

RECEIVED

March 23, 2012

*Leave and of health*
*issue Raised by EEO*
*(See ROI for details)*

Dr. Tiemoko Coulibaly
2013 Grace Church Road
Silver Spring, MD 20910

**RE:  EEO Case Number: DOS-F-025-12**

Dear Dr. Coulibaly:

In reference to your correspondence dated March 2, 2012, to the Office of Civil Rights (S/OCR), this is to advise you that pursuant to 29 C.F.R. § 1614.106(d), your above-referenced discrimination complaint is hereby amended to include the following allegation:

## ACCEPTED AMENDMENT

**Because of your race (African-American), color (Black, dark-skinned), national origin (Cote d'Ivorian), and reprisal (opposing discriminatory policies or practices), you were discriminated against when management required you to use sick leave and annual leave to address your health issues that resulted from the alleged discrimination.**

Your amended allegation will be forwarded to the contract investigator for consolidation and investigation with your pending complaint. Upon completion of the Report of Investigation (ROI), you will be provided a copy of the report along with an explanation of your further procedural rights.

It is essential that you notify this office in writing within 5 calendar days from receipt of this letter if you believe this letter does not correctly identify the circumstances surrounding your complaint of discrimination. Please state in your communication the specific reason(s) why you believe the issues have not been properly articulated. You may propose an alternative formulation. If we have

-2-

received nothing in writing from you within the allotted timeframe, we will proceed with an investigation consistent with the line of inquiry proposed above.

Pursuant to 29 C.F.R. § 1614.106(e)(2), your decision to amend your pending complaint with an additional allegation extends the 180-day processing time of your complaint within the earlier of 180 days after the last amendment to the complaint or 360 days after the filing of the original complaint. However, you still have the right to request a hearing from an administrative judge on the consolidated complaint any time after 180 days from the date you filed your first complaint.

Additionally, you raised an additional allegation that your request for a new supervisor was denied. This allegation does not rise to the level of an adverse action, and is therefore, not accepted as an amendment to your complaint. *See* Pleasant v. Department of Housing and Urban Development, Appeal No. 01940819 (Nov. 7, 1994). You may not appeal dismissal of this allegation until final action is taken on the remainder of the complaint. While this allegation was not accepted on its own, you may raise it with the EEO Investigator as an example of the hostile work environment claim that was accepted for investigation in the Acceptance Letter dated January 17, 2012.

Eloisa Doñé, the EEO Specialist assigned to your case, retains responsibility for the case and will be monitoring the performance of the contract investigator.

If you need information or assistance at any stage of the processing of your complaint, please contact Ms. Doñé or Janice Caramanica, Acting Chief, Intake and Resolution section, at (202) 647-9041.

Sincerely,

*Pamela Britton*

for Jenniffer J. De Heer
Attorney-Advisor

**United States Department of State**

*Office of Civil Rights*

*Washington, D.C. 20520-7528*

CLERK
US DISTRICT &
BANKRUPTCY COURTS

2014 MAR 30 P 9 45

December 27, 2011

*[handwritten: EEOC — RECEIVED Formal Complaint — EEO started its investigation on April 2012 — The Agency fired Plaintiff]*

Dr. Tiemoko Coulibaly
2013 Grace Church Road
Silver Spring, MD 20910

Re: **EEO Case Number DOS-F-025-12**

*[handwritten: less than 4 months after this EEO activities and complaints]*

Dear Dr. Coulibaly:

Pursuant to 29 C.F.R. § 1614.106(e), this letter is to acknowledge that on December 20, 2011 the Office of Civil Rights received your signed Formal Complaint of Discrimination dated the same date. We will review your discrimination complaint for acceptance or dismissal, and notify you before initiating further processing.

If your formal complaint is accepted for further processing, the U.S. Department of State is required to conduct a complete and fair investigation within **180 calendar days** from the date you filed your formal complaint of discrimination, unless you and the Department agree in writing to extend the 180-day period. Once the investigation is completed, you will receive an original Report of Investigation (ROI) with notification of further procedural rights. Within **30 calendar days** (including weekends and holidays) of your receiving the ROI, you may request a hearing before the Equal Employment Opportunity Commission (EEOC) or a Final Agency Decision (FAD) from the U.S. Department of State. Alternatively, you may file a civil action in U.S. District Court.

If you request a hearing before an EEOC Administrative Judge, you must mail or hand-deliver your request to the:

Equal Employment Opportunity Commission
Hearing Unit – Washington Field Office
131 M Street, NE, 4th Floor, Suite 04k05
Washington, D.C. 20507

*[handwritten: Agency fired Plaintiff on April 2, 2012 less than 4 months after his formal EEO complaint — Management was aware of EEO activities —]*

-2-

In accordance with 29 C.F.R. § 1614.106(e)(1), you have the right to appeal the final action on or dismissal of your complaint.

If you have any questions, please contact Ms. Eloisa Doñé, EEO Specialist, at (202) 647-9066.

Sincerely,

Jacqueline A. Canton, Chief
Intake and Resolution Section

**United States Department of State**

**CLERK**
US DISTRICT &
BANKRUPTCY COURTS

*Office of Civil Rights*

*Washington, D.C. 20520-7528*

2014 MAR 30  P 9 45

June 8, 2012

Dr. Tiemoko Coulibaly
2013 Grace Church Road
Silver Spring, MD 20910

RECEIVED

**RE:  EEO Case Number: DOS-F-025-12**

Dear Dr. Coulibaly:

The Office of Civil Rights (S/OCR) received your e-mail correspondence dated May 29, 2012, requesting that this office amend your complaint to include a finding from the D.C. Department of Employment Services office. After reviewing your correspondence, the original acceptance letter and all subsequent amendment letters, we do not believe making any amendments to your case with regards to this finding is necessary.

This finding from the D.C. Department of Employment Services may be used as evidence to support your claims of discrimination. Therefore, you may provide this letter from the D.C. Department of Employment Services to the EEO investigator to supplement your statement regarding your claims of discrimination.

Eloisa Doñé, the EEO Specialist assigned to your case, retains responsibility for the case and will be monitoring the performance of the contract investigator. If you need information or assistance at any stage of the processing of your complaint, please contact Ms. Doñé or Janice Caramanica, Acting Chief, Intake and Resolution section, at (202) 647-9041.

Sincerely,

Pamela J. Britton
Attorney-Advisor

*EEO after DC Department of Employment letter dated 05/21/2012 affirming the employer failed to provide any evidence of Plaintiff misconduct and approved his unemployment benefits*



USPS.com® – Track & Confirm

4/19/12 11:56 AM

English          Customer Service          USPS Mobile

Register / Sign In

**USPS**.COM

Search USPS.com or Track Packages

# Track & Confirm

GET EMAIL UPDATES

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| | Priority Mail® | Delivered | April 10, 2012, 1.06 pm | SILVER SPRING, MD 20910 | **Expected Delivery By:** March 24, 2012 Delivery Confirmation™ |
| | | Moved, Left no Address | April 06, 2012, 11.05 am | ARLINGTON, VA | |
| | | Processed through USPS Sort Facility | April 06, 2012, 2:48 am | MERRIFIELD, VA 22081 | |
| | | Processed through USPS Sort Facility | April 05, 2012, 4.22 pm | MERRIFIELD, VA 22081 | |
| | | Processed through USPS Sort Facility | April 04, 2012, 2:52 pm | MERRIFIELD, VA 22081 | |
| | | Processed through USPS Sort Facility | April 03, 2012, 9:21 am | MERRIFIELD, VA 22081 | |
| | | Moved, Left no Address | April 02, 2012, 12:47 pm | ARLINGTON, VA | |
| | | Processed through USPS Sort Facility | April 01, 2012, 4:41 pm | MERRIFIELD, VA 22081 | |
| | | Processed through USPS Sort Facility | March 31, 2012, 5 40 pm | BALTIMORE MD 21233 | |
| | | Processed through USPS Sort Facility | March 29, 2012, 8:08 am | MERRIFIELD, VA 22081 | |
| | | Refused | March 24, 2012, 10 10 am | ARLINGTON, VA 22204 | |
| | | Arrival at Post Office | March 24, 2012, 8.56 am | ARLINGTON, VA 22204 | |
| | | Depart USPS Sort Facility | March 24, 2012 | MERRIFIELD, VA 22081 | |
| | | Processed through USPS Sort Facility | March 24, 2012, 1:38 am | MERRIFIELD, VA 22081 | |
| | | Processed at USPS Origin Sort Facility | March 23, 2012, 11 13 pm | GAITHERSBURG, MD 20898 | |
| | | Dispatched to Sort Facility | March 23, 2012, 5:04 pm | SILVER SPRING, MD 20910 | |
| | | Acceptance | March 23, 2012, 3 24 pm | SILVER SPRING, MD 20910 | |

**Check on Another Item**

What's your label (or receipt) number?

**Subject:** Fw: FSI Director Cathy Russell's actions of discrimination and retaliation when she deliberately refused to receive the official medical certificate mailed bcey Dr. Hamlin

**From:** Tiemoko Coulibaly (tiemoko2005@yahoo.com)

**To:** smithph@state.gov; Kleppde@state.gov; mccormickk@state.gov;

**Date:** Thursday, September 27, 2012 10:34 AM



Dear Ambassador Pamela Smith:

I am forwarding to you this email send to Office of Civil Rights on April 23, 2012 (to my EEO manager Ms. Done Eloisa, a wonderful person) about the strange and unprofessional behavior of Cathy Russell, FSI Executive Director. In the email below, I explained in detail the incident with evidences attached. I believe EEO responded to me officially that this issue will be investigated by the EEO investigator as an example of hostile work environment.

Official evidences show that FSI Executive Director Cathy Russell refused three times to receive at FSI the official medical certificate my psychiatrist sent to her by mail. The Post Office records (see attached) show that during two weeks, on March and April 2012, for three times, FSI refused the medical certificate and even explained that Cathy Russell, FSI Executive Director,  left FSI. **All evidences show that Cathy Russell never left FSI since in the same period she signed my firing letter: Cathy Russell was at FSI at that time. Even if Cathy Russell had left FSI, there was no reason for FSI to refuse a medical certificate regarding an FSI employee.**

**I will sue individually Cathy Russell and others FSI Executives and managers so they will provide explanation to the judge and jury in federal court on all of these issues. I have this right under DC laws and there is no immunity for federal managers who violated federal anti-discrimination laws.**

I would appreciate if OIG could ask Cathy Russell to explain ***when*** she left FSI and ***why*** she returned to my psychiatrist an official medical certificate about one of her employee. **I believe this is also violation of my rights under federal law Family Medical Leave Act:** but this is a decision for the court. Cathy Russell is the one who signed my firing letter of April 2, 2012 and she pretended in that letter that I failed to follow appropriate procedure to request leave even if few days before my leave was approved officially by the Dean's office by email of March 28, 2012.

*All evidences prove that I followed all procedures to request leave, I always informed immediately my manager about my health issues and I was in contact with them, with HR (Brian Springer and Phuong Nguyen) by emails or phone constantly when I was sick. I emailed them the medical certificate before I returned to work. But my managers explained to some of my colleagues that I was fired because I didn't inform the management about my illness during several week and I was absent for several weeks without any official authorization. This is pure character assassination.*

**I also would like to add that I worked at FSI during 13 years without taking any day of vacation.** I had good health and I was hard worker and I received excellent feedbacks from students and managers until **my new supervisor Laura Fyfe falsely accused me of eing against her because her former deceased husband was Ivoirian like me (I even didn't know him)!!! She had bad mariage with him. And Laura Fyfe (helped by Debra Blake and others abusive managers and executives) became very aggressive against me until they fired me.**

Because of the bullying, harassment, humiliation, extreme stress for several months, I had to stop working for six weeks on February-March 2012 for medical reason for the first time because FSI Executives and managers seriously damaged my health when I complained about discrimination and they increased the retaliation as soon as I filed my EEO discrimination complaint. I lost more than 15 pounds because of this daily extreme stress, anxiety and depression: I had high blood pressure, depression, anxiety disorders, insomnia, etc. When I returned to FSI, many of my students and colleagues noticed I lost so many pounds. I am still under medication for depression, insomnia, anxiety, etc. Now I cannot sleep without taking pills each night.

Even the day I met with the EEO counselor, Debra Blake and Laura Fyfe called me in their office to put me under pressure: they wanted to know if I had filed a complaint with EEO against them. This is very well documented by emails exchanged with my EEO counselor (see EEO counselor's report I already forwarded to you).

Anyway, you have the detail of the story below. I would appreciate if OIG could ask Cathy Russell to explain why she lied to the Post Office and why she fired me on April 2, 2012. They accused for misconduct but I asked them to explain my misconduct and I never received any answer. According to DC Employment Department, my former employer failed to provide any evidence of misconduct (see attached)

Thanks in advance for your time and help with this inspection. **I really believe there is a serious leadership crisis at FSI. FSI needs change of leadership. Please help my former colleagues to get good leadership, many are suffering so much every day.** Employees don't have to be victim of bullies destroying their health at work place. **I also believe these abusive executives and managers should be punished and removed: this is why I will sue all of them to make sure the court will sanction them with punitive damages and others.**

Please see below my explanation below and documents attached.

Please accept my apologies if I sent to you too many emails: I simply want OIG to understand better the situation with facts and evidences.

**I want justice for my colleagues and for me.**

Thank you.

Very Respectfully Yours

Dr. Tiemoko Coulibaly

----- Forwarded Message -----
**From:** Tiemoko Coulibaly <tiemoko2005@yahoo.com>
**To:** Done Eloisa J <DoneEJ@state.gov>
**Cc:** Hall Erica <HallE1@state.gov>
**Sent:** Monday, April 23, 2012 12:19 PM
**Subject:** FSI Director Cathy Russell's actions of discrimination and retaliation when she deliberately refused to receive the official medical certificate mailed bcey Dr. Hamlin

Dear Ms. Done:

Please **amend** my complaint with this last event.

I had an appointment with my psychiatrist Dr. Hamlin last week on Thursday and he told me he was very surprised the Post Office returned to him his medical certificate (see attached) he mailed to Ms. Cathy Russell, FSI Director, on March 23, 2012 by Priority Mail. Dr. Hamlin has mailed it previously but it was returned by the Post Office for error on the address. So Dr. Hamlin mailed it again for the second time by Priority mail so he could have record of delivery by the Post Office. Dr. Hamlin mentioned the EEO discrimination complaint in his medical certificate and provided the case number.

The most strange thing is the reasons for which the Post office returned his letter. As you can see, on the envelope (EXHIBIT 1 attached), there is mention on the envelope of the Doctor's office (Institute for child and family Psychiatry). **It was clear that Cathy Russell identified clearly the sender of this letter since she had already received by email from me the medical certificate from Dr. Hamlin.**

For your information, as soon as Dr. Hamlin gave me the certificate medicate dated on March 10, 2012, I sent it by email the following days, especially on March 14, 2012 to many FSI Executives, FSI Human resources, to French managers and to FSI Director Cathy Russell: all of them knew about this medical certificate. **They didn't like the medical certificate mentioning the EEO discrimination complaint because it blames FSI managers for my health condition and even FSI Human resources refused to process my request for Leave because, according to Brian Springer (HR), the medical certificate contains too much information even if he agreed it had all information (diagnosis, date of my return to work) he requested to process my request for leave!!!** This was another example of illegal retaliation because of my EEO discrimination complaint (all of them knew about my EEO complaint).

Finally, FSI **approved** later my Request for Leave on March 28, 2012 with the same medical certificate: this evidence that it was appropriate to request the Leave.

However, despite of the fact I already provided the medical certificate to FSI Director and others, Dr. Hamlin insisted to mail himself by Priority Mail the official medical certificate to Ms. Cathy Russell because it was a crucial document.

**The Post Office attempted three times to deliver the medical certificate to Cathy Russell's office at FSI and each time her Office refused the document.** The most interesting thing is the false arguments and lies they used to deceive the Post Office as well as the sender Dr. Willie Hamlin.

On **March 24, 2012 at 10:10 am**, acccording to the Post Office's record attached **(Exhibit**

**2)**, FSI Director Cathy Russell "**REFUSED**" knowingly, intentionally, deliberately and maliciously the medical certificate from Dr. Hamlin on . Of course, she recognized the identity of the sender on the envelope and she deliberately decided to refuse the official letter. **This is clearly misconduct and it is unacceptable that the Director of FSI Cathy Russell maliciously and intentionally refused to receive an official letter sent to her by a medical doctor about the serious health condition of one of her employees complaining about discrimination, retaliation and consequently was very sick and who had filed an official EEO discrimination complaint.** (4)

On **April 2, 2012, at 12:47PM**, the Post Office tried again for the second time to deliver the medical certificate to Cathy Russell. FSI refused deliberately, intentionally and maliciously again the medical certificate because FSI Director Cathy Russell "MOVED, LEFT NO ADDRESS" (see exhibit 2 atatched). **This argument is clearly lies** because the same Cathy Russell signed the **same day** my firing letter of April 2, 2012 and I received it *after* she informed the Post Office she **"moved, left no address".** And we all know she was still FSI Director and I even sent to her some email during the same period and days later, between April 2, 2012 and April 6, 2012, my last day at FSI.

On **April 06, 2012, at 11:05 am**, the Post Office tried for the third time to deliver the medical certificate to Cathy Russell, FSI Director. FSI refused again deliberately, knowingly, intentionally and maliciously again the medical certificate because FSI Director Cathy Russell has already "MOVED, LEFT NO ADDRESS" (see Exhibit 2, attached).

This argument of "Moved, left no address" is clearly lies since Cathy Russell is still today and now the FSI Director. The question is why did she refused three times the medical certificate and used lies ("moved, left no address") to deceive the Post Office and my psychiatrist. **Dr. Hamlin was under shock when I explained to him last week that Cathy Russell has never "moved" and she never "left" FSI and she was still today FSI Director. For him, clearly, this behavior is not professional.**

The most strange thing is that *after* Cathy Russell received the medical certificate from Dr. Hamlin informing her **I was seriously sick, I had already filed a EEO discrimination complaint and I would return to work on March 26, 2012,** she decided to **fire me illegally on April 2, 2012** few days after I returned to work **even if no incident happened between March 26, 2012 and April 2, 2012.** This helped to understand why she maliciously and knowingly refused **three times** to receive the letter sent by Dr. Hamlin because it was not good for her **premeditated illegal strategy of firing me while I was sick because of harassment and hostility of my managers.** Clearly, this firing of April 2, 2012 was decided when I was away and sick for 6 weeks because of the retaliation and discrimination as explained by Dr. Hamlin.

I believe Cathy Russell strange behavior is clear evidence of **incompetence, misconduct, lies, dishonesty, lack of credibility, hostile work environment, retaliation and discrimination** against me because of my EEO discrimination complaint. In the past several months, I sent many emails to Cathy Russell and others FSI Executives about my discrimination complaint and EEO case. **Cathy Russell never called me in her office to try to resolve the issues and the discrimination complaint fairly and impartially.** Instead, she decided with others Executives and French managers to discriminate, to retaliate against me and to fire me because of my EEO discrimination complaint and despite of my serious health issues due to the hostile work environment.

CONCLUSION:

**In fact, Cathy Russell, others FSI Executives and French managers decided maliciously, knowingly, deliberately to fire me illegally when I was sick in order to stop my salary and to stop my health benefit coverage through my employer to harm me more harder because of my EEO discrimination complaint against them. They deliberately, maliciously, knowingly and intentionally wanted to prevent me to take care of my health which was degraded by their retaliation and discrimination during several months.** Clearly, they wanted more degradation of my financial resources and my health. This is the main reason they fired in retaliation me when I was sick and this is why Cathy Russell refused to accept the medical certificate from the Post Office. The problem here is this firing is illegal since it is clearly a direct consequence of my EEO discrimination complaint and all of these FSI Executives and managers knew about the EEO discrimination complaint, as established by many emails.

Dear Ms. Done, please **amend** my complaint with this last even: it shows clearly the state of mind and the intent of FSI Directors, Executives and abusive French mangers. Clearly, they don't care about EEO laws, federal laws and State Department's policy about discrimination complaint.

Thanks in advance

Best regards

Dr. Tiemoko Coulibaly

**United States Department of State**

*Office of Civil Rights*

*Washington, D.C. 20520-7528*

April 25, 2012

Dr. Tiemoko Coulibaly
2013 Grace Church Road
Silver Spring, MD 20910

*[handwritten: Agency refused to accept the medical certificate sent by the psychiatrist to PRI executive Director]*

RE: **EEO Case Number: DOS-F-025-12**

*[handwritten: by pretending Cathy Russell (ex. Dir) left PRI and left no address to forward message — FALSE INFORMATION]*

Dear Dr. Coulibaly:

The Office of Civil Rights (S/OCR) has received your e-mail correspondence dated April 23, 2012, requesting that this office amend your complaint to include an additional allegation of retaliation. After reviewing your correspondence, the original acceptance letter and all subsequent amendment letters, we do not believe accepting the additional allegation is necessary.

Your allegation of reprisal is properly captured in the articulation of your accepted allegations and will be part of the investigation. The additional issue you raised regarding management's refusal to accept a mailed medical certificate from your doctor is an example of the alleged hostile work environment. We believe that the accepted issues are broad enough in scope to include such an instance. The goal of well-drafted allegations is to be broad enough to give the investigator latitude during the course of the investigation, rather than give very narrow alleged incidents of discrimination for investigation. Again, this issue will be investigated within the penumbra of the hostile work environment allegation. Additionally, this information may serve as background evidence of the allegation accepted on March 23rd regarding your use of sick leave.

Eloisa Doñé, the EEO Specialist assigned to your case, retains responsibility for the case and will be monitoring the performance of the contract investigator. If you need information or assistance at any stage of the processing of your complaint, please contact Ms. Doñé or Janice Caramanica, Acting Chief, Intake and Resolution section, at (202) 647-9041.

Sincerely,

Pamela J. Britton
Attorney-Advisor

*[handwritten: (the Record from Post office attached and emails with details on facts)]*

Coulibaly, Tiemoko        *Special Request Leave Memo*

**From:**            Hartgrove, Faye V
**Sent:**            Wednesday, March 28, 2012 11 28 AM
**To:**              Casteuble, Philippe C  Garcia, Nicole L
**Cc:**              Coulibaly, Tiemoko, Shie, Tamara R
**Subject:**         Special Request Leave Memo

**Follow Up Flag:**  Follow up
**Flag Status:**     Flagged

*EXHIBIT A*

Your memo is approved for EUA/Tiemoko Coulibaly and ROM/Tamara Shie.  I have delivered the original documents to EX/HR.  You may pick up a copy with SLS Dean's office approval from me.

Faye
Secretary
FSI/SLS · Dean's Office
SA-42, 302-7243

*Agency approved officially
Plaintiff's request for leave
by this email dated March 28, 2012
and fired Plaintiff few days
later on April 02, 2012
(email from Dean's office)*

**Affidavit  F**
Page  208  of  312

*TC 30-9*

1

00865



**FEHB**
Federal Employees
Health Benefits Program

## Notice of Change in Health Benefits Enrollment

| 1. Name *(Last, First, MI)* | | 2. Date of birth *(mm-dd-yyyy)* | 3. Social security number |
|---|---|---|---|
| Coulibaly          Tiemoko | | 01-25-1965 | |

| 4. Home address *(including ZIP Code)* 2013 Grace Church Road Silver Spring, MD 20910 | *the Agency quickly cancelled Plaintiff health insurance after it destroyed his health* | 5. Payroll office number 1900 0003 | 6. Enrollment code number 105 |
|---|---|---|---|
| | | 7. SF 2811 Report number | 8. Date this action becomes effective *(mm-dd-yyyy)* 04-06-2012 |

Only the item that is checked below affects your enrollment.  Read that item carefully and follow any pertinent instructions.
Keep this form for your records.

| X | Your enrollment terminates on the date in Part A, item 8, above.  However, your coverage is extended for 31 days after that date. |
|---|---|

*Important Notice:* **You have the right to convert to an individual (nongroup) contract with the carrier of your plan. You also may have the right to temporarily continue your group coverage. See Part B - Termination on the back of this form for information** about 31-day extension of coverage, conversion, and temporary continuation of coverage.

| If termination is due to death of enrollee enter date of death | Date of death *(mm-dd-yyyy)* |
|---|---|

| | The new Payroll Office (or Retirement System) shown in Part H below has accepted transfer of this enrollment and will continue it. | | Your enrollment has been reinstated effective on the date in Part A, item 8, above. |
|---|---|---|---|

| | The name under which this enrollment is carried has been changed to: | | Your enrollment has been changed from family coverage to self only.  Your plan will send you a new identification card. Your new enrollment code number is shown below. (Note: This item is completed by Retirement Systems only.) |
|---|---|---|---|
| Name | Date of Birth *(mm-dd-yyyy)* | | |
| Address (including ZIP Code) if different from Part A, item 4, above. | | **New Enrollment Code Number** | |

*Note: Instructions for Employing Offices are on the back of Copy 4 of this form.*

| Name and address of agency *(including ZIP Code)* Department of State National Foreign Affairs Training Center Foreign Service Institute Washington, DC 20522-4201 | Personnel contact and telephone number | | |
|---|---|---|---|
| | Michelle Bryant | ( 703 ) | 302-6813 |
| | Payroll contact and telephone number | | |
| | Detrin Gholson | ( 843 ) | 308-5570 |
| Signature of authorized agency official | Date *(mm-dd-yyyy)* | | |
| | 04-06-2012 | | |

## Part B - Termination
### If Part B on the other side of this form is checked, read the following instructions carefully.

**31 Day Extension of Coverage**

Your enrollment terminates on the date shown in Part A, item 8, on the front of this form. Coverage under your enrollment continues temporarily for 31 days from the date shown. If you, or any covered member of your family, are a patient in a hospital on the 31st day of this temporary extension, benefits of the plan may continue for the rest of that confinement, but not beyond 60 more days.

**Conversion to Nongroup Contract**

You may convert your enrollment to a nongroup contract, without evidence of good health. The nongroup contract to which you may convert is one regularly offered by your plan. It may differ from your group plan in benefits, or cost, or both, and you will have to pay the entire cost of the nongroup contract directly to the plan. The nongroup contract is effective on the day after your 31-day extension of coverage ends.

If you are interested in converting to a nongroup contract, write for information to the nearest office of the plan in which you have been enrolled (see the plan's brochure or ask your employing office for the address of the plan's nearest office). The plan will promptly send you an application form and details concerning benefits and rates of the nongroup contract to which you may convert.

**Time Limit on Conversion**

Normally, to be eligible for conversion, you must send your written request for information to your plan within 31 days after the date shown in Part H. However, if the date shown in Part H is more than 60 days after the date your enrollment terminates (Part A, item 8), you must forward it to your plan within 91 days after the date shown in Part A, item 8.

If you are prevented by causes beyond your control from submitting a timely request for information about conversion to a nongroup contract, you should write to your plan as soon as possible asking approval of a belated conversion opportunity. Explain fully the circumstances that prevented

prevented earlier action and attach proof of the loss of group coverage (e.g., Standard Form 50 terminating Federal employment). A plan may consider requests filed within 6 months after group eligibility ends. If your plan needs assistance in processing your request, it should contact OPM.

**Temporary Continuation of Coverage**

If you are an employee whose enrollment is terminating because you are separating from service (including separation for retirement), you may be eligible to temporarily continue your benefits coverage under the Federal Employees Health Benefits Program after separation. Within 61 days after the date shown in Part A, item 8, on the front of this form, your employing office will formally notify you of your rights regarding temporary continuation of coverage and tell you where you may obtain additional information. You will have 60 days after the later of (1) your date of separation from service, or (2) the date you receive the notice from your employing office in which to elect temporary continuation of coverage.

When your temporary continuation of coverage expires, you will be entitled to the 31-day extension of coverage and the opportunity to convert to a nongroup contract.

**Entry on Active Military Duty**

If you elected to terminate your enrollment because you are entering military service, you may convert to a nongroup contract even though your family members are entitled to care under the Uniformed Services Health Benefits Program. If you return to civilian duty in the exercise of reemployment rights, your enrollment will be reinstated effective on the day you return to active duty. If you return to civilian duty not in the exercise of reemployment rights, you must, if eligible for coverage, register again the same as a new employee. If you are an annuitant, your enrollment will be reinstated on the day you are separated from military service. You must notify your retirement system of this event by furnishing a copy of your separation papers.

## Part C - Transfer of Enrollment
### If Part C on the other side of this form is checked, read carefully whichever of the following instructions applies:

**Transfer of Employment**

Your enrollment has been transferred from your previous agency or payroll office to the agency or payroll office shown in Part H. If you are in a prepaid comprehensive medical plan and you left the area served by the plan, you may be able to change to another plan. For details about your right to change plans, check with your employing office.

**Retirement**

Your enrollment has been transferred from your employing agency to the retirement system shown in Part H. Your enrollment continues automatically during retirement if you retire on an immediate annuity and you have been enrolled under the Federal Employees Health Benefits Program for the lesser of (1) all your service since your first opportunity to enroll, or (2) the 5 years of service immediately preceding retirement. Your share of the cost of your enrollment will be withheld from your annuity.

**Death**

The enrollment of the deceased employee named in Part A has been transferred to the retirement system shown in Part H. If the deceased employee or annuitant was enrolled for self and family at the time of death, and if at least one member of the family is entitled to a survivor annuity (or the widow(er) is entitled to the Basic Employee Death Benefits under FERS), coverage for each family member who was covered by the employee's enrollment continues automatically.

If there is only one eligible survivor, the enrollment will be changed from family coverage to self only. The survivor's share of the cost of the enrollment will be deducted from the annuity. Application for Death Benefits (Standard Form 2800 or equivalent) should be filed promptly to avoid any question about health benefits coverage. When the survivor annuity is approved, another form like this one will be issued to show that the enrollment is being continued in the survivor's name.

**Employees' Compensation**

Your enrollment has been transferred to the Office of Workers' Compensation Programs. Your enrollment continues automatically while you receive monthly compensation from the Office of Workers' Compensation Programs if the Secretary of Labor has held that you are unable to return to duty and if you have been enrolled under the Federal Employees Health Benefits Program for the lesser of (1) all your service since your first opportunity to enroll, or (2) the 5 years of service immediately preceding the start of your compensation. Enrollment of covered family members of a deceased employee or compensationer also continues automatically while they receive monthly compensation, if (1) the deceased employee or compensationer was enrolled for self and family at the time of death, and (2) at least one of the covered family members is entitled to compensation as a surviving beneficiary under the Federal Employees' Compensation Act. The compensationer's or survivor's share of the cost of the enrollment will be deducted from the compensation checks.

### Keep This Form For Your Records

**Coulibaly, Tiemoko**    *April 05, 2012*

| | |
|---|---|
| **From:** | Coulibaly, Tiemoko |
| **Sent:** | Thursday, April 05, 2012 3:53 PM    *Last day at work was April 06/12* |
| **To:** | Nguyen, Bach Phuong (FSI); Bryant, Michelle D; Freeman, Marlene L; Blake, Debra M; Casteuble, Philippe C; Fyfe, Laura J; Sachs, Hilary G; Springer, Brian W |
| **Cc:** | Ryschka, Andreas; Koster, Nikolaus A; Russell, Catherine J; Myles, Marianne M; North, James E; Duckett, Deborah A |
| **Subject:** | RE: advanced sick leave |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

*Discuss this about leave*
*Phuong is HR officer/ as a Plaintiff reported retaliation against the reasons*

Dear Phuong:

*ex litigation against the reasons of his termination provided in the letter of 04/2/12*

Thank you for your answer. I respectfully disagree with everything you said.

I will simply make few comments here because it is not the appropriate forum to resolve this legal issue since EEO has decided to investigate all of these issues. I will forward your answer to EEO as another piece of evidence.

Few comments:

I noticed that you didn't provide any detail, fact or evidence of facts about my "unacceptable conduct". You didn't respond to my questions on this essential issue. I simply believe this is false pretext to fire me. Evidences will prove that fact at the right moment.

The exact and precise context of the sentence below from Mr. Casteuble was that I will provide the memo when I return at work and he agreed on that (the two sentences are directly linked): he didn't mention any issue at that moment. You have just to read closely the emails and answers. I respectfully disagree with your explanation. The truth will emerge because impartial observers will investigate and will read all of these emails and all evidences in the records to decide fairly the case.

"Mr. Casteuble's response "Thanking you" is not an approval of leave."

The other fact is Philippe confirmed to me yesterday that my request for advanced sick leave (80 hours) was approved, so I supposed the Executive office didn't reject the decision made by the Dean's office. And Philippe even asked me to sign all document base on that approval of 80 hours and I did.

**About March 29, 2012**: I called the French Section to inform them I will not come on Friday because I was sick. This is what teachers are required to do and I did that. And when I came back at work, I requested the sick leave. I followed all established procedures. Again, impartial observers will analyze all evidences in the record and decide on the case.

I believe this firing is the **direct consequence** of my EEO discrimination complaint. And the law is very clear: **"any" retaliation or reprisal because an employee filed EEO complaint is violation of federal law.** Evidences of facts show clearly I was fired **after** I filed my EEO complaint (the fact is my managers, HR knew perfectly I had filed the EEO complaint.)

My EEO complaint clearly indicated few months ago that my managers were trying to fire me because of my discrimination complaint. The medical certificate indicated that also. This is the most anticipated firing and the consequence of the EEO complaint: it is retaliation and it is illegal under all federal laws. This is not moral or emotional issue: it is legal issue. And evidences will establish the facts.

In addition, because of the retaliation, it is established by official medical record from two doctors that I suffered **serious emotional distress** because of very hostile work environment at FSI and retaliation. This medical record will be strong evidence in court.

Evidences show that my supervisors willfully maliciously, deliberately and intentionally retaliated, discriminated against me and deliberately damaged my health. This will have legal consequences: it is matter of justice, ethic and truth.

I am very happy to leave FSI because it will help me to improve my health and to recover slowly: my main concern is my health at this time. My life was such nightmare here the last months.

I am simply very sad that we could find such discrimination, harassment, illegal violations of federal laws, EEO laws by abusive managers at FSI, at State Department, which promotes culture of human rights in the world. This is also clear violation of State Department's policy.

Now, we have legal issues and it will be resolved in the appropriate forum at the right time.

I suffered so much here, FSI seriously damaged deliberately and maliciously my health. I will fight for the truth, for justice. Justice will prevail at the end.

I am simply very grateful for all of my students who always wrote excellent reports, excellent performance evaluations for me during the last 13 years I was here: I was their teacher and I also learned a lot from them. This is was my pleasure here. It is obvious that I was not fired for performance issues. I was fired because of my EEO discrimination complaint.

Unfortunately in the French section we have probably the worst leadership and I am not surprised that French section has so bad reputation in the Department. Students constantly complained against this management.

Thank you so much for your answer, your help and time. I wish the best to all of you. I will leave FSI happy because it will improve my health and determined to fight for the truth and justice in the future.

Again the truth will emerge and justice will prevail at the end.

Thank you to all of you.

Respectfully Yours

Dr. Tiemoko Coulibaly

**From:** Nguyen, Bach Phuong (FSI)
**Sent:** Thursday, April 05, 2012 2:52 PM
**To:** Coulibaly, Tiemoko; Bryant, Michelle D; Freeman, Marlene L; Blake, Debra M; Casteuble, Philippe C; Fyfe, Laura J; Sachs, Hilary G; Springer, Brian W
**Cc:** Ryschka, Andreas; Koster, Nikolaus A; Russell, Catherine J; Myles, Marianne M; North, James E; Duckett, Deborah A
**Subject:** FW: advanced sick leave
**Importance:** High

Tiemoko,

My responses to your questions are highlighted in red.

Regards,

2

Phuong Nguyen
Supervisory HR Specialist
FSI/EX/HR
(703) 302-6841

Privacy/PII
This email is UNCLASSIFIED.

**From:** Coulibaly, Tiemoko
**Sent:** Thursday, April 05, 2012 10:58 AM
**To:** Nguyen, Bach Phuong (FSI); Bryant, Michelle D; Freeman, Marlene L; Blake, Debra M; Casteuble, Philippe C; Fyfe, Laura J; Sachs, Hilary G; Springer, Brian W
**Cc:** Ryschka, Andreas; Koster, Nikolaus A; Russell, Catherine J; Myles, Marianne M; North, James E; Duckett, Deborah A
**Subject:** FW: advanced sick leave

Dear Phuong:

I am working on all of these issues with EEO and it is necessary to establish and to document clearly the facts, evidences of facts in order to find the truth. Truth is necessary for justice since this case will go to court. I am respectfully asking some clarifications from you to establish the facts in this legal case, this EEO case.

As you know, in the firing letter of April 2 2012 you gave me, it stated that *"if there is anything in this letter that you do not understand or wish to have explained in more detail, you may contact Back Phuong Nguyen in the Human Resources Office, Foreign Service Institute on (703)302-6813"* (see attachment).

I would appreciate clarification about two important points I don't understand and I would like to have your clarification on this issue of sick leave:

*"You have displayed unacceptable conduct that has adversely affected the operations of the French Section, European and African Languages. Specifically your inappropriate interactions with your supervisors and your failure to follow established procedures for requesting leave."*

1)– First question: could you explain how, when, where, why my "conduct" has "adversely affected the operations of the French Section, European and African Languages"? This sentence is so vague and I would appreciate more details on the facts, date and how my "conduct" has affected the operation of the Section.

As stated in the second paragraph of the termination letter dated April 2, 2012, you have displayed unacceptable conduct that has adversely affected the operations of the French Section, European and African Languages. Specifically, your inappropriate interactions with your supervisors, and your failure to follow established procedures for requesting leave.

2) – Second question about leave, could you clarify this part: *"Specifically your inappropriate interactions with your supervisors and your failure to follow established procedures for requesting leave."* Evidences attached show that this argument is very strange.

Exhibit 1 (attached) is an email of March 28, 2012 (11:28AM) from Ms. Faye Hartgrove, Secretary, Dean's Office (FSI) indicating my "Special Request Leave Memo" is "approved":

*"Your memo is approved for EUA/Tiemoko Coulibaly and ROM/Tamara Shie. I have delivered the original document to EX/HR. You may pick up a copy with SLS Dean's office approval from me."*

Your request for advance leave for the period 03/12/12 – 03/23/12 was approved by the Dean's Office to move forward. The Executive Director holds the authority to approve advanced sick leave requests not the Dean's Office (per 3 FAM 3428.2). The email above was informing you that your request was moving forward to the next official.

I went to the Dean's office to pick up the approval as soon as I received this email and I gave a copy to Philippe Casteuble.
The conclusion here is if my request leave memo was approved by several FSI Executives, it is clear evidence that I followed "established procedures for requesting leave" and this fact is a clear evidence that the firing letter of April 2, 2012 is absolutely wrong. There is clearly contradiction between the firing letter of April 2, 2012 from the Executive Director Catherine Russell and the email of March 28, 2012 (few days before) from the Dean's office.
Ms. Phuong: could you clarify for me this contradiction?
This is the only formal request leave I made and it was approved.

Now, Philippe Casteuble called me on March 29, 2012 to tell me my request for Advance Sick leave was denied. I was very surprised that Philippe has submitted a second advanced sick leave request to HR knowing that I explained to him in an email I will complete the request with a memo when I return to FSI after my leave and he agreed.

You state that you explained to Mr. Casteuble in an email that "you will complete your request for leave when you return to FSI". Mr. Casteuble stated in the email that he does not have the authority to approve your request for leave on March 29, 2012

The evidence to support this fact is the Exhibit 2 attached (email below also). In his email of Wednesday, March 28, 2012 4:17PM, Philippe wrote:

*"Hi Tiemoko,*

*Upon returning to my office at 4:00PM I found on my chair the advanced sick leave request you signed for tomorrow where you requested 8 hours of advanced sick leave (see attachment). As a supervisor I do not have the authority to sign on such a request and approve it.*

*Advanced sick leave must be requested to the EX office. I have attached the SOP document that should help you with the process.*

*The 8 hours your requested will be entered in as leave without pay pending EX approval.*

*Best regards,"*

When you did not report to work on March 29, 2012 you failed to follow procedure to request leave. This act is what the termination letter is referring to. Mr. Casteuble's response "Thanking you" is not an approval of leave.

Based on his email and attachment, it was clear that I had to add a memo to my request. I responded few minutes later at 4:29PM (Wednesday) to explain to Philippe that I will give him the memo on Friday when I return to FSI:

*"Hi Philippe,*

*Please enter the 8 hours as leave without pay pending EX approval. **I will give you the memo Friday.***

4

*I have some medical appointments tomorrow.*

*Thanks*
*Tiemoko"* (EXHIBIT 2 attached, email below)

Philippe responded immediately at 4:29PM the same Wednesday:

*"Thank you Tiemoko.*

*Best regards,*
*Philippe Casteuble*
*703-302-6723"*

These emails proved that Philippe agreed that I will give him the memo on Friday when I return to FSI. Clearly the advance sick leave was not complete and was not ready for process by HR. I was very surprised and shocked when Philippe called me on my cell phone the next day on Thursday, 29, 2012 around noon to tell me he presented my incomplete advanced sick leave request to HR and it was denied.

After my medical appointment, and because I found the phone call very strange (for me Philippe was preparing a retaliation as I indicated in the message), I sent to Philippe the same day from my personal email (**subject** of the email is *"About my incomplete request for advance sick leave"*) on Thursday, March 29, 2012 at 3:40PM a message (EXHIBIT 3 attached) to complain and I wrote this:

*"Dear Philippe,*

*I was surprised by your call today at noon to inform me that HR denied my request for Advanced sick leave. And I should be at FSI today.*

*When you sent me yesterday the email explaining that I should submit my request with a memo, and you don't have the power to decide on the case, I perfectly understood that my request missed a memo and others details and I have to make some corrections and to present new complete request.*

*So I answered by email that I will submit again the request on Friday with the appropriate memo and information. So I don't understand why you presented this incomplete request to HR and you called me today around noon to tell me I should be at work today because the request was denied.*

***"In my mind, based on our emails, it was clear that you would not present the request to HR since it was incomplete and I agree to make corrections and to provide a memo.***

*Right now I have serious health issues because of the very hostile work environment, as documented by EEO, and I need to take care of my health. Today, I have to see the doctor and I really don't feel well today. This is why I told you I cannot be at FSI today when you called me at noon to ask me to be at FSI today".*

And I added this paragraph on the message about Philippe's phone call and retaliation:

***"For me, it was another example and another evidence (all emails exchanged on this issue with Brian and others are good evidences) of retaliation and discrimination against me because of my EEO discrimination and retaliation complaint against Brian and others.***

*Again, I will submit the request with the memo and all appropriate information when I will be at FSI.* Right now, I have to focus on my health because I really don't feel well today. I have serious worries about my health condition. FSI seriously damaged my health.
Thanks
Best regards
Tiemoko"

*(EXHIBIT 3 attached, page 2, emphasis added)*

**Conclusion:** It was clear that I never submitted to Philippe a complete advanced sick leave and I also made clear to him by emails that I will submit a complete request when I return to FSI: Exhibits 2 and 3 are strong evidences. In addition, **I never failed to "follow established procedures for requesting leave"** since evidence (Exhibit 1) showed that the Dean's office approved my request for sick leave and Exhibit 2 and 3 prove I never asked Philippe to submit to HR a request for sick leave. I cannot be blamed if Philippe and Debra Blake decided to submit this incomplete application to HR without my agreement in order to find another pretext to retaliate against me. You can see that the emails of March 28, 2012 (Exhibit 2) were CC to Debra Blake.

My email of Thursday, March 29, 2012 was sent to Philippe, Debra Blake and Brian Springer (HR). Clearly, on March 29, 2012, HR has the information "about the incomplete request for advance sick leave" (subject of the email Exhibit 3) and knew that I never made a official request to be submitted to HR. Clearly the document I gave to Philippe on March 28, 2012 (Exhibit 2) was not an application for advanced sick leave and I made clear to him I will complete it two days later. **It is difficult to understand why Philippe decided to submit an incomplete application to HR when I suggested to him by emails do not do that before I complete it.**

My question is simple: could you explain to me why I was fired by FSI because I failed "to follow established procedures for requesting leave". For me, **I made only one request for sick leave and it was approved by the Dean's office (Exhibit 1 attached). Philippe presented a second advance sick leave request to HR without my authorization since I expressly indicated that I will complete my request two days later when I return to FSI.** Philippe and HR have to take full responsibility is they decided to process my incomplete application and to deny it in order to accuse me for failure "to follow established procedures for requesting leave." I made only official request and it was approved by the Dean's office. I have nothing to with the second request presented by Philippe to HR while I clearly indicated to him that I will complete the request later before submission. And he responded "Thank you".

Dear Phuong, thank you for your clarification on my two questions (see first paragraph) and see also others emails below. I believe Philippe could also explain why he presented to HR my incomplete request for advanced sick leave **without** my authorization.

Very Respectfully

Dr. Tiemoko Coulibaly

---

**From:** Casteuble, Philippe C
**Sent:** Wednesday, March 28, 2012 4:29 PM
**To:** Coulibaly, Tiemoko
**Cc:** Blake, Debra M
**Subject:** RE: advanced sick leave

Thank you Tiemoko.

Best regards,
Philippe Casteuble

703-302-6723
This E-mail is unclassified, based on definitions provided in EO12958

**From:** Coulibaly, Tiemoko
**Sent:** Wednesday, March 28, 2012 4:29 PM
**To:** Casteuble, Philippe C
**Cc:** Blake, Debra M
**Subject:** RE: advanced sick leave

Hi Philippe,

Please enter the 8 hours as leave without pay pending EX approval. I will give you the memo Friday.

I have some medical appointments tomorrow.

Thanks
Tiemoko

**From:** Casteuble, Philippe C
**Sent:** Wednesday, March 28, 2012 4:17 PM
**To:** Coulibaly, Tiemoko
**Cc:** Blake, Debra M
**Subject:** advanced sick leave

Hi Tiemoko,

Upon returning to my office at 4:00PM I found on my chair the advanced sick leave request you signed for tomorrow where you requested 8 hours of advanced sick leave (see attachment). As a supervisor I do not have the authority to sign on such a request and approve it.

Advanced sick leave must be requested to the EX office. I have attached the SOP document that should help you with the process.

The 8 hours your requested will be entered in as leave without pay pending EX approval.

Best regards,

Philippe C. Casteuble
George P. Shultz National Foreign Affairs Training Center
FSI/SLS/EUA/French section
Phone: (703) 302-6723
Fax: (703) 302-7533
E-mail: casteublepc@state.gov

Please don't print this e-mail unless you really need to.
Pensez environnement: n'imprimer que si nécessaire.
This E-mail is unclassified, based on definitions provided in EO12958

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

Tiemoko Coulibaly,                      )
            Complainant,                )
                                        )       EEOC No. 570-2013-00284X
                                        )       Agency No. DOS-F-025-12
v.                                      )
                                        )       AJ: Cynthia McKnight
John F. Kerry,                          )
Secretary,                              )
State, Department of,                   )       Date:  October 22, 2013
            Agency.                     )
_____)

_Agency admitted ending in ROI prove_

## AGENCY REPLY TO APPELLANT'S RESPONSE TO AGENCY'S MOTION TO DISMISS/CROSS MOTION FOR SUMMARY JUDGMENT

_RETALIATION_

The United States Department of State ("Agency") hereby respectfully submits this

_Against Plaintiff_

Reply in Support of its Motion for Dismissal or, in the Alternative, Summary Judgment,

_(P. 11)_

addressing the contentions set forth in Complainant's Response to the Agency's Reply to

Appellant's Motion for Summary Judgment and Motion to Dismiss/Cross Motion for Summary

Judgment ("Complainant's Response" or "Response"), which was received by the Agency on

October 7, 2013.

In his Response, Complainant challenges the timeliness of the Agency's Reply to his

Motion for Summary Judgment and merely repeats his allegations of discrimination and

retaliation, without citing any evidence of pretext. Complainant's timeliness arguments lack

merit and he has failed to overcome his burden of proving that the Agency in any way

discriminated against him because of his race, color or national origin, retaliated against him for

engaging in a prior EEO activity, or subjected him to a hostile work environment. A hearing on

the merits would not show otherwise and Complainant does not request such a hearing, as he

*Admition of Retaliating by Agency against Plaintiff —*

Complainant also quotes the testimony of Phillipe Casteuble, who acknowledged in his

affidavit that he "became aware of the Complainant opposing discriminatory practices or policies

when [he] received a copy of Debra Blake's Memorandum of Conversation . . . and Mr. Tiemoko

Coulibaly's response dated November 26, 2011." Complainant's Response at 5 (quoting ROI at

1228 (Affidavit H)).[5]

Clearly, North and Casteuble testified that they understood that Complainant had engaged

in some sort of protected activity. The Agency does not dispute this fact. Indeed, the Report of

Investigation contains countless references to Complainant speaking out against perceived

discrimination and retaliation through testimony and emails, much of which was provided by

Agency managers. The knowledge on the part of management that Complainant had engaged in

a protected activity is not an issue in dispute.

Third, Complainant provides no evidence to contradict the clear evidence in the record

that he failed to follow proper leave procedures. Complainant contends "the management

approved [his] request for sick leave and advance sick leave officially on March 28, 2011, as

Division Director Debra Blake confirmed in her affidavit (see Complainant's motion for

summary judgment, pages 16-20) because Complainant followed all procedures to request

leave." Complainant's Response at 20. Debra Blake's affidavit, which is quoted by

Complainant in his Motion for Summary Judgment, states "I believe [advance sick leave] may

have been approved, *but I was not involved in the decision*." ROI at 363 (Affidavit C)

(emphasis added). Blake admits she had no personal knowledge of whether or not

---

Blake responded: "Hmmm, thought I checked it all. Thanks." ROI at 760.

[5] Casteuble did also testify that "I was not aware of any EEO activity before I received the [EEO affidavit form]." However, it is likely that Casteuble perceived EEO activity as meaning the filing of a Complaint, or some other formal act. Casteuble acknowledges that he was aware of Complainant's opposition to alleged discriminatory practices, which satisfies the knowledge prong of the retaliation analysis. It does not, however, prove that Casteuble retaliated against Complainant.

11

Complainant's leave was approved, thus, her speculative testimony does not help him in meeting his burden. Complainant was informed of the procedures for requesting leave, he was told that the Executive Director must approve his leave, and while Assistant Dean North's office signed off on the leave request – an intermediate step in the leave process – the Executive Director did not approve the request. *See* Agency's Undisputed Statement of Facts ¶¶ 43-47. Furthermore, Complainant was informed that the Executive Director did not approve the leave and was instructed to come to work, but he refused to do so. *See* Agency's Undisputed Statement of Facts ¶¶ 47-48. He does not dispute this. Thus, Complainant has provided no evidence to show that the Agency's reasons for his termination are a pretext for discrimination or retaliation.

Finally, Complainant's reference to a finding of the District of Columbia Department of Employment Services deeming him eligible for unemployment benefits, does not prove that his termination was motivated by discriminatory or retaliatory animus. He has provided no evidence that the DC Department of Employment "investigated" whether or not Complainant engaged in misconduct as he contends. *See* Complainant's Response at 19. Rather, Complainant has submitted a letter from the DC Department of Employment Services which states that in order to disqualify an individual from receiving unemployment benefits,

> [t]he employer has the responsibility to provide evidence of [ ] misconduct. In this case the employer has provided information stating the claimant was discharged during his probationary period with no additional information or documentation for initiating the separation to establish misconduct. Therefore work related misconduct on the part of the claim [has or has not] been established."

ROI at 244. The fact that the Agency declined to provide evidence of misconduct to the DC Department of Employment Services – to Complainant's benefit – does not prove that Complainant did not engage in misconduct. The record in this case makes clear that

Complainant's conduct was disruptive to operations and supports the reasoning in the termination letter.

As Complainant has failed to prove that the Agency discriminated or retaliated against him when his appointment was terminated, this claim should be dismissed.

> (4)  Complainant has not proved that the Agency discriminated or retaliated against him by failing to properly compensate him for work in pay periods 6 and 7.

In his response, Complainant does not address the Agency's explanation that Complainant was properly compensated for his work in pay periods six (6) and seven (7) of 2012. Instead, he merely restates in the conclusion to his Response the allegation that the Agency "illegally refused to pay him his salary for pay period [sic] 6 and 7." Complainant's Response at 21. The Agency has provided evidence that Complainant was paid correctly following the correction of an error in pay period 7, ROI at 1327-1328, and Complainant has not rebutted this with evidence. Accordingly, this claim should be dismissed.

> (5)  Complainant has failed to prove that the Agency subjected him to a hostile work environment characterized by, but not limited to false accusations and inappropriate comments.

Complainant does not address his hostile work environment claim explicitly in his Response, but to the extent that he contends that the feedback provided by Fyfe, Blake and later Casteuble created a hostile work environment, he has identified no treatment that is "so objectively offensive as to alter the 'conditions' of [his] employment." *Onacle v. Sundown Offshore Servs., Inc.*, 523 U.S. 75, 80-81.

Complainant contends in his Response that "management increased pressure" on him after he met with an EEO counselor on November 23, 2013. Response at 15-18. He claims that Blake and Fyfe called Complainant into their office that day "because they wanted to know if

for further inquiry into his complaint for possible violations of 5 U.S.C. §§ 2302(b)(1), (b)(4), (b)(6), (b)(8), (b)(9), (b)(12) or any other prohibited personnel practice over which OSC exercises jurisdiction. OSC advised that it was preliminarily closing its inquiry and informed Appellant of his right to respond to OSC's determination. *Id.*, at 79-82.

On March 27, 2013, Appellant filed an Individual Right of Appeal (IRA) alleging that the Agency dismissed him from his position as a Training Instructor from FSI in retaliation for his protected disclosures. *See* Merit Systems Protection Board Form (MSPB) 185-1, Appeal Form; MSPB Form 185-5 Additional Disclosure, at 1-11.

On April 1, 2013, the Board informed Appellant about the burdens of proof in a non-preference eligible (excepted service) employee appeal and directed Appellant to submit evidence and argument establishing a non-frivolous allegation that this appeal is within the Board's jurisdiction. *See* Acknowledgment Order dated April 1, 2013, at 3-6. Appellant filed a response to the Acknowledgment Order on April 3, 2013. On April 5, 2013, the Board informed Appellant about the burdens of proof in an IRA appeal and directed Appellant to submit evidence and argument establishing a non-frivolous allegation that this appeal is within the Board's jurisdiction. *See* Order on Jurisdiction and Proof Requirements dated April 5, 2013 ("Jurisdiction Order"). Appellant filed a response to the Jurisdiction Order on April 14, 2013.

Legal Arguments

I.    Jurisdiction

A.    The Board Lacks Jurisdiction Because Appellant Is Not An Employee With Appeal Rights Under 5 U.S.C. § 7511(a)(1)(B)

The Board lacks jurisdiction over Appellant's appeal because he is not an employee with Board appeal rights under 5 U.S.C. § 7511(a)(1)(B). Only an "employee" as defined under 5 U.S.C. § 7511(a)(1) can appeal to the Board from an adverse action such as a removal. *Barrand*

4

*v. Dep't of Veterans Affairs*, 112 M.S.P.R. 210, ¶8 (2009); *see also* 5 U.S.C. §§ 7511(a)(1), 7512(1), 7513(d). Because Appellant is a nonpreference eligible who was terminated from a position in the excepted service, he may appeal his termination to the Board only if he qualifies as an "employee" under 5 U.S.C. § 7511(a)(1)(C)(i) or (ii). Under 5 U.S.C. § 7511(a)(1)(C), a nonpreference eligible in the excepted service is an "employee" if he (1) "is not serving a probationary or trial period under an initial appointment pending conversion to the competitive service"; or (2) "has completed two years of current continuous service in the same or similar positions in an Executive agency under other than a temporary appointment limited to two years or less." 5 U.S.C. § 7511(a)(1)(C)(i)-(ii). The Board has jurisdiction if either subsection (i) or (ii) is satisfied. *Van Wersch v. Dep't of Health & Human Services*, 197 F.3d 1144, 1151 (Fed. Cir. 1999).

Under 5 U.S.C. § 7511(a)(1)(C)(i) only excepted service employees "under an initial appointment pending conversion to the competitive service" are covered, provided they are not serving a probationary or trial period under such an appointment. *Forest v. Merit Systems Protection Board*, 47 F.3d 409, 412 (Fed. Cir. 1995). The employee's prior federal service may count toward the completion of this probationary period where: (1) the prior service was performed in the same agency; (2) it was performed in the same line of work; and (3) it was completed with no more than one break in service of less than 30 days. *McCrary v. Dep't of Army*, 103 M.S.P.R. 266, ¶ 12 (2006). Such service may have been in the competitive service or the excepted service and may have been under a term or temporary appointment. *See Liu v. Dep't of Agriculture*, 106 M.S.P.R. 178, ¶11 (2007); *McCrary*, ¶¶ 2, 15. Section 7511(a)(1)(C)(i) does not apply in this case because Appellants' appointment to the Training Instructor position under Section 704(A)(4)(B) of the Foreign Service Act of 1980 did not confer

5



United States Department of State

*Office of Civil Rights*

*Washington, D.C. 20520*
January 4, 2013

Andrew Culbertson
Supervisory Administrative Judge
Washington Field Office - Hearing Unit
Equal Employment Opportunity Commission
One NoMa Station
131 M St., NE, 4th Floor, Suite 04K05
Washington, D.C. 20507-1002

*The Agency fired William Director Debra Blake this month of January 2013 as soon as this case went to EEOC Judges at the request of Plaintiff*

Re:  Tiemoko Coulibaly
     Agency No. DOS-F-025-12

Dear Judge Culbertson:

On December 27, 2012, our office received from Complainant a request for an EEOC hearing in the above-referenced EEO case. Therefore, in accordance with EEOC Management Directive 110 and 29 C.F.R. 1614, *et seq.*, we are transmitting a copy of the Report of Investigation and Complaint File.

The Acknowledgement Order and Request for Name of Agency Representative for this complaint should be faxed to Ms. Anne Joyce, Assistant Legal Adviser, L/EMP, at (202) 647-6794, and to my office at (202) 647-4969.

If you need additional information, please contact me at (202) 647-9295.

Sincerely,

Eloisa J. Doñé, EEO Specialist
Intake and Resolution Section

Enclosures:
   1.  ROI
   2.  Complaint File

cc:  Tiemoko Coulibaly(Complaint File)
     Anne Joyce, L/EMP (ROI and Complaint File)

**EEO Investigative Affidavit** *(Witness)*

Brian Spring (HR) oh V have issue —

| | Page No | No Pages | Case No |
|---|---|---|---|
| | 1 | 19 | DOS-F-025-12 |

| 1 Affiant's Name (Last, First, MI) | | 2 Employing Facility HO initially refused |
|---|---|---|
| **Springer, Brian W.** | | FSI/EX/HR during 2 weeks to |

| 3 Position Title | 4 Grade Level | 5 Employment Address | 6 Unit Assigned |
|---|---|---|---|
| **Human Resources Specialist** | 12 | 4000 Arlington Blvd  Arlington, VA  22204 | provide plaintiff have a copier |

#### Privacy Act Notice

**Privacy Act Notice.** The collection of this information is authorized by the Equal Employment Opportunity act of 1972. 42 U.S.C. § 2000e-16. the Age Discrimination in Employment Act of 1967, as amended. 29 U.S.C. § 633a the Rehabilitation Act of 1973, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes, where pertinent, in a legal proceeding to which the Agency is a party or has an interest, to a government agency in order to obtain information relevant to a Agency decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits, to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits.

to a congressional office at your request; to an expert, consultant, or other person under contract with the agency to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of agency finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the FLRA/National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for agency employees and other witnesses.

Statement (Continue on Form 2589 if additional space is required. Form will auto-create if using Microsoft Word)

You have been named as a responding management official in an EEO claim filed by Dr. Tiemoko Coulibaly alleging he was discriminated against due to race, color, national origin and and reprisal for opposing discriminatory practices and policies, when

(1) On December 27, 2011, he received a negative performance appraisal report (PAR);
(2) Subjected to a hostile work environment characterized by, but not limited to, false accusations and inappropriate comments;
(3) Not properly compensated for work in Pay Periods 6 & 7;
(4) Limited Excepted Service Appointment was terminated effective April 6, 2012; and,
(5) Management required Complainant to use his sick and annual leave to address his health issues that resulted from the alleged discrimination

*Note: In order to ensure your affidavit is clear and detailed, you must answer every question and every subpart of every question. If you cannot answer a question, explain why you cannot answer the question. You may give approximations, but only when you cannot be more specific and only when you indicate that your answer is an approximation. You must provide any documentation requested and any documentation you feel supports your testimony. If you cannot provide the documentation, you must state why you cannot provide the documentation.*

Please respond in detail to the questions below based on these allegations.

Q: State your name, job title, grade level and your work location at the time of the alleged action

Brian Springer, Human Resources Specialist, GS-12  Arlington, Virginia

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| | 6/29/12 |

Form 2568-B, March 2001

Affidavit  G
Page  1  of 258

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No | No Page. | Case No. |
|---|---|---|
| 2 | 19 | DOS-F-025-12 |

Q2   What is your current job title, grade and work location?

Human Resources Specialist, GS-12   Arlington, Virginia

Q3   What was your working relationship with the Complainant?

I am one of the Human Resources Specialists that service the School of Language Studies at the Foreign Service Institute   I am the backup specialist for the division Dr. Coulibaly worked in

Did the Complainant report directly to you? If not, explain the reporting structure

The complainant reported to his supervisor in the Language School Division where he worked   I am not in that line of supervision

Provide a copy of the organizational chart please

Q4   What is your race? White

Q5   What is your color? White

Q6   What is your national origin? American

Q7   What is the Complainant's race? Black

Q8   When did you become aware of the Complainant's race? June 2011 How did you become aware of his race?

During Orientation

Q9   What is the Complainant's color? Black When did you become aware of his color and how?

June 2011 During Orientation

Q10   What is the Complainant's national origin? Cote D'Ivoire When did you become aware of his national origin and how?

During Orientation when he was filling out paperwork

Discrimination based on Retaliation for EEO Activity

Q11   Were you aware of EEO activity by the Complainant? If so, when did you become aware of it and how did you become aware of it?

I became aware of the EEO on April 2nd when an email was forwarded from Dr. Coulibaly

What did you know about the EEO activity?

**I declare under penalty of perjury that the foregoing is true and correct.**

Affiant's Signature

Form 2569, March 2001

Date Signed 6/29/12

Affidavit  G

Page  2  of  256

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No | No Page | Case No |
|---------|---------|---------|
| 5 | 19 | DOS-F-025-12 |

To my knowledge you are conducting the investigation.

Q18  To your knowledge, what was the outcome of the investigation? Please provide a copy of the report

This is the only investigation that I am aware of

Q19  Was Complainant informed of the outcome? If yes, how? What was he told?

I am not aware of any investigation

Q20  Was any corrective or preventative action necessary? If so, what action was taken? Provide a copy

N/A

Q21  If no investigation was conducted, please explain why

To my knowledge this is the investigation

Q22  Did you notice any changes in Complainant's work habits after the alleged hostile work environment occurred (or claims in this complaint which support his assertions of hostile work environment)? If so, what did you notice?

I am not in the chain of command or in a position where I could notice the complainant's work habits or the work environment.

Q23  Have you received training on anti-hostile work environment while employed by the agency? If so, when? **Provide a copy of your Training History report.**

I have received the following training. No FEAR Act, EEO Counselor Training and Refresher courses, EEO/Diversity Awareness for Managers and Supervisors. See attached

## Claim 1: December 27, 2011, Received Negative PAR

Q24  Did Complainant receive a PAR rating? If so, what date did this occur? All employees receive a rating

   a  What was his rating? You will need to contact his supervisor or Debra Blake for this. Our system for PARs is all electronic. It would go from employee to supervisor to rating official and then to the employees electronic personnel file

   b  What are the ranges for a rating? Unacceptable, Minimally Successful, Fully Successful, Excellent, Outstanding

   c  Provide a copy of his PAR  Contact his supervisor or Debra Blake for this

Q25  Who issued the PAR? Provide the full name, job title, telephone number, email address and work location for the person

---

**I declare under penalty of perjury that the foregoing is true and correct.**

Affiant's Signature

Date Signed  /29/12

**Affidavit G**
Page  5  of  258

HHQ 74

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No | No Page. | Case No |
|---------|----------|---------|
| 6 | 19 | DOS-F-025-12 |

Per Dr Coulibuly's request his supervisor was changed. I do not know which of the following actually issued his PAR.

Fyfe, Laura J
Language Training Supv.
(703) 302-7641
Fyfelj@state.gov

Casteuble, Philippe C
Language Training Supv
(703) 302-6723
Casteublepc@state.gov

Q26. What reasons was he given for getting the rating he received?

Please contact the above

Q27 Did he notify you or anyone in management that he felt he was subjected to a hostile work environment when he was issued an unsatisfactory PAR rating? If so, what date did he do so? See attached email

a Who did he notify? Provide the full name, job title, telephone number, email address and work location for the person

The email was to Debra Blake
Blake, Debra M;
EUA Division Director / Chair
(703) 302 7013
Blakedm@state.gov

b What did he say? If notification was in writing, provide a copy

See attached email

Q28 What did you or management do in response? Provide documentation to show what management did.

You will need to contact Debra Blake for this information.

Q29 What policies, procedures or contract provisions were relied on and used when making decisions about the PAR rating for the Complainant? Explain how the policies, procedures, provisions were used and applied to the decision making process

Provide the document name chapter, section/paragraph for this document Provide a copy of the document with your affidavit

This is a question for the rating official I am not involved in this process

Q30 Identify employees who received a PAR at the same time and in a similar position as the Complainant Provide the full name, job title, race, color, national origin, any known EEO activity, supervisor's name and work location for each employee you identify.

This is a question for the rating official and the Division Chair Debra Blake

**I declare under penalty of perjury that the foregoing is true and correct.**

Affiant's Signature

Form 2569, March 2001

Date Signed
6/29/12

Affidavit G
Page 6 of 258

009?6

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No | No Page. | Case No |
|---------|----------|---------|
| 7 | 19 | DOS-F-025-12 |

Q31   Provide the ratings received by each employee you identify
Explain why they received this rating
Provide a copy of their PAR
Provide who completed the rating for each employee.

Contact the rating official (Laura Fyfe or Philip Casteuble) for this information.

Q32   Was the Complainant's race a factor considered when rating the Complainant in his PAR? If so, you must explain why. If not, please explain why it was not a factor

Contact the rating official (Laura Fyfe or Philip Casteuble) for this information.

Q33   Was the Complainant's color a factor considered when rating the Complainant in his PAR? If so, you must explain why. If not, please explain why it was not a factor

Contact the rating official (Laura Fyfe or Philip Casteuble) for this information.

Q34   Was the Complainant's national origin a factor considered when rating the Complainant in his PAR? If so, you must explain why. If not, please explain why it was not a factor

Contact the rating official (Laura Fyfe or Philip Casteuble) for this information.

Q35   Are you aware of any other employees who were treated the same way and received a similar PAR rating for similar reasons?

I am not involved in this process and am not aware of any other employees who feel they have been treated this way

Provide the full name, job title, supervisor's name, race, color, national origin, work location and reasons the employees you identify are similar to the Complainant and were treated the same way.

Provide documentation to support your answer here including the PARs for each employee you identify

I am not involved in this process. My role in HR is Staffing and Recruitment and Personnel Action processing.

Q36.  Are you aware of any other employees who have been treated differently and received a higher PAR rating when in a similar situation or work performance as Complainant? No.

Provide the full name, job title, supervisor's name, work location and reasons the employees you identify are similar to the Complainant

You **must** describe how each employee you identify has been treated differently and the date(s) this occurred. Explain why they received the training and the Complainant did not.

**I declare under penalty of perjury that the foregoing is true and correct.**

Affiant's Signature

Form 2569, March 2001

Date Signed
6 /29/12

**Affidavit   G**
**Page   7   of   256**

009??

| | Page No | No Page | Case No |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | 8 | 19 | DOS-F-025-12 |

You **must** provide documentation to prove each employee was treated differently and identify who is responsible for treating them differently    Provide the PARs for each employee you identify

I am not aware of any employees as described above.

Q37   Was the Complainant's EEO activity a basis of consideration when making decisions about the Complainant and in the decision making process regarding the Complainant's PAR? If so, please explain why his EEO activity was a factor

Contact the rating official (Laura Fyfe or Philip Casteuble) for this information

### Claim 2: Hostile Work Environment not limited to False Accusations and Inappropriate Comments

Q38   The Complainant alleges he was subjected to a hostile work environment when he was the recipient of inappropriate comments and false accusations

What is your understanding and/or awareness of this occurring? Please explain/describe in detail

If you have no knowledge, please state so.

My only knowledge of this is in the emails

Q39.   The Complainant specifically alleges he was compared to Laura Fyfe's ex-husband and that because his national origin was the same and he had the same education achievements this was why the Complainant was hostile toward her and against her.

He alleges there was a lot of hostility between himself and Laura Fyfe

He alleges he requested to have a change of Supervisor due to the conflict

What is your understanding and/or awareness of the allegations as described above?

Based on the emails that is my understanding of what Dr. Coulibaly claims   It is my understanding that his request for a new supervisor was granted and he was moved under the supervision of Phillipe Casteuble

What is your understanding and/or awareness of the working relationship between the Complainant and Ms  Laura Fyfe and any difficulties there may have been between them?

My understanding is based on emails   He feels that he has been discriminated against because he is the same race as her ex-husband.  She felt harassed because he would accuse her of discrimination every time they communicated via email or face to face

What date did each incident you are aware of occur?  My understanding is based on the email and that this occurred frequently

Please explain what was happening at the time of each incident and how/why management responded as they did

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Date Signed $\quad$ /29/12 |
|---|---|---|

Form 2569, March 2001

**Affidavit G**
Page   8   of   256

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No | No Page | Case No |
|---------|---------|---------|
| 9 | 19 | DOS-F-025-12 |

Laura Fyfe sought HR's guidance on how to request the employee stop the harassing accusations and provide the employee with the correct avenue to address his claim of discrimination

Q30  Did anyone witness this occur? If so, provide the full name, job title, telephone number, email address, supervisor's name, work location for any witnesses. No witness see email.

Provide a signed and dated statement from each witness you identify.

a. What did the witness(es) see?
b. What will they say they witnessed?

Q41  Did the Complainant notify you and/or anyone in management that he felt he was subjected to a hostile work environment when these actions/incidents allegedly occurred? If so, what date did he do so?

a. Who did he notify? Provide the full name, job title, race, supervisor's name and work location for the person

| | | | |
|---|---|---|---|
| Fyfe, Laura J | Blake, Debra M; | Sachs, Hilary G; | Casteuble, Philippe C |
| Language Training Supv. | EUA Division Director / Chair | Language Training Supv. | Language Training Sup |

b  What did he say? If his notification was in writing, provide a copy

See attached.

Q42  What did you and/or management do in response? Provide documentation to show what management did

a  Was an investigation conducted? If so, what date was it conducted? Who conducted the investigation?

b  What was the outcome of the investigation into his allegation of hostile work environment?

c  Provide a copy of the investigative report and/or any notes or related documentation

When an employee feels they are being discriminated against they are directed to the appropriate office. See attached email

Q43  Identify any other employees who have reported they may have been treated in a same or similar manner as the Complainant has alleged by any employee? Provide the full name, job title, race, color, national origin, supervisor's name and work location for each employee you identify

I am not aware of any other employees who claim this

Q44  You must explain and describe how the employee(s) reported they were treated similarly, when this occurred with them, who treated them similarly and what you or management did in response

Provide documentation to show what occurred with each employee you identify and what management did in response to their allegations

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Date Signed $C_6$ /29/12 |
|---|---|---|
| Form 2569, March 2001 | | Affidavit  G |
| | | Page  9  of  256 |

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No | No Page. | Case No. |
|---------|----------|----------|
| **10** | **19** | **DOS-F-025-12** |

I am not aware of any other employees who claim this.

Q45   What policies, procedures or contract provisions were relied on and used when decisions were made in response to the Complainant's allegations of being subjected to a hostile work environment? Explain how the policies were used and applied to the situation and his allegations

Provide the document name, chapter, section/paragraph for this document.
Provide a copy of the document with your affidavit.

March 1, 2012 I received an email from Debra Blake asking me to advise Dr Coulibaly of his leave options  In that email he stated that he has been with FSI for 13 years and did not take leave.  He did not feel that he should have to take his leave now since he feels that he is sick from the hostile work environment.  I explained to Dr Coulibaly that his time as a contractor does not count toward his current leave accrual.  His annual and sick leave is a benefit offered to Federal Employees  He was not considered a Federal Employee as a contractor  I then advised him of his leave options and the procedures for requesting those options  I used 3 FAM 3410 and 3FAM 3420 to provide guidance to Dr. Coulibaly regarding requesting accrued leave and advanced leave.

See attached

Q46.   Did Complainant request that the alleged hostile work environment stop? If so, when did he tell you that and what action did you take?

The emails that were directed to me were in regards to the process of requesting leave.  Whenever Dr. Coulibaly claimed he was being retaliated against because of his EEO complaint, I advised him to contact his EEO representative and provided him with the contact information.

Q47   Are you aware of Complainant (or anyone acting in behalf of Complainant) bringing to the attention of any other management official concerns about a hostile work environment?  If so, to whom did he inform of his concerns and when, to the best of your knowledge

I am not aware of anyone other than the management officials copied on the email exchanges

Q48.   Was Complainant informed of the outcome of any investigation or management action taken in response to his allegation of a hostile work environment?  If yes, how? Provide a copy of any documentation related to any outcome.

I am not in a position to know if the complainant was informed of any outcome.

Q49   Was any corrective or preventative action necessary?  If so, what action was taken? Provide documentation showing any corrective or preventative action taken.

I am not in a position to know if any corrective or preventative action was necessary or taken

Q50.   If no investigation was conducted, please explain why

I am not in the line of management that would know if an investigation was conducted or why  To my knowledge this is the investigation

---

**I declare under penalty of perjury that the foregoing is true and correct.**

Affiant's Signature

Date Signed  6/29/12

Form 2569, March 2001

**Affidavit G**

**Page 10 of 256**

110980

| | Page No | No Pag | Case No |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **11** | **19** | **DOS-F-025-12** |

Q51   Did you notice any changes in Complainant's work habits after the alleged hostile work environment occurred (or claims in this complaint which support his assertions of a hostile work environment)? If so, what did you notice? Please describe specifically and provide any documentation that would support what you noticed

I am not in the line of management that is responsible for viewing the work habits.

Q52   Was the Complainant's race a basis of consideration when making decisions about the Complainant and the management actions the Complainant has alleged subjected him to a hostile work environment? If so, please explain why his race was a factor.

I do not know

Q53   Was the Complainant's color a basis of consideration when making decisions about the Complainant and the management actions the Complainant has alleged subjected him to a hostile work environment? If so, please explain why his color was a factor

I do not know

Q54   Was the Complainant's national origin a basis of consideration when making decisions about the Complainant and the management actions the Complainant has alleged subjected him to a hostile work environment? If so, please explain why his national origin was a factor

I do not know

Q55   Was the Complainant's EEO activity a basis of consideration when making decisions about the Complainant and the management actions the Complainant has alleged subjected him to a hostile work environment? If so, please explain why his EEO activity was a factor

I do not know

### Claim 3: Not Properly Compensated for Work in Pay Periods 6 & 7

Q56   The Complainant alleges he was not properly compensated in Pay Periods 6 & 7  What is your understanding and/or awareness of how he was paid in Pay Periods 6 & 7?

To my knowledge the employee was paid for time worked and for any approved leave.

Please explain what occurred and how he was compensated in these Pay Periods  You must contact the supervisor at for this information Phillip Casteuble

Provide documentation to show how he was compensated for these Pay Periods to detail how he was paid and how his time was charged

Please contact his supervisor who has access to his time records

---

**I declare under penalty of perjury that the foregoing is true and correct.**

Affiant's Signature

Date Signed  6/29/12

Form 2569, March 2001

**Affidavit G**

Page  11  of  256

00981

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No | No Pag | Case No |
|---------|--------|---------|
| 12 | 19 | DOS-F-025-12 |

Q57. Who is responsible for how the Complainant was paid in Pay Periods 6 & 7? Provide the full name, job title, telephone number and email address for the person(s)

Employees, Supervisors, and time keepers are responsible for how they are paid

| | | |
|---|---|---|
| Tiemoko Coulibaly | Phillip Casteuble | Alesandra Trilivas |
| 301-578-8570 | Language Training Supv | Program Assistant |
| | 703-302 6723 | 703 302 7642 |

a   Did the Complainant question how he was paid in Pay Periods 6 & 7? I do not recall a direct inquiry for that time period   Phuong Nguyen was assisting with some of his questions   A request may have gone into her or the supervisor and/or time keeper

b   What reason was he given for how he was paid? See above

c   What did he do in response?   See above

Q58   Has there been an adjustment or correction made since this time? If so, when did the adjustment or correction occur?

You will need to contact the supervisor Phillip Casteuble for this information.  There were adjustments made to his time when he would submit leave slips

a   What was the adjustment/correction? Please contact Phillip Casteuble for this information.

b   Did he receive the proper pay for Pay Periods 6 & 7? contact Phillip Casteuble for this information

c   Provide documentation to show an adjustment or correction occurred if applicable  contact Phillip Casteuble for this information

Q59   Identify other employees who were treated differently than the Complainant when in a similar pay situation. Provide the full name, job title, race, color, national origin, their supervisor's name and work location for each employee you identify

To my knowledge all employees are treated the same.

Q60   Please explain and describe how the employee(s) was treated differently, when they were treated differently and by whom they were treated differently

Provide documentation to prove and support what occurred with the employee(s) you identify.

To my knowledge all employees are treated the same.

Q61   What policies, procedures or contract provisions were relied on and used when decisions were made regarding how the Complainant would be paid for Pay Periods 6 & 7? Explain how the policies were applied to this situation

Provide the document name, chapter, section/paragraph for this document.

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed 6/29/12 |
|---|---|
| Form 2569, March 2007 | |

Affidavit G
Page 12 of 258

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No | No Page | Case No |
|---------|---------|---------|
| **13** | **19** | DOS-F-025-12 |

Provide a copy of the document with your affidavit

Contact the supervisor and time keeper regarding how they applied rules and regulations for how the complainant was paid

Q62   Identify any employees who have been treated in a same or similar manner as the Complainant and have been paid in a similar manner as the Complainant was in Pay Periods 6 & 7 when in a similar situation as the Complainant.

Provide the full name with middle initial, job title, race, color, national origin, their supervisor's name, work location and reasons you believe the employees you identify are similar to you

You **must** describe how each employee you identify has been treated in a similar way and the date this occurred.

Please provide documentation to prove each employee was treated in a similar way

Time and attendance is handled in the section between the employee, supervisor, and time keeper  I am not familiar with any other employees in that section   I am only familiar with Dr. Coulibaly's situation because he needed guidance with available leave processes  I would provide the same guidance to any employee.

Q63   Was the Complainant's race a basis of consideration when making decisions about the Complainant and the decision to pay him the way he was paid in Pay Periods 6 & 7" If so, please explain why his race was a factor

I do not know

Q64   Was the Complainant's color a basis of consideration when making decisions about the Complainant and the decision to pay him the way he was paid in Pay Periods 6 & 7" If so, please explain why his color was a factor

I do not know.

Q65   Was the Complainant's national origin a basis of consideration when making decisions about the Complainant and the decision to pay him the way he was paid in Pay Periods 6 & 7" If so, please explain why his national origin was a factor

I do not know

Q66   Was the Complainant's EEO activity a basis of consideration when making decisions about the Complainant and the decision to pay him the way he was paid in Pay Periods 6 & 7" If so, please explain why his EEO activity was a factor.

I do not know

## Claim 4: Excepted Service Appointment Terminated Effective April 6, 2012

Q67   Was the Complainant on an Excepted Service Appointment? If so what were the dates of this appointment? Yes, he was on an Excepted Service Appointment  06/19/11 through 06/18/13

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed 6/29/12 |
|---|---|

Form 2569, March 2001

Affidavit  G

00083

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No | No Page | Case No |
|---|---|---|
| **14** | **19** | **DOS-F-025-12** |

a  How long was the appointment to be?
These appointments are Not To Exceed (NTE) two years  Dr Coulibaly had an NTE  date of 06/18-13

b  What did this appointment consist of? Describe and/or define the Excepted Service Appointment.

**EXCEPTED SERVICE**

Federal or civil service positions not in the competitive service or the Senior Executive Service. Excepted service positions have been excepted from the requirements of the competitive service by law, Executive Order, or OPM regulation. Excepted service agencies set their own qualification requirements and are not subject to the appointment, pay, and classification rules in title 5, United States Code

c  Provide a copy of the Excepted Service Appointment

Please clarify  Excepted Service is a type of appointment, it is not something that can be copied  Are you asking for the definition (see above)

Q68.  Has the Complainant's Excepted Service Appointment been terminated? If so, what date did this occur?

Yes, the appointment was terminated effective 04/06/12

a  Who terminated his Excepted Service Appointment? Provide the full name, job title  telephone number and email address for the person(s)

Debra Blake made the recommendation to remove the employee during his probationary period.
Blake, Debra M;
EUA Division Director / Chair
(703) 302 7013
Blakedm@state.gov

b  Why was his Excepted Service Appointment terminated?

Unacceptable conduct and failure to follow leave procedures

d  What date was his Excepted Service Appointment terminated? April 6, 2012.

e. Provide documentation to show his Excepted Service Appointment has been terminated and when this occurred

See attached termination memo

Q69  Identify any other employees who were treated differently than the Complainant and have not had their limited Excepted Service Assignment terminated when in a similar situation as the Complainant.

Provide the full name, job title, race, color, national origin, their supervisor's name and work location for each employee you identify

| I declare under penalty of perjury that the foregoing is true and correct. | Affidavit  G<br>Page  14  of  256 |
|---|---|
| Affiant's Signature | Date Signed<br>G /29/12 |
| Form 2569  March 2001 | |

000983

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No | No Page | Case No |
|---|---|---|
| **15** | **19** | DOS-F-025-12 |

I am not aware of any employee in the same situation.

Q70  You must explain and describe how the employee(s) was treated differently, how and when they were treated differently and by whom they were treated differently

Provide documentation to prove and support what occurred with the employee(s) you identify

N/A

Q71  What policies, procedures or contract provisions were relied on and used when making the decisions about terminating the Complainant's limited Excepted Service assignment?

Explain how the policy or procedure was applied to this situation

Provide the document name, chapter, section/paragraph for this document

Provide a copy of the document with your affidavit

I do not know, I was not involved in the decision to terminate Dr. Coulibaly

Q72  Identify any other employees who have been treated in a same or similar manner and had their limited Excepted Service appointment terminated for similar reasons as the Complainant. N/A

Provide the full name with middle initial, job title, race, color, national origin, their supervisor's name, work location and reasons you believe the employees you identify are similar to you

You **must** describe how each employee you identify has been treated in a similar way and the date this occurred

You **must** provide documentation to prove each employee was treated in a similar way including documentation about terminated assignments

I am not involved in the decision making process to terminate employees  I do not know of any employee in a similar situation

Q73  Was the Complainant's race a basis of consideration when making decisions about the Complainant and the decision to terminate his limited Excepted Service assignment? If so, please explain why his race was a factor

I do not know. I was not involved in the decision to terminate

Q74  Was the Complainant's color a basis of consideration when making decisions about the Complainant and the decision to terminate his limited Excepted Service assignment? If so, please explain why his color was a factor.

I do not know, I was not involved in the decision to terminate

---

**I declare under penalty of perjury that the foregoing is true and correct.**

Affiant's Signature

Form 2569, March 2001

Date Signed 6/29/12

Affidavit G
Page 15 of 258

111985

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No | No Page. | Case No |
|---------|----------|---------|
| 16 | 19 | DOS-F-025-12 |

Q75.  Was the Complainant's national origin a basis of consideration when making decisions about the Complainant and the decision to terminate his limited Excepted Service assignment? If so, please explain why his national origin was a factor

I do not know, I was not involved in the decision to terminate

Q76.  Was the Complainant's EEO activity a basis of consideration when making decisions about the Complainant and the decision to terminate his limited Excepted Service assignment? If so, please explain why his EEO activity was a factor

I do not know, I was not involved in the decision to terminate.

## Claim 5: Required to Use Sick and/or Annual Leave to Address Health Issues Resulting from Alleged Discrimination

Q77  Did the Complainant request leave? If so what date(s) did he request leave since December 2011? I am not sure of the exact dates Dr. Coulibaly requested leave. There were periods of time that he was out and did not request leave and there were periods of time when he requested leave. His accrued leave balance was not enough to cover the period of time that he wanted. That is when I got involved in the process. I was providing Dr. Coulibaly information regarding his leave options. See my attached emails

Provide a copy of his leave request form(s).
The requests would have gone to the supervisor and time keeper. My role was to provide information and guidance on what a complete package contains. I am not in the chain of command that would approve or disapprove the request

Q78  What type of leave did he request? See attached emails.

a. What was the reason for the leave at this time? See attached emails.

b. What date did he request the leave for? See attached emails.

Q79  Was his request for leave approved or denied? If denied, who denied his request? Provide the full name, job title, telephone number, email address and work location of the person(s)

This is a question for the supervisor and time keeper  To my knowledge, when he requested leave it was approved. I believe his request for advanced leave had not been through the approval process prior to his termination. For verification of this please see attached emails and speak with his supervisor and time keeper
a. What was the reason for the denial?
b. Provide a copy of the leave request with the denial and any other documentation to show his request was denied
c. Provide a copy of any clock ring reports or attendance documentation for the date(s) he wanted this leave for

Q80  The Complainant alleges he should not have been charged with sick or annual leave to address health issues that resulted from alleged discrimination

Is there another type of leave that can be used by employees? If so, what type of leave is it?

**I declare under penalty of perjury that the foregoing is true and correct.**

Affiant's Signature

Form 2569  March 2001

Date Signed  6/29/12

**Affidavit  G**

Page  16  of  256

011986

| | Page No | No Page | Case No |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | 17 | 19 | DOS-F-025-12 |

No  When absent from work an employee must be on approved leave  An employee earns annual and sick leave

Q81   Did the Complainant request this other type of leave when he requested time off?

According to the attached emails he did not feel that he should use his sick leave   See attached emails

a  If so, was his request approved?

There is no special leave. An employee may request sick, annual, or Leave Without Pay.

b  If not approved, explain why  See above

Q82.   Did he tell you or anyone else in management that he did not want to use sick or annual leave for his time off of work to address health issues related to alleged discrimination? If so when? Yes. March 2012

a  What did he say?  See attached email

b  What did you or management do in response? See attached email

c  Provide documentation to show what occurred and how management responded. See attached email

Q83   What is the policy or procedure for leave? Please provide a copy of the document

See attached document

Q84   Identify other employees who may have been treated in a same or similar manner and charged with sick or annual to address health issues since December 2011?

Please contact the supervisor and time keeper for this information.

Provide the full name, job title, race, color, national origin, supervisor's name and work location for each employee you identify  N/A

Q85.   You must explain and describe how the employee(s) reported they were treated similarly, when this occurred with them, who treated them similarly and what you or management did in response.

Provide the leave requests and attendance records showing how leave was charged for each employee you identify from December 2011 to present. N/A

Q86.   What policies, procedures or contract provisions were relied on and used when decisions were made in response to the Complainant's use of leave to address health issues that resulted from alleged discrimination? Explain how the policies were used and applied to the situation and his allegations

All employees must submit requests for leave in accordance with the same procedures and regulations

| I declare under penalty of perjury that the foregoing is true and correct. | Affidavit  G Page  17  of  256 |
|---|---|
| Affiant's Signature | Date Signed 6/29/12 |
| Form 2569, March 2001 | |

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No | No. Page | Case No |
|---|---|---|
| 18 | 19 | DOS-F-025-12 |

Provide the document name, chapter, section/paragraph for this document

SLS Guide to Administrative Procedures — Page 4
3FAM 3423 – Section A # 1
3FAM 3427 – Section A & B
5CFR 630 401 Subpart D (Sick Leave)
My (3) emails dated March 2nd

Provide a copy of the document with your affidavit.

See attached

Q87   Are you aware of any other employees who have been treated differently and were able to use a different type of leave other than sick or annual when addressing health issues that they said resulted from alleged discrimination?

No.

Provide the full name, job title, race, color, national origin, supervisor's name, work location and reasons the employees you identify are similar to the Complainant

You **must** describe how each employee you identify has been treated differently and the date(s) this occurred Explain why they were able to use a different type of leave and the Complainant was not.

You **must** provide documentation to prove each employee was treated differently and identify who is responsible for treating them differently

Provide the leave requests and attendance records showing how leave was charged for each employee you identify from December 2011 to present

Q88.   Was the Complainant's race a basis of consideration when making decisions about the Complainant and the type of leave he would be charged with when he took off of work to address health issues? If so, please explain why his race was a factor.

I am not responsible for the approving or disapproving on any employees leave   I provided the information as requested to employees and/or management.

Q89.   Was the Complainant's color a basis of consideration when making decisions about the Complainant and the type of leave he would be charged with when he took off of work to address health issues? If so, please explain why his color was a factor

I am not responsible for the approving or disapproving on any employees leave   I provided the information as requested to employees and/or management

Q90   Was the Complainant's national origin a basis of consideration when making decisions about the Complainant and the type of leave he would be charged with when he took off of work to address health issues? If so, please explain why his national origin was a factor

I declare under penalty of perjury that the foregoing is true and correct.

Affidavit G
Page 18 of 256

Affiant's Signature

Date Signed 6/29/12

Form 2569, March 2001

DC988

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No | No Page | Case No |
|---------|---------|---------|
| 19 | 19 | DOS-F-025-12 |

I am not responsible for the approving or disapproving on any employees leave   I provided the information as requested to employees and/or management

Q91   Was the Complainant's EEO activity a basis of consideration when making decisions about the Complainant and the type of leave he would be charged with when he took off of work to address health issues? If so, please explain why his EEO activity was a factor.

I am not responsible for the approving or disapproving on any employees leave   I provided the information as requested to employees and/or management

Q92   The Complainant alleges an employee was treated differently than he was: Hmimiche.

Provide the full name, job title, race, color, national origin, supervisor's name, work location for this employee

Provide a copy of this employee's personnel notice in order to show what his/her position is with the Agency.

Q93   The Complainant alleges "Hmimiche" hired on at the same time he did, was treated better due to his relationship with Ms. Laura Fyte, and was not terminated from his appointment like the Complainant was

Has "Hmimiche" been treated differently than the Complainant? If so, please explain how he was treated differently, who treated him differently and why

I do not know, I am not in that office and am not able to observe.

If "Hmimiche" has been treated the same or similarly to the Complainant, please explain and describe how he/she has been treated the same and provide documentation to show "Hmimiche" has been treated similarly to the Complainant.

See above.

Q94   Did the Complainant file a grievance relative to any of the issues identified in the current EEO complaint?

If so, what date was it filed?
What was the outcome of the grievance?
Provide a copy of the grievance and related documentation including any resolutions and/or settlement agreements.

I am not aware of any grievance being filed

**When providing documentation to support your testimony, please identify what the document is and how it applies or supports your testimony. Please label each document provided and indicate which question it applies to. Thank you!**

---

I declare under penalty of perjury that the foregoing is true and correct.

**Affidavit G**
Page 19 of 256

| Affiant's Signature | Date Signed |
|---------------------|-------------|
|                     | 6/29/12 |

Form 2569 March 2001

## Certification

Case No
DOS-F-025-12

I have read the foregoing attached statement consisting of __19__ pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U S Code which states

Whoever in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies conceals or covers up by any trick scheme or device a material fact or makes any false fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both "

**Privacy Act Notice**

**Privacy Act Notice** The collection of this information is authorized by the Equal Employment Opportunity Act of 1972 42 U S C 2000e-16 The Age Discrimination in Employment Act of 1967 as amended 29 U S C 633a The Rehabilitation Act of 1973 as amended, 29 U S C 794a and Executive Order 11478 as amended. This information will he used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use this information may be disclosed to an appropriate government agency domestic or foreign for law enforcement purposes where pertinent, in a legal proceeding to which the Agency is a party or has an interest to a government agency in order to obtain information relevant to an Agency decision concerning employment, security clearances, contracts, licenses grants, permits or other benefits to a government agency upon its request when relevant to its decision concerning employment, security clearances security or suitability investigations contracts, licenses grants or other benefits to a congressional office at your request to an expert consultant, or other person under contract with the Agency to fulfil an agency function to the Federal Records Center for storage, to the Office of Management and Budget for review of private relief legislation to an independent certified public accountant during an official audit of Agency finances; to an investigation administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614 to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction, and to a labor organization as required by the National Labor Relations Act Under the Privacy Act provision the information requested is voluntary for the complainant and for Agency employees and other witnesses

**Declaration**

I declare under penalty of perjury, that the foregoing is true and correct

| Signature of Affiant | Date Signed |
|---|---|
| Brian Dpaung | 6/29/12 |

October 2005

Affidavit  G
Page  20  of  258

| Page No | No Pages | Case No |
|---------|----------|---------|
| 1 | 10 | DOS-F-025-12 |

**EEO Investigative Affidavit** *(Witness)*

*FSI executive director who signed termination letter*

| 1 Affiant's Name (Last First MI) | 2 Employing Facility *and refused to* Department of State *Receive medical* |
|---|---|
| **Russell, Catherine J.** | |

| 3 Position Title | 4 Grade Level | 5 Employment Address | 6 Unit Assigned |
|---|---|---|---|
| **Executive Director** | **SES** | 41000 Arlington Boulevard | **Foreign Service** |
| | | Arlington, Virginia 22204 | **Institute** |

*Certificate by mail by pretending*

---

**Privacy Act Notice**

Privacy Act Notice: The collection of this information is authorized by the Equal Employment Opportunity act of 1972 42 U.S.C. § 2000e-16 the Age Discrimination in Employment Act of 1967 as amended, 29 U.S.C. § 633a the Rehabilitation Act of 1973 as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes, where pertinent in a legal proceeding to which the Agency is a party or has an interest to a government agency in order to obtain information relevant to a Agency decision concerning employment security clearances, contracts, licenses grants, permits or other benefits, to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits

to a congressional office at your request to an expert, consultant or other person under contract with the agency to fulfill an agency function to the Federal Records Center for storage to the Office of Management and Budget for review of private relief legislation to an independent certified public accountant during an official audit of agency finances to an investigator and collective judge of complaints examiner adjudicator by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614 to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction and to a labor organization as required by the FLRA/National Labor Relations Act. Under the Privacy Act provision the information requested is voluntary for the complainant and for agency employees and other witnesses

*She left her position She to field it in her position today*

Statement: Continue on Form 2569 if additional space is required. Form will auto-create if using Microsoft Word)

You have been named as a responding management official in an EEO claim filed by Dr. Tiemoko Coulibaly alleging he was discriminated against due to race, color, national origin and and reprisal for opposing discriminatory practices and policies, when

(1) On December 27, 2011, he received a negative performance appraisal report (PAR),

(2) Subjected to a hostile work environment characterized by, but not limited to, false accusations and inappropriate comments,

(3) Not properly compensated for work in Pay Periods 6 & 7,

(4) Limited Excepted Service Appointment was terminated effective April 6, 2012, and,

(5) Management required Complainant to use his sick and annual leave to address his health issues that resulted from the alleged discrimination

*Note: In order to ensure your affidavit is clear and detailed, you must answer every question and every subpart of every question. If you cannot answer a question, explain why you cannot answer the question. You may give approximations, but only when you cannot be more specific and only when you indicate that your answer is an approximation. You must provide any documentation requested and any documentation you feel supports your testimony. If you cannot provide the documentation, you must state why you cannot provide the documentation.*

Please respond in detail to the questions below based on these allegations

Q1   State your name, job title, grade level and your work location at the time of the alleged action
**Catherine J. Russell, Executive Director, Foreign Service Institute, Senior Executive Service**
**National Foreign Affairs Training Center, 4000 Arlington Boulevard, Arlington, Virginia 22204**

I declare under penalty of perjury that the foregoing is true and correct

| Affiant's Signature *Catherine J. Russell* | Date Signed **6/26/2012** |
|---|---|
| Form 2568 B March 2007 | **Affidavit E** |
| | Page 1 of 116 |

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No | No Pages | Case No |
|---------|----------|---------|
| 2 | 10 | DOS-F-025-12 |

MAILING ADDRESS is U.S. Department of State, Foreign Service Institute, Shultz Center, Office of the Executive Director, Room F-2205, Washington, DC 2522-4201 (all mail must be sent to this address since it must go through a screening process; mail addressed to the actual address is not delivered)

Q2  What is your current job title, grade and work location?  **Same as above**

Q3  What was your working relationship with the Complainant?  **None.**

Did the Complainant report directly to you? If not, explain the reporting structure

**No. He worked in the School of Language Studies as an instructor, and reported to a Language Training Supervisor (Fyfe/Casteuble) who reports to a Department Director (Debra Blake) who reports to Associate Dean of the Language School (James North) who reports to the Dean of the Language School (Marianne Myles)**

Provide a copy of the organizational chart please  **Attached are organization charts**

Q4  What is your race?  **Caucasian**

Q5  What is your color?  **White**

Q6  What is your national origin?  **U.S.**

Q7  What is the Complainant's race?  **Do not know**

Q8  When did you become aware of the Complainant's race? How did you become aware of his race?.
**Do not know**

Q9  What is the Complainant's color? When did you become aware of his color and how?
**Do not know**

Q10  What is the Complainant's national origin? When did you become aware of his national origin and how?
**I was copied on an e-mail he wrote dated December 27, 2011, where he said he was "Ivorian". Copies of the e-mails are attached.**

Discrimination based on Retaliation for EEO Activity

Q11  Were you aware of EEO activity by the Complainant  If so, when did you become aware of it and how did you become aware of it? What did you know about the EEO activity?

**Mr. Coullbally copied me on an e-mail and had attached specific information that indicated he had filed a formal EEO case. The first time I recall seeing the information about a formal filing was in e-mails—in an e-mail he included exchanges about his formal complaint with an individual in the Department's Office of Civil Rights.**

I declare under penalty of perjury that the foregoing is true and correct.

Affant's Signature
*Catherine J Russell*
Form 2569, March 2009

Date Signed
6/26/2012

Affidavit E
Page  2  of  116

001547

|  | Page No | No Pages | Case No |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **3** | **10** | DOS-F-025-12 |

Q12  Were you involved in any previous EEO activity by the Complainant?
**None that I am aware of.**
If so, what was your role, what are the case numbers and what were the dates of these cases?
What was the outcome of cases you were involved in?
Please explain in detail and provide documentation to show your role in the activity, the current status of the activity and any resolution of the activity.

Q13  Were you aware of the Complainant opposing discriminatory practices or policies? If so, when did you become aware of it and how did you become aware of it?  What did you know?

**Mr. Coulibally copied me on e-mails where he outlined his allegations, and I believe the first time I was copied was on the December 27ᵗʰ e-mail.**

Hostile Work Environment Allegations

Q14  Are you aware of the Complainant reporting to you or anyone else in mangement that he felt he had been subjected to a hostile work environment? If so when?

**I was copied on e-mails.  I believe the first time was a December 27 2011 e-mail.**

a  Who did he notify? Provide full name, job title, phone number and email address.

**He sent the message to the Language School Department Chair, Debra Blake, dmblake@state.gov 703-302-7013; to Language Training Supervisors Laura Fyfe, lfyfe@state.gov 703-302-6741, Philippe Casteuble pecasteuble@statae.gov 703-302-6723; and Hilary Sachs hgsachs@state.gov 703-302-6713.**

**He copied for information James North, Associate Dean in SLS, jenorth@state.gov 703-302-7242 Language School Dean, Marianne Myles, mamyles@state.gov 703-302-7242.  She will soon become our Deputy Director of The Institute and will be able to be reached on 703-306-6707; Patrick Kennedy Undersecretary for Management at the Department of State, 202-647-1500; Deborah Duckett, the head of the FSI Personnel Office daduckett@state.gov 703-302-6811; Catherine J. Russell, Executive Director, cjrussell@state.gov 703-302-6729; Ruth Whiteside, the Director of the Foreign Service Institute rawshiteside@state.gov 703-302-2707; Tracey Jacobson, Deputy Director of the Foreign Service Institute tajacobson@state.gov 703-302-2707; Debra Smoker-All, Associate Dean for Management in the School of Language Studies dlsmoker-all@state.gov 703-302-7241.**

b.  What did he say?
**Attached are the e mails he sent.**

c  How did you or management respond? Explain in detail. Provide documentation to show how management responded.
**On December 28ᵗʰ, the Langauge School Department Chair in his direct line of supervision responded via e mail (attached).  She relayed that if he felt he was being discriminated against then he would pursue that**

---

I declare under penalty of perjury that the foregoing is true and correct

Affiant's Signature
*Catherine J Russell*
Form 2569, March 2011

Affidavit  E
Page  3  of  116

Date Signed
*6/26/2012*

through the proper channels with the Department's Office of Civil Rights. (e mail attached)  It is that Office that conducts official investigations into allegations of discrimination.

Q15   Did Complainant request that the alleged hostile work environment stop?  If so, when did he tell you that and what action did you take?
**His December 28th e mail and subsequent e mails relayed his concerns and others responded informing him that he should contact the Office of Civil Rights.  That Office conducts official investigations into such allegations.  I verbally confirmed with our Human Resources Office that management had contacted the Office of Civil Rights about the allegations.**

Q16   Are you aware of Complainant (or anyone acting in behalf of Complainant) bringing to the attention of any other management official concerns about a hostile work environment?  If so, to whom did he inform of his concerns and when?  To the best of your knowledge
**See respone to Question 14**

Q17   Was an investigation conducted into Complainant's allegations of hostile work environment?  If so, by whom and when?  **I do not know if the Office of Civil Rights conducted an official investigation**

Q18   To your knowledge, what was the outcome of the investigation?  Please provide a copy of the report  **I have no knowledge**

Q19   Was Complainant informed of the outcome?  If yes how ? What was he told?  **No knowledge**

Q20   Was any corrective or preventative action necessary?  If so, what action was taken?  Provide a copy
**No knowledge**

Q21   If no investigation was conducted, please explain why
**I have no knowledge**

Q22   Did you notice any changes in Complainant's work habits after the alleged hostile work environment occurred (or claims in this complaint which support his assertions of hostile work environment)?  If so, what did you notice?

**I do not have regular or even infrequent contacts with individual language instructors.  I am not certain that I actually ever met the complainant at all.**

Q23   Have you received training on anti-hostile work environment while employed by the agency ?  If so, when?  **Provide a copy of your Training History report   Yes.  Attached.**

**Claim 2: Hostile Work Environment not limited to False Accusations and Inappropriate Comments**

---

**I declare under penalty of perjury that the foregoing is true and correct.**

Affiant's Signature
*Catherine G Russell*
Form 2569  March 2007

Date Signed
6/26/2012

Affidavit E
Page  4  of  16

DOS-12

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No | No. Pages | Case No |
|---------|-----------|---------|
| 5 | 10 | DOS-F-025-12 |

Q24  The Complainant alleges he was subjected to a hostile work environment when he was the recipient of inappropriate comments and false accusations.

What is your understanding and or awareness of this occurring? Please explain/describe in detail.

My understanding is contained in the e-mails that are attached.

If you have no knowledge, please state so.  **My knowledge is contained to the e-mails which are attached.**

Q25  The Complainant specifically alleges he was compared to Laura Fyfe's ex-husband and that because his national origin was the same and he had the same education achievements this was why the Complainant was hostile toward her and against her.

He alleges there was a lot of hostility between himself and Laura Fyfe.

He alleges he requested to have a change of Supervisor due to the conflict.

What is your understanding and/or awareness of the allegations as described above?

**My knowledge is limited to the allegations in the e-mails he sent.**

What is your understanding and/or awareness of the working relationship between the Complainant and Ms. Laura Fyfe and any difficulties there may have been between them?

What date did each incident you are aware of occur?

The e-mails which are attached show the dates I was copied.

Please explain what was happening at the time of each incident and how/why management responded as they did.

**My knowledge is contained in the attachments.**

Q26  Did anyone witness this occur? If so, provide the full name, job title, telephone number, email address, supervisor's name, work location for any witnesses.

Provide a signed and dated statement from each witness you identify.

a.  What did the witness(es) see?
b.  What will they say they witnessed?
**I have no knowledge of any of this.**

Q27  Did the Complainant notify you and or anyone in management that he felt he was subjected to a hostile work environment when these actions/incidents allegedly occurred? If so, what date did he do so?

---

**I declare under penalty of perjury that the foregoing is true and correct.**

Affiant's Signature
*Catherine J. Russell*

Form 2569  March 2001

Affidavit E
Page  5  of  116

Date Signed
*6/26/2012*

| Page No | No Pages | Case No |
|---------|----------|---------|
| **EEO Investigative Affidavit (Continuation Sheet)** | | |
| **6** | **10** | **DOS-F-025-12** |

**Yes in the attached e mails with various dates, he alleges he was subject to a hostile work environment. He was informed if felt he was discriminated against he should contact the Office of Civil Rights.**

a  Who did he notify? Provide the full name, job title, race  supervisor's name and work location for the person
**In addition to the information provide in response to Q 15, he also notified the Personnel Specialist in the FSI Human Resources Office who works on School of Language School staffing, Brian Springer, bwspringer@state.gov 703-302-7650, another personnel management specialist Michelle D. Bryant mdbryant@state.gov 703-302-6814) and Michelle's and Brian's supervisor Bach Phuong Nguyen bpnguyen@state.gov 703-302-6841; Mr. Nguyen's supervisor and the head of the FSI Human Resources officer Deborah A. Duckett daduckett@state.gov 703-302-6811.  He also notified Union represents Andreas Ryschka (ryschkaa2@state.gov 703-302-7486; Nicholaus Koster (kosternx@state.gov 703-302-7486; and Marlene Freeman (freemanmlfreeman@state.gov 703-302-7286.**

b  What did he say? If his notification was in writing, provide a copy  **Attached.**

Q28  What did you and or management do in response? Provide documentation to show what management did
**He was referred to the Office of Civil Rights.   They would conduct the investigation.**

a  Was an investigation conducted? If so, what date was it conducted  Who conducted the investigation?

b  What was the outcome of the investigation into his allegation of hostile work environment?

c  Provide a copy of the investigative report and or any notes or related documentation

**The Office of Civil Rights should respond.**

Q29  Identify any other employees who have reported they may have been treated in a same or similar manner as the Complainant has alleged by any employee? Provide the full name, job title, race, color  national origin, supervisor's name and work location for each employee you identify

**The Office of Civil Rights would I believe be the right office to respond to this I believe.**

Q30  You must explain and describe how the employee(s) reported they were treated similarly, when this occurred with them  who treated them similarly and what you or management did in response

**See response to Q 29**

Provide documentation to show what occurred with each employee you identify and what management did in response to their allegations   **See response to 29**

---

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature
*Catherine J Russell*
Form 2509, March 2001

**Affidavit E**
Page  8  of  116

Date Signed
*16/26/2012*

| | Page No | No Pages | Case No |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | 7 | 10 | DOS-F-025-12 |

Q31   What policies, procedures or contract provisions were relied on and used when decisions were made in response to the Complainant's allegations of being subjected to a hostile work environment? Explain how the policies were used and applied to the situation and his allegations.

   Provide the document name, chapter, section/paragraph for this document
   Provide a copy of the document with your affidavit

   **3 FAM 1520 Section (attached)   3 FAM 1526.2 (b) Office of Civil Rights is the main contact point and is responsible for investigating or overseeing investigations of alleged discriminatory harassment and (c) supervisors or others who are informed of....must immediately report such incidents to S/OCR.**

Q32   Did Complainant request that the alleged hostile work environment stop? If so, when did he tell you that and what action did you take?   See attached e mails

Q33   Are you aware of Complainant (or anyone acting in behalf of Complainant) bringing to the attention of any other management official concerns about a hostile work environment?   If so, to whom did he inform of his concerns and when, to the best of your knowledge

   **The e mails that I received are attached**

Q34   Was Complainant informed of the outcome of any investigation or management action taken in response to his allegation of a hostile work environment?   If yes, how? Provide a copy of any documentation related to any outcome

   **I do not have knowledge of this**

Q35.   Was any corrective or preventative action necessary? If so, what action was taken? Provide documentation showing any corrective or preventative action taken

   **The Office of Civil Rights might have this information.**

Q36.   If no investigation was conducted, please explain why   **The Office of Civil Rights would respond to this**

Q37   Did you notice any changes to Complainant's work habits after the alleged hostile work environment occurred (or claims in this complaint which support his assertions of a hostile work environment)?   If so, what did you notice? Please describe specifically and provide any documentation that would support what you noticed

   **Not applicable.**

Q38   Was the Complainant's race a basis of consideration when making decisions about the Complainant and the management actions the Complainant has alleged subjected him to a hostile work environment? If so, please explain why his race was a factor

   **Not to the best of my knowledge.**

**Affidavit E**
**Page   7   of   116**

**I declare under penalty of perjury that the foregoing is true and correct.**

Affiant's Signature
*Catherine J Russell*

Date Signed
*6/26/2013*

Form 2569  March 2003

Case 1:14-cv-00712-RC   Document 1-1   Filed 04/08/14   Page 60 of 119

| | Page No | No Pages | Case No |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | 8 | 10 | DOS-F-025-12 |

Q39    Was the Complainant's color a basis of consideration when making decisions about the Complainant and the management action, the Complainant has alleged subjected him to a hostile work environment? If so, please explain why his color was a factor.
**Not to the best of my knowledge**

Q40    Was the Complainant's national origin a basis of consideration when making decisions about the Complainant and the management actions the Complainant has alleged subjected him to a hostile work environment? If so, please explain why his national origin was a factor.
**Not to the best of my knowledge**

Q41    Was the Complainant's EEO activity a basis of consideration when making decisions about the Complainant and the management action, the Complainant has alleged subjected him to a hostile work environment? If so, please explain why his EEO activity was a factor.
**No**

## Claim 4: Excepted Service Appointment Terminated Effective April 6, 2012

Q42    Was the Complainant on an Excepted Service Appointment? If so what were the dates of this appointment? **I do not know—the School of Language Studies and the FSI Human Resources Office would know this.**

a    How long was the appointment to be? One year.
**Yes.**

b    What did this appointment consist of? Describe and or define the Excepted Service Appointment
**The School and the Human Resources Office would have to provide this**

c    Provide a copy of the Excepted Service Appointment
**The School or Human Resources Office would have to provide this.**

Q43    Has the Complainant's Excepted Service Appointment been terminated? If so, what date did this occur?
**Yes. The School or Human Resources Office would have to provide the specifics.**

a  Who terminated his Excepted Service Appointment? Provide the full name, job title, telephone number and email address for the person(s)
**In my position as Executive Director, either I or my Deputy sign termination letters based on information provided to us.  As the Executive Director, I signed the letter terminating his appointment during the first year trial period based on the information provided by his supervisory chain of command and school.  Catherine J. Russell, Executive Director, 703-302-6729; russellcj@state.gov**

b  Why was his Excepted Service Appointment terminated?
**Unacceptable conduct that adversely affected the operations of the French section, European and African Languages.  Specifically inappropriate interactions with supervisors and failure to follow established procedures for requesting leave. (a copy of the letter is attached)**

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's signature
*Catherine J Russell*
Form 2569  March 2001

Date Signed
6/26/2012

Affidavit E
Page 8 of 116

003401

d. What date was his Excepted Service Appointment terminated?
**He was provided a letter dated April 2, 2012 which informed him that his appointment would be terminated during his trial period, on April 6, 2012.**

e. Provide documentation to show his Excepted Service Appointment has been terminated and when this occurred
**I do not have this type of documentation.**

Q14. Identify any other employees who were treated differently than the Complainant and have not had their limited Excepted Service Assignment terminated when in a similar situation as the Complainant

**I do not have knowledge of this**

Provide the full name, job title, race, color, national origin, their supervisor's name and work location for each employee you identify. **I do not have knowledge of this type information**

Q45. You must explain and describe how the employee(s) was treated differently, how and when they were treated differently and by whom they were treated differently
Provide documentation to prove and support what occurred with the employee(s) you identify
**I do not have this type information**

Q46. What policies, procedures or contract provisions were relied on and used when making the decisions about terminating the Complainant's limited Excepted Service assignment?

Explain how the policy or procedure was applied to this situation

Provide the document name, chapter, section/paragraph for this document

Provide a copy of the document with your affidavit

**FSI Human Resources Office Standard Operating Procedures and 3 FAM 2824.4 (attached)**

Q47. Identify any other employees who have been treated in a same or similar manner and had their limited Excepted Service appointment terminated for similar reasons as the Complainant. **I do not have knowledge of this**

Provide the full name with middle initial, job title, race, color, national origin, their supervisor's name, work location and reasons you believe the employee you identify are similar to you

You **must** describe how each employee you identify has been treated in a similar way and the date this occurred

You **must** provide documentation to prove each employee was treated in a similar way, including documentation about terminated assignments

Affidavit E
Page 9 of 116

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature
Catherine J Russell

Date Signed
6/26/2012

Form 2569 March 2001

|  | Page No | No Pages | Case No |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **10** | **10** | DOS-F-025-12 |

Q48    Was the Complainant's race a basis of consideration when making decisions about the Complainant and the decision to terminate his limited Excepted Service assignment? If so, please explain why his race was a factor
**Not to my knowledge**

Q49    Was the Complainant's color a basis of consideration when making decisions about the Complainant and the decision to terminate his limited Excepted Service assignment? If so, please explain why his color was a factor
**Not to my knowledge**

Q50    Was the Complainant's national origin a basis of consideration when making decisions about the Complainant and the decision to terminate his limited Excepted Service assignment? If so, please explain why his national origin was a factor
**Not to my knowledge**

Q51    Was the Complainant's EEO activity a basis of consideration when making decisions about the Complainant and the decision to terminate his limited Excepted Service assignment? If so, please explain why his EEO activity was a factor   **Not to my kanwledge**

Q52    The Complainant alleges "Himimiche  hired on at the same time he did, was treated better due to his relationship with Mr. Laura Este, and was not terminated from his appointment like the Complainant was

Has "Himimiche" been treated differently than the Complainant? If so, please explain how he was treated differently, who treated him differently and why

If "Himimiche  has been treated the same or similarly to the Complainant, please explain and describe how he/she has been treated the same and provide documentation to show "Himimiche  has been treated similarly to the Complainant

**I have no knowledge of this**

Q53    Did the Complainant file a grievance relative to any of the issues identified in the current EEO complaint?

If so, what date was it filed?
What was the outcome of the grievance?

Provide a copy of the grievance and related documentation including any resolutions and or settlement agreements

**I have no knowledge of any grievance.**

**This is the end of my statement, nothing more follows.**

**Affidavit E**

**Page  10  of  116**

I declare under penalty of perjury that the foregoing is true and correct

Affiant's Signature

*Catherine J Russell*

Date Signed
6/24/2012

Form 2569, March 2001

## Certification

Case No
DOS-F-025-12

I have read the foregoing attached statement, consisting of __/6__ pages and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001. Title 18 of the U.S. Code which states

Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies conceals or covers up by any trick, scheme, or device a material fact or makes any false fictitious or fraudulent statements or representation or makes or uses any false writing or document knowing the same to contain any false fictitious or fraudulent statement or entry shall be fined not more than $10,000 or imprisoned not more than 5 years or both.

### Privacy Act Notice

**Privacy Act Notice** The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. 2000e-16. The Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. 633a The Rehabilitation Act of 1973 as amended 29 U.S.C. 794a and Executive Order 11478 as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes, where pertinent in a legal proceeding to which the Agency is a party or has an interest to a government agency in order to obtain information relevant to an Agency decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants, or other benefits, to a congressional office at your request to an expert, consultant, or other person under contract with the Agency to fulfill an agency function to the Federal Records Center for storage to the Office of Management and Budget for review of private relief legislation, to an independent certified public accountant during an official audit of Agency finances to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614 to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction, and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant and for Agency employees and other witnesses.

### Declaration

I declare under penalty of perjury, that the foregoing is true and correct

| Signature of Affiant | Date Signed |
|---|---|
| Catherine J Russell | 6/26/2012 |

October 2005

Leave 15 Gue

| | Page No | No. Pages | Case No. |

**EEO Investigative Affidavit (Witness)**

*Plaintiff Direct Supervisor who berated him* **19** **DOS-F-025-12**
*and claimed he doesn't*

| 1 Affiant's Name (Last, First, MI) | | 2 Employing Facility |
| Casteuble, Philippe C. | | US Department of State |

| 3 Position Title | 4 Grade Level | 5 Employment Address | 6 Unit Assigned |
| Language Training Supervisor | GG13 | 4000 Arlington Boulevard<br>Arlington, VA 20522-4201 | FSI/SLS/EUA *know why he was fired* |

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity act of 1972, 42 U.S.C. § 2000e-16, the Age Discrimination in Employment Act of 1967 as amended, 29 U.S.C. § 633a the Rehabilitation Act of 1973, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes, where pertinent, in a legal proceeding to which the Agency is a party or has an interest, to a government agency in order to obtain information relevant to a Agency decision concerning employment security clearances, contracts, licenses, grants, permits or other benefits, to a government agency upon its request when relevant to its decision concerning employment security clearances, security or suitability investigations, contracts, licenses, grants or other benefits, to a congressional office at your request; to an expert, consultant or other person under contract with the agency to fulfill an agency function; to the Federal Records Center for storage, to the Office of Management and Budget for review of private relief legislation, to an independent certified public accountant during an official audit of agency finances, to an investigative, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614, to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction, and to a labor organization as required by the FLRA/National Labor Relations Act. Under the Privacy Act provision the information requested is voluntary for the complainant, and for agency employees and other witnesses.

Statement (Continue on Form 2567 if additional space is required   Form will auto-create if using Microsoft Word)

You have been named as a responding management official in an EEO claim filed by Dr. Tiemoko Coulibaly alleging he was discriminated against due to race, color, national origin and and reprisal for opposing discriminatory practices and policies, when

(1) On December 27, 2011, he received a negative performance appraisal report (PAR),
(2) Subjected to a hostile work environment characterized by, but not limited to, false accusations and inappropriate comments,
(3) Not properly compensated for work in Pay Periods 6 & 7,
(4) Limited Excepted Service Appointment was terminated effective April 6, 2012, and,
(5) Management required Complainant to use his sick and annual leave to address his health issues that resulted from the alleged discrimination

*Note: In order to ensure your affidavit is clear and detailed, you must answer every question and every subpart of every question. If you cannot answer a question, explain why you cannot answer the question. You may give approximations, but only when you cannot be more specific and only when you indicate that your answer is an approximation. You must provide any documentation requested and any documentation you feel supports your testimony. If you cannot provide the documentation, you must state why you cannot provide the documentation.*

Please respond in detail to the questions below based on these allegations.

Q1   State your name, job title, grade level and your work location at the time of the alleged action.
**Philippe C Casteuble**
Language Training Supervisor
GG13
FSI School of Language Studies
4000 Arlington Boulevard

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Date Signed |
| *Philippe C Casteuble* | | 6/29/12 |

Form 2565-B March 2001

01227

| | Page No | No Pages | Case No |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **2** | **19** | **DOS-F-025-12** |

Arlington, VA

Q2 What is your current job title, grade and work location?
Same as above

Q3. What was your working relationship with the Complainant?
I was a language training supervisor in the French section where he was a language and culture instructor

Did the Complainant report directly to you? If not, explain the reporting structure
He reported to me from January 2012 until his departure

Provide a copy of the organizational chart

Q4 What is your race?
White

Q5. What is your color?
I am white

Q6 What is your national origin?
I was born and raised in France

Q7. What is the Complainant's race?
I will infer he is black

Q8 When did you become aware of the Complainant's race? How did you become aware of his race?
The first time I met him

Q9. What is the Complainant's color? When did you become aware of his color and how?
He is black. I became aware of his color the first time I met him

Q10. What is the Complainant's national origin? When did you become aware of his national origin and how?
He is from Cote d'Ivoire. I read his biography on the internet

Discrimination based on Retaliation for EEO Activity

Q11 Were you aware of EEO activity by the Complainant? If so, when did you become aware of it and how did you become aware of it? What did you know about the EEO activity?

I was not notified any EEO activity before I received the present document

Q12 Were you involved in any previous EEO activity by the Complainant?
I was not

If so, what was your role, what are the case numbers and what were the dates of these cases?
What was the outcome of cases you were involved in?

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Date Signed |
|---|---|---|
| | | 6/29/12 |

Form 2569, March 2001

Affidavit H
Page 2 of 108

| | Page No. | No. Pages | Case No |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | 3 | 19 | DOS-F-025-12 |

Please explain in detail and provide documentation to show your role in the activity, the current status of the activity and any resolution of the activity

Q13 Were you aware of the Complainant opposing discriminatory practices or policies? If so, when did you become aware of it and how did you become aware of it? What did you know?

I became aware of the Complainant opposing discriminatory practices or policies when I received a copy of Debra Blake's Memorandum of conversation (EUA Division Director) and Mr Tiemoko Coulibaly's written response dated November 26, 2012  Mr. Tiemoko Coulibaly stated in several places that he was discriminated against.

### Hostile Work Environment Allegations

Q14.  Are you aware of the Complainant reporting to you or anyone else in mangement that he felt he had been subjected to a hostile work environment? If so when?

He stated he was subject to hostile work environment when we met the first time mid January 2012 to go over his work ╱ requirements.

a  Who did he notify" Provide full name, job title, phone number and email address.

I do not recall he mentioned he notified anybody

b.  What did he say?

He said he wanted hostile work requirement from supervisors to stop

c  How did you or mangement respond? Explain in detail. Provide documentation to show how management responded.

He had already met with management  Consequently I did not have to take any action.

Q15    Did Complainant request that the alleged hostile work environment stop? If so, when did he tell you that and what action did you take?

He told me during our first meeting in mid January that he wanted hostile work environment to stop. Since it was not directed at me I said I was looking forward to working with him

Q16    Are you aware of Complainant (or anyone acting in behalf of Complainant) bringing to the attention of any other management official concerns about a hostile work environment?  If so, to whom did he inform of his concerns and when, to the best of your knowledge.

It is mentioned in the Memorandum of conversation from Ms. Debra Blake and Mr. Tiemoko Coulibaly's response to it dated November 23, 2011

Q17    Was an investigation conducted into Complainant's allegations of hostile work environment? If so, by whom and when?

Per the Memorandum of Conversation, it appears Mr  Tiemoko Coulibaly met with Ms. Debra Blake on November 15, 2012

Q18.  To your knowledge, what was the outcome of the investigation?  Please provide a copy of the report
Beside the Memorandum of Conversation I am not aware of any report.

---

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | | Date Signed |
|---|---|---|
| | | 6/29/12 |
| Form 2569, March 2001 | Affidavit  H | |
| | Page  3   of  106 | |

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No | No Pages | Case No |
|---|---|---|
| 4 | 19 | DOS-F-025-12 |

Q19   Was Complainant informed of the outcome? If yes, how? What was he told?
Beside the Memorandum of Conversation I am not aware of any other outcome than Mr. Tiemoko Coulibaly becoming my supervisee

Q20   Was any corrective or preventative action necessary? If so, what action was taken? Provide a copy.
I am only aware that Mr. Tiemoko Coulibaly became my supervisee for Calendar year 2012

Q21   If no investigation was conducted, please explain why.
I am not aware as to why.

Q22   Did you notice any changes in Complainant's work habits after the alleged hostile work environment occurred (or claims in this complaint which support his assertions of hostile work environment)? If so, what did you notice?
I am aware that Ms. Laura Fyfe mentioned insubordination. He also disrupted a French section-wide training event on December 29, 2012

Q23   Have you received training on anti-hostile work environment while employed by the agency? If so, when? **Provide a copy of your Training History report.**
I attended training on EEO/Diversity Awareness in June 28-29, 2011 and on Leading a Diverse Workforce on March 2, 2012



### Claim 1: December 27, 2011, Received Negative PAR

Q24   Did Complainant receive a PAR rating? If so, what date did this occur?
He received a PAR rating from Ms. Laura Fyfe
   a  What was his rating?
Not successful
   b  What are the ranges for a rating?

Not successful, Fully sucessful; Exceed expectations, outstanding

   c  Provide a copy of his PAR

Q25   Who issued the PAR? Provide the full name, job title, telephone number, email address and work location for the person
Laura Fyfe, Langauge Training Supervisor, 703-302-7641, Fyfel.J@state.gov.
   FSI School of Language Studies
   4000 Arlington Boulevard
   Arlington, VA

Q26   What reasons was he given for getting the rating he received?
Most likely performance did not meet expectations

Q27   Did he notify you or anyone in management that he felt he was subjected to a hostile work environment when he was issued an unsatisfactory PAR rating? If so, what date did he do so?
I do not recall such an action from him after he received his PAR

---

**I declare under penalty of perjury that the foregoing is true and correct.**

Affiant's Signature   _Philip C. Casterelle_

Form 2569, March 2007

Date Signed   6/29/12

Affidavit  H
Page   4   of   106

| | Page No | No. Pages | Case No |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **5** | **19** | **DOS-F-025-12** |

a. Who did he notify? Provide the full name, job title, telephone number, email address and work location for the person.

b. What did he say? If notification was in writing, provide a copy

Q28. What did you or management do in response? Provide documentation to show what management did.

I don't know how management responded

Q29. What policies, procedures or contract provisions were relied on and used when making decisions about the PAR rating for the Complainant? Explain how the policies, procedures, provisions were used and applied to the decision making process.

I was not the supervisor who rated his performance for his 2011 PAR

Provide the document name, chapter, section/paragraph for this document. Provide a copy of the document with your affidavit.

I was not the supervisor who rated his performance for his 2011 PAR

Q30. Identify employees who received a PAR at the same time and in a similar position as the Complainant. Provide the full name, job title, race, color, national origin, any known EEO activity, supervisor's name and work location for each employee you identify

The following employees were on a one-year probation, like Mr. Tiemoko Coulibaly

- **AitMouloud, Ahmed**
Language and Training Instructor
White
Algeria
No EEO activity
Supervisor: Philippe C Casteuble
FSI School of Language Studies
4000 Arlington Boulevard
Arlington, VA

- **Boumaza, Lynda**
Language and Training Instructor
White
Algeria
No EEO activity
Supervisor: Philippe C Casteuble
FSI School of Language Studies
4000 Arlington Boulevard
Arlington, VA

- **Cheballah, Amine**
Language and Training Instructor
White
Algeria
No EEO activity
Supervisor: Philippe C Casteuble
FSI School of Language Studies

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed |
|---|---|
| | 6/29/12 |
| Form 2569, March 2001 | Affidavit H |

Page 5 of 106

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 6 | 19 | DOS-F-025-12 |

4000 Arlington Boulevard
Arlington, VA

• **Maugrion, Amanda**
Language and Training Instructor
White
USA
No EEO activity
Supervisor  Philippe C Casteuble
FSI School of Language Studies
4000 Arlington Boulevard
Arlington, VA

• **Robert, Anne**
Language and Training Instructor
White
France
No EEO activity
Supervisor: Philippe C Casteuble
FSI School of Language Studies
4000 Arlington Boulevard
Arlington, VA

• **Zemni, Mouez**
Language and Training Instructor
White
Tunisia
No EEO activity
Supervisor  Philippe C Casteuble
FSI School of Language Studies
4000 Arlington Boulevard
Arlington, VA

• **Akpaklu, Bienvenu**
Language and Training Instructor
Black
Benin
No EEO activity
Supervisor  Laura J Fyfe
FSI School of Language Studies
4000 Arlington Boulevard
Arlington, VA

• **Turner Elizabeth**
Language and Training Instructor
White
France
No EEO activity
Supervisor: Hilary G Sachs
FSI School of Language Studies
4000 Arlington Boulevard

---

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

Form 2569, March 2001

Date Signed
6/19/12

**Affidavit H**
Page  6  of  108

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No |
|----------|-----------|---------|
| 7 | 19 | DOS-F-025-12 |

Arlington, VA

Q31    Provide the ratings received by each employee you identify.
Explain why they received this rating.
Provide a copy of their PAR.
Provide who completed the rating for each employee.

Ratings were based on performance

The named supervisors above completed the ratings for each employee they supervised

Q32    Was the Complainant's race a factor considered when rating the Complainant in his PAR? If so, you must explain why. If not, please explain why it was not a factor

Race was not a factor  It is my understanding it would be illegal

Q33    Was the Complainant's color a factor considered when rating the Complainant in his PAR? If so, you must explain why. If not, please explain why it was not a factor.

Color was not a factor  It is my understanding it would be illegal.

Q34    Was the Complainant's national origin a factor considered when rating the Complainant in his PAR? If so, you must explain why. If not, please explain why it was not a factor

National origin was not a factor  It is my understanding it would be illegal.

Q35   Are you aware of any other employees who were treated the same way and received a similar PAR rating for similar reasons?

All employees I am aware of were treated according to established standards and procedures

Provide the full name, job title, supervisor's name, race, color, national origin, work location and reasons the employees you identify are similar to the Complainant and were treated the same way.

Provide documentation to support your answer here including the PARs for each employee you identify

Q36   Are you aware of any other employees who have been treated differently and received a higher PAR rating when in a similar situation or work performance as Complainant?

All employees I am aware of were treated according to established standards and procedures

Provide the full name, job title, supervisor's name, work location and reasons the employees you identify are similar to the Complainant

You **must** describe how each employee you identify has been treated differently and the date(s) this occurred  Explain why they received the training and the Complainant did not

You **must** provide documentation to prove each employee was treated differently and identify who is responsible for treating them differently

Provide the PARs for each employee you identify

---

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---------------------|-------------|
| *[signature]* Philippe C. Castille | 6/29/12 |

Form 2569, March 2001

Affidavit  H
Page  7  of  106

| | Page No. | No. Pages | Case No |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | 8 | 19 | DOS-F-025-12 |

Q37  Was the Complainant's EEO activity a basis of consideration when making decisions about the Complainant and in the decision making process regarding the Complainant's PAR? If so, please explain why his EEO activity was a factor

I was not notified any EEO activity before I received the present document

## Claim 2: Hostile Work Environment not limited to False Accusations and Inappropriate Comments

Q38.  The Complainant alleges he was subjected to a hostile work environment when he was the recipient of inappropriate comments and false accusations.

What is your understanding and/or awareness of this occurring? Please explain/describe in detail.

If you have no knowledge, please state so

My understanding is limited to the fact that he shared his concerns with Ms. Laura Fyfe and then with SLS/EUA division director Debra Blake

Q39  The Complainant specifically alleges he was compared to Laura Fyfe's ex-husband and that because his national origin was the same and he had the same education achievements this was why the Complainant was hostile toward her and against her

He alleges there was a lot of hostility between himself and Laura Fyfe.

He alleges he requested to have a change of Supervisor due to the conflict

What is your understanding and/or awareness of the allegations as described above?
I was not a witness to these allegations

What is your understanding and/or awareness of the working relationship between the Complainant and Ms. Laura Fyfe and any difficulties there may have been between them?

It is my understanding that his performance was not acceptable

What date did each incident you are aware of occur?

From the Memorandum of Conversation I only know that this happened in the last part of 2011

Please explain what was happening at the time of each incident and how/why management responded as they did

I was not a party to this

Q40  Did anyone witness this occur? If so, provide the full name, job title, telephone number, email address, supervisor's name, work location for any witnesses

---

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| Philippe C. Castenble | 6/29/12 |
| Form 2569, March 2001 | Affidavit  H |
| | Page  8   of  106 |

Case 1:14-cv-00712-RC   Document 1-1   Filed 04/08/14   Page 72 of 119

It is my understanding that Ms. Ann Keller-Lally attended a meeting between Ms. Laura Fyfe and Mr. Tiemoko Coulibaly

Provide a signed and dated statement from each witness you identify

a  What did the witness(es) see?
b  What will they say they witnessed?
It is my understanding that Ms. Ann Keller-Lally has been asked to submit an affidavit

Q41  Did the Complainant notify you and/or anyone in management that he felt he was subjected to a hostile work environment when these actions/incidents allegedly occurred? If so, what date did he do so?
He did not notify me since I was not his supervisor. When I became his supervisor in January 2012 he stated that he wanted for the hostile environment to stop

a. Who did he notify? Provide the full name, job title, race, supervisor's name and work location for the person
Based on the Memorandum of Conversation I will infer he met with Ms. Debra Blake, EUA division director. She is white and she works at FSI, 4000 Arlington Boulevard, Arlington, VA.
b. What did he say? If his notification was in writing, provide a copy
I am not aware of what he said

Q42  What did you and/or management do in response? Provide documentation to show what management did.
I was not informed of what management did besides writing a Memorandum of Conversation.
a  Was an investigation conducted? If so, what date was it conducted? Who conducted the investigation?
I have no knowledge.
b  What was the outcome of the investigation into his allegation of hostile work environment?
I have no knowledge.

  c  Provide a copy of the investigative report and/or any notes or related documentation

Q43  Identify any other employees who have reported they may have been treated in a same or similar manner as the Complainant has alleged by any employee? Provide the full name, job title, race, color, national origin, supervisor's name and work location for each employee you identify
It is my understanding that all employees were treated according to standardized procedures

Q44  You must explain and describe how the employee(s) reported they were treated similarly, when this occurred with them, who treated them similarly and what you or management did in response.

Provide documentation to show what occurred with each employee you identify and what management did in response to their allegations

Q45  What policies, procedures or contract provisions were relied on and used when decisions were made in response to the Complainant's allegations of being subjected to a hostile work environment? Explain how the policies were used and applied to the situation and his allegations
I was not a party in this action

Provide the document name, chapter, section/paragraph for this document.

**I declare under penalty of perjury that the foregoing is true and correct.**

Affiant's Signature

Date Signed  6/29/12

Form 1569, March 300,

Affidavit  H
Page  9  of  106

| | Page No. | No. Pages | Case No |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | 10 | 19 | DOS-F-025-12 |

Provide a copy of the document with your affidavit.

Q46 Did Complainant request that the alleged hostile work environment stop? If so, when did he tell you that and what action did you take?

He told me the first time we met in January 2012 when I became his supervisor

Q47 Are you aware of Complainant (or anyone acting in behalf of Complainant) bringing to the attention of any other management official concerns about a hostile work environment? If so, to whom did he inform of his concerns and when, to the best of your knowledge

I am aware he sent e-mails to the SLS dean's office, with copies to the HR office and FSI management

Q48 Was Complainant informed of the outcome of any investigation or management action taken in response to his allegation of a hostile work environment? If yes, how? Provide a copy of any documentation related to any outcome.
I am not aware of this.

Q49 Was any corrective or preventative action necessary? If so, what action was taken? Provide documentation showing any corrective or preventative action taken

I am only aware that he was assigned from Laura Fyfe's supervision to my supervision for Calendar Year 2012.

Q50 If no investigation was conducted, please explain why.
I have no explanation

Q51 Did you notice any changes in Complainant's work habits after the alleged hostile work environment occurred (or claims in this complaint which support his assertions of a hostile work environment)? If so, what did you notice? Please describe specifically and provide any documentation that would support what you noticed
I was not his supervisor at the time  I didn't have any close working relationship with him that would show any change in his work habits

Q52 Was the Complainant's race a basis of consideration when making decisions about the Complainant and the management actions the Complainant has alleged subjected him to a hostile work environment? If so, please explain why his race was a factor
I am not aware of this

Q53 Was the Complainant's color a basis of consideration when making decisions about the Complainant and the management actions the Complainant has alleged subjected him to a hostile work environment? If so, please explain why his color was a factor.
I am not aware of this

Q54 Was the Complainant's national origin a basis of consideration when making decisions about the Complainant and the management actions the Complainant has alleged subjected him to a hostile work environment? If so, please explain why his national origin was a factor
I am not aware of this

---

**I declare under penalty of perjury that the foregoing is true and correct.**

Affiant's Signature

Date Signed
6/29/12

Form 2569, March 2001

Affidavit H
Page 10 of 106

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | 11 | 19 | DOS-F-025-12 |

Q55   Was the Complainant's EEO activity a basis of consideration when making decisions about the Complainant and the management actions the Complainant has alleged subjected him to a hostile work environment? If so, please explain why his EEO activity was a factor

I was not notified any EEO activity before I received the present document

## Claim 5: Not Properly Compensated for Work in Pay Periods 6 & 7

Q56   The Complainant alleges he was not properly compensated in Pay Periods 6 & 7   What is your understanding and/or awareness of how he was paid in Pay Periods 6 & 7?

Compensation for Language and Culture Instructors is handled by Payroll based on the time and attendance sheets provided by employees as reflected on the certified reports (TATEL DS-1734M)

Please explain what occurred and how he was compensated in these Pay Periods

To the best of my recollection, here is how Mr Tiemoko Coulibaly's absences were electronically reported to Pay Intake. Based on the information submitted electronically, Payroll pays compensation, but I do not know how this process works.

For Pay Period 4, Tiemoko Coulibaly's attendance was entered as RD (Regular Duty) for a total of 72 hours (Monday February 20, 2012 was a holiday, President's Day) even though he was absent during the entire Pay Period. He was entered as RD since we did not know how he wanted to use his accumulated leave

The following hours were submitted to Pay Intake for Mr Tiemoko Coulibaly during Pay Period 5

*   For Pay Period 5, he was charged 64 hours of Annual Leave (AL) and 16 hours of Leave Without Pay (LW)
*   For Pay Period 4, he was subtracted 72 hours of Regular Duty (RD),
*   The retracted 72 hours (RD) from Pay Period 4 were replaced with 64 hours of Sick Leave and 8 hours of Annual Leave(the difference between 72 hours retroactively subtracted and the 64 hours of sick leave he requested

For Pay Period 6, in the absence of a Leave Slip Request, and due to Mr Coulibaly's continued absence from work, he was charged 80 hours of Leave Without Pay

For Pay Period 7, he was charged 40 hours of Leave Without Pay (LW) from 3/26/2012 to 3/30/2012 He was back to work (RD) the next week for a total of 35 45 hours along with 4 15 hours of Leave Without Pay (LW) He was retroactively credited 16 hours of RD as he was at work on 2/13/2012 and 2/14/2012 (days he had requested initially through a Sick Leave Request on 3/8/2012) and, thusly, credited back the 16 hours of Sick Leave that were originally taken out for Pay Period 4

FSI HR office instructed the time keeper to charge Sick Leave first and then Annual Leave, and consequently, because of this instruction, Pay Period 4 needed to be updated to reflect standard practice   Per Leave Slip dated 3/8/2012, Tiemoko Coulibaly requested 64 hours of Sick Leave for the period 2/13/2012 to 2/23/2012   On 4/4/2012, he asked for his time sheet to be updated to reflect the fact that he came to work on 2/13/2012 and 2/14/2012   On this new Leave Slip, he requested 64 hours of Sick Leave for the period 2/15-2/24/2012, 64 hours of Annual Leave for the period 2/27/2012-23/7/2012; and 16 hours of Leave Without Pay (LW) for 2/8/2012 and 3/9/2012

Pay Period 7 DS-1334M reflects his new request on how to report his absence   He was credited back 16 hours of Regular Duty hours for 2/13/2012 and 2/14/12   2/24/2012 was changed from Annual Leave to Sick Leave as requested on his leave request slip dated 4/4/2012   For the period 3/26-3/30/2012, a clerical error was made   Tiemoko Coulibaly was reported as absent from 3/26/2012 to 3/28/2012 even though he was at work   FSI/HR instructed the time keeper to charge Leave Without Pay as we didn't know how he wanted to handle what was thought to be an absence   A "Brown top Form" (edits) was sent to Pay Intake to rectify this error

Pay Period 8 retroactively credited his account with 24hours of work (RD) and subtracted 24 hours of Leave without pay (LW)   On 3/28/2012, Tiemoko Coulibaly submitted a request for Advanced Sick Leave that he left on my chair   I e-mailed him at 16:17 that

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

Form 1569, March 2001

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No | No Pages | Case No |
|---------|----------|---------|
| **12** | **19** | DOS-F-025-12 |

Advanced Sick Leave can only be granted by the Executive Director through SLS dean's office and FSI HR office. I attached documentation on how to request Advanced Sick leave. I called Tiemoko Coulibaly on 3/29/2012 in the morning to inform him I didn't have the authority to grant this leave and that he was to report to work immediately. He responded he would not come to work that day. He was charged 8 hour of absence without proper leave (AWOL). The "brown top" dated 4/14/12 reflects this action. On April 13, 2012 the time keeper also sent Pay Intake an e-mail reiterating that Tiemoko was at work on 3/26-27-28/12 and AWOL on 3/29-12.

I do not know how Payroll compensated him 

Provide documentation to show how he was compensated for these Pay Periods to detail how he was paid and how his time was charged

Q57    Who is responsible for how the Complainant was paid in Pay Periods 6 & 7? Provide the full name, job title, telephone number and email address for the person(s)

I signed on the time and attendance reports for the French section for Pay Periods 6 and 7. The certified form was sent to Payroll

**Philippe C Casteuble**
Language Training Supervisor
GG13
FSI School of Language Studies
4000 Arlington Boulevard
Arlington, VA

a   Did the Complainant question how he was paid in Pay Periods 6 & 7?

He asked by e-mail but I have no knowledge on how payroll works. He followed up with FSI HR office    ╳

I believe he was given an e-mail address to contact Payroll payhelp@state.gov

b   What reason was he given for how he was paid?
The response was handled by FSI HR office

c   What did he do in response?
He wrote he should not be charged leave for absence because he was sick.    ╳

Q58   Has there been an adjustment or correction made since this time? If so, when did the adjustment or correction occur?

a   What was the adjustment/correction?
The time and attendance reports were edited to reflect corrects (see attachments to response to question 56). The new report was sent to Payroll.

b   Did he receive the proper pay for Pay Periods 6 & 7?    

I have no knowledge of this

c   Provide documentation to show an adjustment or correction occurred if applicable
See attachments to response to question 56

---

**I declare under penalty of perjury that the foregoing is true and correct.**

Affiant's Signature   Philippe C. Casteuble

Form 2569, March 2001

Date Signed   6/29/12

Affidavit H
Page 12 of 106

01238

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **13** | **19** | **DOS-F-025-12** |

Q59     Identify other employees who were treated differently than the Complainant when in a similar pay situation. Provide the full name, job title, race, color, national origin, their supervisor's name and work location for each employee you identify.

To my knowledge all employees were treated according to standardized procedures

Q60     Please explain and describe how the employee(s) was treated differently, when they were treated differently and by whom they were treated differently.

Provide documentation to prove and support what occurred with the employee(s) you identify.

Q61     What policies, procedures or contract provisions were relied on and used when decisions were made regarding how the Complainant would be paid for Pay Periods 6 & 7? Explain how the policies were applied in this situation.

I received verbal guidance from FSI HR.  FSI HR should be able to provide information.

Provide the document name, chapter, section/paragraph for this document

Provide a copy of the document with your affidavit.

Q62     Identify any employees who have been treated in a same or similar manner as the Complainant and have been paid in a similar manner as the Complainant was in Pay Periods 6 & 7 when in a similar situation as the Complainant

To the best of my knowledge I am not aware of any same or similar case

Provide the full name with middle initial, job title, race, color, national origin, their supervisor's name, work location and reasons you believe the employees you identify are similar to you.

You **must** describe how each employee you identify has been treated in a similar way and the date this occurred

Please provide documentation to prove each employee was treated in a similar way

Q63.    Was the Complainant's race a basis of consideration when making decisions about the Complainant and the decision to pay him the way he was paid in Pay Periods 6 & 7? If so, please explain why his race was a factor

It was not

Q64     Was the Complainant's color a basis of consideration when making decisions about the Complainant and the decision to pay him the way he was paid in Pay Periods 6 & 7? If so, please explain why his color was a factor

It was not

Q65     Was the Complainant's national origin a basis of consideration when making decisions about the Complainant and the decision to pay him the way he was paid in Pay Periods 6 & 7? If so, please explain why his national origin was a factor

It was not

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed |
|---|---|
| | 6/29/12 |

Form 2569  March 2001

Affidavit  H
Page  13  of  108

| | Page No | No. Pages | Case No |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | 14 | 19 | DOS-F-025-12 |

Q66. Was the Complainant's EEO activity a basis of consideration when making decisions about the Complainant and the decision to pay him the way he was paid in Pay Periods 6 & 7? If so, please explain why his EEO activity was a factor

I was not notified any EEO activity before I received the present document

## Claim 4: Excepted Service Appointment Terminated Effective April 6, 2012

Q67  Was the Complainant on an Excepted Service Appointment? If so what were the dates of this appointment?

a  How long was the appointment to be?

b  What did this appointment consist of? Describe and/or define the Excepted Service Appointment.

c  Provide a copy of the Excepted Service Appointment

This is an HR action. I was not involved in personnel action.

Q68  Has the Complainant's Excepted Service Appointment been terminated? If so, what date did this occur?
Termination was done by HR office  It may have been April 2, 2012
a. Who terminated his Excepted Service Appointment? Provide the full name, job title, telephone number and email address for the person(s).

I cannot say for sure, probably the FSI executive director  FSI HR should be able to help.

b  Why was his Excepted Service Appointment terminated?
I didn't see any official document on this

d  What date was his Excepted Service Appointment terminated?
It may have been April 2, 2012.

e  Provide documentation to show his Excepted Service Appointment has been terminated and when this occurred

Supervisors do not keep records of personnel actions.

Q69  Identify any other employees who were treated differently than the Complainant and have not had their limited Excepted Service Assignment terminated when in a similar situation as the Complainant

To my knowledge all employees were treated according to standards and procedures

Provide the full name, job title, race, color, national origin, their supervisor's name and work location for each employee you identify

Q70  You must explain and describe how the employee(s) was treated differently, how and when they were treated differently and by whom they were treated differently

Provide documentation to prove and support what occurred with the employee(s) you identify

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature _____

Date Signed  6/29/12

Form 1569, March 2001

Affidavit  H
Page  14  of  106

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No |
|---|---|---|
| 15 | 19 | DOS-F-025-12 |

Q71  What policies, procedures or contract provisions were relied on and used when making the decisions about terminating the Complainant's limited Excepted Service assignment?

I suppose termination was done by HR office.  I was not given any information

Explain how the policy or procedure was applied to this situation

Provide the document name, chapter, section/paragraph for this document

Provide a copy of the document with your affidavit

Q72  Identify any other employees who have been treated in a same or similar manner and had their limited Excepted Service appointment terminated for similar reasons as the Complainant.
None to the best of my knowledge

Provide the full name with middle initial, job title, race, color, national origin, their supervisor's name, work location and reasons you believe the employees you identify are similar to you.

You **must** describe how each employee you identify has been treated in a similar way and the date this occurred.

You **must** provide documentation to prove each employee was treated in a similar way, including documentation about terminated assignments

Q73  Was the Complainant's race a basis of consideration when making decisions about the Complainant and the decision to terminate his limited Excepted Service assignment? If so, please explain why his race was a factor

I do not know

Q74  Was the Complainant's color a basis of consideration when making decisions about the Complainant and the decision to terminate his limited Excepted Service assignment? If so, please explain why his color was a factor.
I do not know

Q75.  Was the Complainant's national origin a basis of consideration when making decisions about the Complainant and the decision to terminate his limited Excepted Service assignment? If so, please explain why his national origin was a factor.
I do not know

Q76  Was the Complainant's EEO activity a basis of consideration when making decisions about the Complainant and the decision to terminate his limited Excepted Service assignment? If so, please explain why his EEO activity was a factor
I do not know

**Claim 5: Required to Use Sick and/or Annual Leave to Address Health Issues Resulting from Alleged Discrimination**

**I declare under penalty of perjury that the foregoing is true and correct.**

Affiant's Signature

Form 2569, March 2001

Date Signed
6/29/12

Affidavit  H
Page  15  of  106

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | 16 | 19 | DOS-F-025-12 |

Q77  Did the Complainant request leave? If so what date(s) did he request leave since December 2011?
Answer is provided with question 56
      Provide a copy of his leave request form(s)
Documentation is provided with question 56

Q78  What type of leave did he request?
Answer is provided with question 56

      a. What was the reason for the leave at this time?
He was away from the office and could not report to work
      b. What date did he request the leave for?
Answer is provided with question 56

Q79  Was his request for leave approved or denied? If denied, who denied his request? Provide the full name, job title, telephone number, email address and work location of the person(s).
I approved Leave I had the authority to approve.
      **Phillippe C Casteuble**
      Language Training Supervisor
      GG11
      FSI School of Language Studies
      4000 Arlington Boulevard
      Arlington, VA

I have no information whether Advanced sick leave was denied. This is done by the executive director. I only have a copy of the memo signed up to the school dean. I attached it with documentation to question 56. FSI HR should be able to respond

      a. What was the reason for the denial?
Advanced Sick Leave is approved by executive director, not by supervisor  I don't know.

      b. Provide a copy of the leave request with the denial and any other documentation to show his request was denied

      c. Provide a copy of any clock ring reports or attendance documentation for the date(s) he wanted this leave for

Q80  The Complainant alleges he should not have been charged with sick or annual leave to address health issues that resulted from alleged discrimination

      Is there another type of leave that can be used by employees? If so, what type of leave is it?
Leave without Pay or Advanced Sick Leave

Q81  Did the Complainant request this other type of leave when he requested time off?
He requested Leave without Pay and I approved  He requested Advanced sick leave which must be approved by executive director

      a  If so, was his request approved?

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Date Signed |
|---|---|---|
| | | 6/29/12 |

Form 2569, March 2001

Affidavit  H
Page  16  of  106

| | Page No | No Pages | Case No |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | 17 | 19 | DOS-F-025-12 |

Leave without pay was approved
  b  If not approved, explain why
Advanced Sick Leave is approved by the FSI executive director, not by supervisors.
      FSI HR should be able to help with this question

Q82  Did he tell you or anyone else in management that he did not want to use sick or annual leave for his time off of
       work to address health issues related to alleged discrimination? If so when?
It was stated in his e-mail response to Mr Brian Springer and Ms. Debra Blake on March 2, 2012
  a.  What did he say?
  He wrote he didn't want to lose any day of sick or annual leave because of his current illness
  b.  What did you or management do in response?
  FSI HR Brian Springer handled this personnel request

  c  Provide documentation to show what occurred and how management responded.
FSI HR should be able to help with this question
Q83.  What is the policy or procedure for leave? Please provide a copy of the document

FSI HR should be able to answer this question

Q84  Identify other employees who may have been treated in a same or similar manner and charged with sick or annual to
       address health issues since December 2011?
  To my knowledge all employees were treated according to standards and procedures.

       Provide the full name, job title, race, color, national origin, supervisor's name and work location for each employee
       you identify

Q85  You must explain and describe how the employee(s) reported they were treated similarly, when this occurred with
       them, who treated them similarly and what you or management did in response.

       Provide the leave requests and attendance records showing how leave was charged for each employee you identify
       from December 2011 to present.

Q86  What policies, procedures or contract provisions were relied on and used when decisions were made in response to
       the Complainant's use of leave to address health issues that resulted from alleged discrimination? Explain how the
       policies were used and applied to the situation and his allegations.
FSI HR office handled this issue

       Provide the document name, chapter section/paragraph for this document
       Provide a copy of the document with your affidavit

Q87  Are you aware of any other employees who have been treated differently and were able to use a different type of
       leave other than sick or annual when addressing health issues that they said resulted from alleged discrimination?

To my knowledge all employees must follow the same procedures for leave requests.

---

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

Date Signed  6/29/12

Form 2569, March 2001

Affidavit  H
Page  17  of  106

111243

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|----------|-----------|----------|
| 18 | 19 | DOS-F-025-12 |

Provide the full name, job title, race, color, national origin, supervisor's name, work location and reasons the employees you identify are similar to the Complainant

You **must** describe how each employee you identify has been treated differently and the date(s) this occurred Explain why they were able to use a different type of leave and the Complainant was not.

You **must** provide documentation to prove each employee was treated differently and identify who is responsible for treating them differently

Provide the leave requests and attendance records showing how leave was charged for each employee you identify from December 2011 to present

Q88    Was the Complainant's race a basis of consideration when making decisions about the Complainant and the type of leave he would be charged with when he took off of work to address health issues? If so, please explain why his race was a factor

I did not

Q89    Was the Complainant's color a basis of consideration when making decisions about the Complainant and the type of leave he would be charged with when he took off of work to address health issues? If so, please explain why his color was a factor

I did not

Q90    Was the Complainant's national origin a basis of consideration when making decisions about the Complainant and the type of leave he would be charged with when he took off of work to address health issues? If so, please explain why his national origin was a factor.

I did not

Q91    Was the Complainant's EEO activity a basis of consideration when making decisions about the Complainant and the type of leave he would be charged with when he took off of work to address health issues? If so, please explain why his EEO activity was a factor

I was not notified any EEO activity before I received the present document  

Q92.    The Complainant alleges an employee was treated differently than he was: Hmimiche.

Provide the full name, job title, race, color, national origin, supervisor's name, work location for this employee.
*   **AitMouloud, Ahmed**
Language and Training Instructor
White
Algeria
Philippe C Casteuble
FSI School of Language Studies
4000 Arlington Boulevard
Arlington, VA

Provide a copy of this employee's personnel notice in order to show what his/her position is with the Agency

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed |
|---------------------|-------------|
| *Phillippe C. Casteuble* | 6/29/12 |

Form 2569, March 2001

Affidavit  H
Page  18  of  106

| | Page No | No Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | 19 | 19 | DOS-F-025-12 |

Supervisors do not keep copies of employees' personnel actions. I attached his 2011 Civil Service Performance Plan and Appraisal that shows he was employed. It is provided with documentation to question 30

Q93.   The Complainant alleges "Hmimiche" hired on at the same time he did, was treated better due to his relationship with Ms Laura Fyfe, and was not terminated from his appointment like the Complainant was

Has "Hmimiche" been treated differently than the Complainant? If so, please explain how he was treated differently, who treated him differently and why

To my knowledge all employees were treated according to standards and procedures.

If "Hmimiche" has been treated the same or similarly to the Complainant, please explain and describe how he/she has been treated the same and provide documentation to show "Hmimiche" has been treated similarly to the Complainant

Q94.   Did the Complainant file a grievance relative to any of the issues identified in the current EEO complaint? I am not aware of a grievance being filed

If so, what date was it filed?
What was the outcome of the grievance?

Provide a copy of the grievance and related documentation including any resolutions and/or settlement agreements

When providing documentation to support your testimony, please identify what the document is and how it applies or supports your testimony. Please label each document provided and indicate which question it applies to. Thank you!

---

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed 6/25/12 |
|---|---|
| Form 2569, March 2001 | **Affidavit H** |
| | Page 19 of 108 |

| **Certification** | Case No:<br>DOS-F-025-12 |
|---|---|

I have read the foregoing attached statement, consisting of __102__ pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001 Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years or both."

**Privacy Act Notice**

Privacy Act Notice. The collection of this information is authorized by The Equal Employment Opportunity Act of 1972, 42 U.S.C. 2000e-16; The Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.633a. The Rehabilitation Act of 1973, as amended, 29 U.S.C. 794a and Executive Order 11478 as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes, where pertinent, in a legal proceeding to which the Agency is a party or has an interest; to a government agency in order to obtain information relevant to an Agency decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the Agency to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of Agency finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision the information requested is voluntary for the complainant and for Agency employees and other witnesses.

**Declaration**

I declare, under penalty of perjury, that the foregoing is true and correct

| Signature of Affiant | Date Signed |
|---|---|
| *Philippe C. Antauble* | 6/29/2012 |

October 2005

**EEO Investigative Affidavit (Witness)**

*Affidavit by former employee of EEO ROI*

| Page No | No Pg | Case No |
|---|---|---|
| 1 | 2 | DOS-F-025-12 |

| 1. Affiant's Name (Last, First, MI) | | |
|---|---|---|
| Hafner, Anne | plaintiff Plaintiff | *Retired  and witness* |

| 3 Position Title | 4 Grade Level | 5 Employment Address | 6 Unit Assigned |
|---|---|---|---|
| None | N/A | Retaliation | |

| Privacy Act Notice |
|---|

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity act of 1972  42 U.S.C. § 2000e-16, the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a the Rehabilitation Act of 1973, as amended  This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program.  As a routine use  this information may be disclosed to an appropriate government agency, domestic or foreign  for law enforcement purposes  where pertinent, in a legal proceeding to which the Agency is a party or has an interest, to a government agency in order to obtain information relevant to a Agency decision concerning employment security clearances  contracts, licenses, grants, permits or other benefits, to a government agency upon its request when relevant to its decision concerning employment, security clearances  security or suitability investigations  contracts, licenses  grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the agency to fulfil an agency function  to the Federal Records Center for storage, to the Office of Management and Budget for review of private relief legislation, to an independent certified public accountant during an official audit of agency finances, to an investigator  administrative judge or complaints examiner  appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614, to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction  and to a labor organization as required by the FLRA/National Labor Relations Act. Under the Privacy Act provision  the information requested is voluntary for the complainant  and for agency employees and other witnesses

Statement (Continue on Form 2569 if additional space is required  Form will auto-create if using Microsoft Word)

You have been named as a responding management official in an EEO claim filed by Dr. Tiemoko Coulibaly alleging he was discriminated against due to race, color, national origin and and reprisal for opposing discriminatory practices and policies, when.

(1)  On December 27, 2011, he received a negative performance appraisal report (PAR),

(2)  Subjected to a hostile work environment characterized by, but not limited to, false accusations and inappropriate comments;

(3)  Not properly compensated for work in Pay Periods 6 & 7;

(4)  Limited Excepted Service Appointment was terminated effective April 6, 2012, and;

(5)  Management required Complainant to use his sick and annual leave to address his health issues that resulted from the alleged discrimination

*Note. In order to ensure your affidavit is clear and detailed, you must answer every question and every subpart of every question. If you cannot answer a question, explain why you cannot answer the question. You may give approximations, but only when you cannot be more specific and only when you indicate that your answer is an approximation. You must provide any documentation requested and any documentation you feel supports your testimony. If you cannot provide the documentation, you must state why you cannot provide the documentation.*

Please respond in detail to the questions below based on these allegations

Q1  State your name, job title, grade level and your work location at the time of the alleged action
**I retired on 11/30/2011. I was a French Instructor prior to that time.**

Q2  Are you currently employed by DOS? If not, what date did you leave the Agency?  **No.**

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed |
|---|---|
| | 06/27/2012 |

Form 2569-E  March 2001

Affidavit
Page  1  of  5

**EEO Investigative Affidavit (Continuation Sheet)**

Page No

2 . 2 | DOS-

Q1   What was your working relationship with the Complainant? **We shared the same office for 3 - 4 years.**

Hostile Work Environment Allegations

Q4   Are you aware of the Complainant reporting to you or anyone else in mangement that he felt he had been subjected to a hostile work environment? If so when did he do so? **Yes. He did report to me and he reported several times to management and said he did not understand why people would come back saying he was not doing his job correctly.**

   a  Who did he notify? Provide full name, job title, phone number and email address  **He notified Laura, she was the Director of the section. I don't remember her last name, it has been so long now.  Laura  FyFe**

   b  What did he say? **He did not understand why people were saying he was not doing his job correctly. She gave him a lesson plan that was new and he asked me and a collegue for help and our plans were accepted and his was not. He did not understand why after obtaining help from us who had accepted plans that his was not accepted.**

   c  How did you or mangement respond? Explain in detail  **He said she told him they needed to discuss the matter between the two of them. She set up a meeting time and she then switched the time to a time when he was teaching and he could not make it. She then said she did not show up for the meeting and he told her she changed the time while he was in the classroom.**

Q5   Did you notice any changes in Complainant's work habits after the alleged hostile work environment occurred (or claims in this complaint which support his assertions of hostile work environment)? If so, what did you notice? **No, I found him being more and more tense because he was bothered with all kinds of emails. He got nervous about it and he could not understand why she was doing that.**

Q6   What actions/incidents did you witness directly? Please describe and explain what occurred, when it occurred and what the Complainant did in response. **No I did not witness anything directly. It seemed it was all by email and he would get upset after corresponding with her.**

---

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

Form 2509, March 2007

Date Signed
06/27/2012
Affidavit
Page 2 of 5

0114

Moissac, France June/27/2012

This is an addendum to the questionnaire I filled out on this date to point out that Dr Coulibaly was under contract for 10 years at FSI. I shared the same office with Dr Coulibaly and on numerous occasions, students came to thank him for his help and his teaching method.

When 2 positions were opened for direct hire, Dr Coulibaly did all the paperwork by computer, paperwork required to get the position. He did not get it and to my knowledge one of the position was given to someone with little experience and no teaching diplomas ( Valerie Henric) When Dr Coulibaly asked why he had not been given the job, he was told that the computer was disqualifying the people, not the administration

He was accepted on a one year direct hire trial basis in 2011 at the same time then a teacher who had arrived 3 months before at FSI (Hmimiche Ait Mouloud).

This attachment is true and complete to the best of my knowledge and belief. In making this statement, I understand Section1001, Title 18 of the U.S code

I declare under penalty of perjury that the foregoing is true and correct.

06/27/2012

## Certification

Case No<br>
DOS-F-025-12

*w/addendum*

I have read the foregoing attached statement, consisting of __3__ pages and it is true and complete to the best of my knowledge and belief. In making this statement I understand Section 1001 Title 18 of the U.S. Code which states

"Whoever in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies conceals or covers up by any trick scheme or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

**Privacy Act Notice** The collection of this information is authorized by The Equal Employment Opportunity Act of 1972, 42 U S C 2000e-16 The Age Discrimination in Employment Act of 1967, as amended, 29 U S C 633a, The Rehabilitation Act of 1973 as amended 29 U S C 794a and Executive Order 11478 as amended This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use this information may be disclosed to an appropriate government agency domestic or foreign for law enforcement purposes where pertinent in a legal proceeding to which the Agency is a party or has an interest to a government agency in order to obtain information relevant to an Agency decision concerning employment security clearances, contracts licenses, grants permits or other benefits to a government agency upon its request when relevant to its decision concerning employment, security clearances security or suitability investigations, contracts licenses, grants or other benefits to a congressional office at your request, to an expert, consultant, or other person under contract with the Agency to fulfill an agency function to the Federal Records Center for storage to the Office of Management and Budget for review of private relief legislation to an independent certified public accountant during an official audit of Agency finances, to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614 to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction and to a labor organization as required by the National Labor Relations Act Under the Privacy Act provision the information requested is voluntary for the complainant and for Agency employees and other witnesses

I declare under penalty of perjury, that the foregoing is true and correct

| Signature of Affiant | Date Signed |
|---|---|
| | 06 / 27 / 2012 |

October 2005

Affidavit 1<br>
Page 4 of 5

| 1. Affiant's Name (Last, First, MI) | | 2. Employing Facility | |
|---|---|---|---|
| **Cazeau, Elder** | | Foreign Service Institute | |
| 3. Position Title | 4. Grade | 5. Employment Address | 6. Unit Assigned |
| **French Language** | Level | 4000, Wilson Boulevard, | **EUA** |
| **Instructor** | GG-11 | Arlington, VA | |

**Privacy Act Notice**

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity act of 1972, 42 U.S.C. § 2000e-16, the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a the Rehabilitation Act of 1973, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes, where pertinent, in a legal proceeding to which the Agency is a party or has an interest, to a government agency in order to obtain information relevant to a Agency decision concerning employment security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits.

to a congressional office at your request; to an expert, consultant or other person under contract with the agency to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of agency finances; to an investigator; administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the FLRA/National Labor Relations Act. Under the Privacy Act provision the information requested is voluntary for the complainant; and for agency employees and other witnesses.

Statement (Continue on Form 2569 if additional space is required. Form will auto-create if using Microsoft Word)

You have been named as a responding management official in an EEO claim filed by Dr. Tiemoko Coulibaly alleging he was discriminated against due to race, color, national origin and and reprisal for opposing discriminatory practices and policies, when

(1) On December 27, 2011, he received a negative performance appraisal report (PAR);

(2) Subjected to a hostile work environment characterized by but not limited to, false accusations and inappropriate comments,

(3) Not properly compensated for work in Pay Periods 6 & 7,

(4) Limited Excepted Service Appointment was terminated effective April 6, 2012, and,

(5) Management required Complainant to use his sick and annual leave to address his health issues that resulted from the alleged discrimination

*Note: In order to ensure your affidavit is clear and detailed, you must answer every question and every subpart of every question. If you cannot answer a question, explain why you cannot answer the question. You may give approximations, but only when you cannot be more specific and only when you indicate that your answer is an approximation. You must provide any documentation requested and any documentation you feel supports your testimony. If you cannot provide the documentation, you must state why you cannot provide the documentation.*

Please respond in detail to the questions below based on these allegations

Q1  State your name, job title, grade level and your work location at the time of the alleged action

Name        Cazeau, Elder
Job Title:   French Language Instructor
Grade.       GG-11
Work location  FSI, 4000 Wilson Boulevard
Arlington, Va

Q2  Are you currently employed by DOS? If not, what date did you leave the Agency?

Yes, I am

01338

06/28/12

Q3   What was your working relationship with the Complainant?

We are colleagues teaching the French language in the same section

### Hostile Work Environment Allegations

Q4.   Are you aware of the Complainant reporting to you or anyone else in mangement that he felt he had been subjected to a hostile work environment? If so when did he do so?

Yes! He told me he had been subject to a hostile work environment.  I can't remember specifically when we discussed it, but it was a few days after the incident with his lesson plan, which is described below

a   Who did he notify ? Provide full name, job title, phone number and email address

I am not aware of anyone else he may have notified.

b. What did he say?

He told me that he had been harassed because of a lesson plan he had posted that allegedly did not comply with the verbal instructions of his supervisor  As I understand it, he received these instructions after he had posted the lesson plan  Even though he reworked and reposted the lesson plan, the supervisor continued to harass him  There were several email exchanges back and forth, but I did not see them  Tiemoko commented on them to me  The supervisor kept sending him messages about the same lesson plan  However, other individuals in the section had not posted any lesson plan at all and the instructions as Tiemoko described them were not standarized. Following this incident, section management organized a training session for all employees to discuss lesson plans.

b.  How did you or management respond? Explain in detail

I told him that he was unfairly treated and that there was a double standard  He was clearly the target of this supervisor  My advice was for him to report the incident to EEO

Q5    Did you notice any changes in Complainant's work habits after the alleged hostile work environment occurred (or claims in this complaint which support his assertions of hostile work environment)? If so, what did you notice?

Dr Coulibaly kept doing his work to the best of his ability  He maintained a positive attitude toward his students and colleagues  He kept treating his supervisor professionally  He kept posting lesson plans for every week even though his lesson plans had never satisfied his supervisor

Q6    What actions/incidents did you witness directly? Please describe and explain what occurred, when it occurred and what the Complainant did in response

One day, I do not remember the date (sometime in December), he wanted to voice his concerns during a section meeting, the same section meeting that had been organized to discuss lesson plans. He was publicly humiliated and silenced by his supervisor who told him that he could not use the meeting as a

2

06/28/12

platform to air his personal issues and discuss his personal situation. Dr. Coulibaly started saying that he felt discriminated against because of his lesson plan, but his supervisor cut him off. Dr. Coulibaly remained silent.

**Affidavit J**

Page 3 of 5

3

06/28/12

## Certification

Case No
DOS-F-025-12

I have read the foregoing attached statement, consisting of _____ pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both.

### Privacy Act Notice

**Privacy Act Notice** The collection of this information is authorized by The Equal Employment Opportunity Act of 1972, 42 U.S.C. 2000e-16, The Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. 633a, The Rehabilitation Act of 1973, as amended, 29 U.S.C. 794a, and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes where pertinent in a legal proceeding to which the Agency is a party or has an interest to a government agency in order to obtain information relevant to an Agency decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits, to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits, to a congressional office at your request to an expert, consultant or other person under contract with the Agency to fulfill an agency function, to the Federal Records Center for storage to the Office of Management and Budget for review of private relief legislation to an independent certified public accountant during an official audit of Agency finances, to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614, to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction, and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant and for Agency employees and other witnesses.

### Declaration

I declare, under penalty of perjury, that the foregoing is true and correct.

| Signature of Affiant | Date Signed |
|---|---|
|  | 06/28/12 |

*October 2005*

06/28/2012  08 06 7037521490            PARCEL PLUSA              80482 P 003/005

## EEO Investigative Affidavit *(Witness)*

| | Page No. | No. Pages | Case No |
|---|---|---|---|
| | 1 | 3 | DOS-F-025-12 |

| 1. Affiant's Name (Last, First, MI) | | 2. Employing Facility | |
|---|---|---|---|
| Lauterbach, Marie-Paula | | No longer employed | |

| 3. Position Title | 4. Grade Level | 5. Employment Address | 6. Unit Assigned |
|---|---|---|---|
| | | | |

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the Agency is a party or has an interest, to a government agency in order to obtain information relevant to a Agency decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits;

to a congressional office at your request; to an expert, consultant, or other person under contract with the agency to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of agency finances, to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the FLRA/National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for agency employees and other witnesses.

Statement (Continue on Form 2569 if additional space is required. Form will auto-create if using Microsoft Word)

You have been named as a responding management official in an EEO claim filed by Dr. Tiemoko Coulibaly alleging he was discriminated against due to race, color, national origin and and reprisal for opposing discriminatory practices and policies, when

(1) On December 27, 2011, he received a negative performance appraisal report (PAR);
(2) Subjected to a hostile work environment characterized by, but not limited to, false accusations and inappropriate comments;
(3) Not properly compensated for work in Pay Periods 6 & 7;
(4) Limited Excepted Service Appointment was terminated effective April 6, 2012; and,
(5) Management required Complainant to use his sick and annual leave to address his health issues that resulted from the alleged discrimination

*Note: In order to ensure your affidavit is clear and detailed, you must answer every question and every subpart of every question. If you cannot answer a question, explain why you cannot answer the question. You may give approximations, but only when you cannot be more specific and only when you indicate that your answer is an approximation. You must provide any documentation requested and any documentation you feel supports your testimony. If you cannot provide the documentation, you must state why you cannot provide the documentation.*

Please respond in detail to the questions below based on these allegations:

Q1.  State your name, job title, grade level and your work location at the time of the alleged action.
   My name is Marie-Paula LAUTERBACH. At the time of the alleged action, I was a Language and Culture instructor in the French section in the Department of European and African Languages at the School of Language Studies (at the George Schultz National Foreign Affairs Training Center, in Arlington, VA). My grade level was GG 11, step 05 and I shared an office space with Dr. Tiemoko Coulibaly. I was **not** a management official at the School of Language Studies but a language instructor, as was Dr. Coulibaly.

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| *[signature]* | 06/27/2012 |

Form 2569-B, March 2011

Affidavit  M
Page   1   of   4

111a70

06/28/2012  08 08 7037521890          PARCEL PLUSA          #0482 P 003/005

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | 2 | 3 | DOS-F-025-12 |

Q2. Are you currently employed by DOS? If not, what date did you leave the Agency?
I am not currently employed by DOS. I resigned on May 31, 2012 at close of business.

Q3. What was your working relationship with the Complainant?
For more than ten years we were colleagues in the same language department. I had an excellent relationship with the Complainant and never had any disagreement with him. I found him to be a pleasant office mate, a competent teacher, and a dependable colleague.

## Hostile Work Environment Allegations

Q4   Are you aware of the Complainant reporting to you or anyone else in management that he felt he had been subjected to a hostile work environment? If so when did he do so?
Dr Coulibaly reported this to me by late November or early December 2011, as far as I remember. At the same time he also mentioned that he had reported this to management.

a  Who did he notify? Provide full name, job title, phone number and email address.
He notified the tensions that existed in his work relationship with his immediate supervisor (Laura FYFE) through the chain of command: the other supervisors of the French Section (Philippe CASTEUBLE, Hilary SACHS, Ann KELLER-LALLY), also Jim NORTH (associate dean), Ruth WHITESIDE (dean), Kathy RUSSELL (head of Human Resources)

b  What did he say?
He reported to me that he had remarked that management was constantly finding fault with his teaching and that he seemed to be singled out for criticism.

c  How did you or management respond? Explain in detail.
I gave Dr. Coulibaly some encouragement and suggested that he approach a representative of the trade-union. Dr. Coulibaly told me that he had not received an acceptable response from management and that an impartial investigation into the matter was not conducted. He mentioned that he was told to contact the EEO office. At another time, the Complainant also mentioned to me that at a meeting between himself, Ann KELLER-LALLY, and Laura FYFE, Ms. FYFE told him that he reminded her of her husband and burst out crying. I do not recall the date but I think it was fairly early on before he went through the chain of command

Q5   Did you notice any changes in Complainant's work habits after the alleged hostile work environment occurred (or claims in this complaint which support his assertions of hostile work environment)? If so, what did you notice?
I did not notice any change in the Complainant's work habits after he informed me that he believed that he was subjected to a hostile work environment. On the contrary, he continued to be an effective and conscientious teacher. He continued to receive assignments of the type normally given to more experienced instructors, such as himself.

Q6   What actions/incidents did you witness directly? Please describe and explain what occurred, when it occurred and what the Complainant did in response.

**I declare under penalty of perjury that the foregoing is true and correct.**

Affiant's Signature _____          Date Signed  06/27/2012

Form 2569, March 2008

Affidavit  M
Page  2  of  4

06/28/2012  08 06 7037521800     PARCEL PLUSA     #0482 P 006/006

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No | No Pages | Case No |
|---------|----------|---------|
| 3 | 3 | DOS-F-025-12 |

I saw an email from Laura FYFE criticizing Dr. Coulibaly by calling him a "bean counter" after he had complained that he a change in his teaching schedule was done in order to accommodate another instructor (Hmimichs AITMOULOUD). The Complainant had voiced his preference to keep his class. He received this email by mistake and it was recalled almost immediately after he had received it and after he had shown it to me. I believe it occurred in around mid December 2011 but I am really not sure of the date. Dr. Coulibaly protested being called a "bean counter" in a subsequent email and asked Laura FYFE for this email bearing the expression "bean counter" to be sent again to him. Debra BLAKE (Laura FYFE's supervisor) wrote Dr. Coulibaly that Laura FYFE did not have to do so.

When Dr. Coulibaly was criticized for not putting his weekly syllabus on the SharePoint on time, I offered to check and see how many other instructors had not put their syllabi on line and jotted down what I found. I found that on the date of December 15, 2011 approximately fifteen (15) instructors had not posted their current syllabi. When the Complainant brought this to the management's attention, he reported to me that he was told that he should not compare himself to the other instructors and that the Privacy Act prohibited management from discussing this matter. I have notes about this that I could provide.

---

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature _____     Date Signed 06/27/2012

Form 2569, March 2007

Affidavit M
Page 3 of 4

111 361

06/28/2012   08 05 7037521880            PARCEL PLUZA            #0402 P 002/005

## Certification

| Case No |
|---|
| DOS-F-025-12 |

I have read the foregoing attached statement, consisting of __3__ pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

Privacy Act Notice. The collection of this information is authorized by The Equal Employment Opportunity Act of 1972, 42 U.S.C. 2000e-16. The Age Discrimination in Employment Act of 1967 as amended, 29 U.S.C.633a; The Rehabilitation Act of 1973, as amended, 29 U.S.C 794a, and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes, where pertinent, in a legal proceeding to which the Agency is a party or has an interest; to a government agency in order to obtain information relevant to an Agency decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the Agency to fulfill an agency function; to the Federal Records Center for storage, to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of Agency finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Agency employees and other witnesses.

I declare, under penalty of perjury, that the foregoing is true and correct.

| Signature of Affiant | Date Signed |
|---|---|
| *[signature]* | June 27, 2012 |

October 2005

28.JUN.2012  18:13 3356961'1                    USAID-SENERAL                     61238 P.002 /C04

## EEO Investigative Affidavit *(Witness)*

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | 1 | 3 | DOS-F-025-12 |

| 1 Affiant's Name (Last, First, MI) **Smith, Fatima** | | 2. Employing Facility Foreign Service Institute (retired in December 2011) | |
|---|---|---|---|
| 3 Position Title **Learning Consultant** | 4. Grade Level **11/7** | 5. Employment Address 4000 Arlington Boulevard, Arlington, Va | 6. Unit Assigned **French Section** |

### Privacy Act Notice

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity act of 1972, 42 U.S.C § 2000e-16; the Age Decrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the Agency is a party or has an interest; to a government agency in order to obtain information relevant to a Agency decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits.

in a congressional office at your request; to an expert, consultant, or other person under contract with the agency to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation, to an independent certified public accountant during an official audit of agency finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the FLRA/National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for agency employees and other witnesses.

Statement (Continue on Form 2548 if additional space is required. Form will auto-create if using Microsoft Word)

You have been named as a witness in an EEO claim filed by Dr. Tiemoko Coulibaly alleging he was discriminated against due to race, color, national origin and reprisal for opposing discriminatory practices and policies, when:

(1) On December 27, 2011, he received a negative performance appraisal report (PAR);
(2) Subjected to a hostile work environment characterized by, but not limited to, false accusations and inappropriate comments;
(3) Not properly compensated for work in Pay Periods 6 & 7;
(4) Limited Excepted Service Appointment was terminated effective April 6, 2012; and,
(5) Management required Complainant to use his sick and annual leave to address his health issues that resulted from the alleged discrimination.

*Note: In order to ensure your affidavit is clear and detailed, you must answer every question and every subpart of every question. If you cannot answer a question, explain why you cannot answer the question. You may give approximations, but only when you cannot be more specific and only when you indicate that your answer is an approximation. You must provide any documentation requested and any documentation you feel supports your testimony. If you cannot provide the documentation, you must state why you cannot provide the documentation.*

Please respond in detail to the questions below based on these allegations:

Q1. State your name, job title, grade level and your work location at the time of the alleged action.

Fatima Smith, Learning Consultant, Grade GG 11/07. For the past 12 years, I have worked at FSI as a colleague of Dr. Coulibaly and retired from FSI effective Dec 31, 2011

Q2. Are you currently employed by DOS? If not, what date did you leave the Agency?

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Date Signed |
|---|---|---|
| *Fatima* | *Smith* | 06 - 27.2012 |

Form 2548-B, March 2001

Affidavit  N
Page  1  of  3

111363

26.JUN.20.2 19:13 139696.02                    USAID-SENEGA:                    #1236 P.002 /004

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No | No. Pages | Case No |
|---------|-----------|---------|
| 2 | 3 | DOS-F-025-12 |

No. I am not currently employed by DOS. As indicated above, I retired from DOS on Dec 31, 2011.

Q3. What was your working relationship with the Complainant?

As a learning Consultant (student counselor) I met frequently with Dr Coulibaly to discuss his students' learning problems and gave him feedback on the problems they had in learning French and provided guidance on approaches on how the students may improve their language proficiency. I would like to note that Dr. Coulibaly and I were hired 2 or 3 months apart. Being newcomers at FSI at the same time, we developed a relatively close professional and personal relationship

Hostile Work Environment Allegations

Q4. Are you aware of the Complainant reporting to you or anyone else in management that he felt he had been subjected to a hostile work environment? If so when did he do so?

Within the last 6 months of my departure from FSI, (around May/June 2011). Dr. Coulibaly complained often about the hostile work environment, being subjected to unfair and discriminatory treatment from his supervisors, Laura Fyfe and Debra Blake.

a. Who did he notify? Provide full name, job title, phone number and email address.

Although I am not aware of Dr Coulibaly making complaints to management, on the other hand, I am very much aware of the fact he complained to his colleagues about the unreasonable treatment he suffered from his above-mentioned supervisors.

b. What did he say?

Dr Coulibaly complained to me that his supervisor Laura Fyfe constantly picked on him in a critical manner and wanted to know how he conducted his reading lessons to his students. Dr Coulibaly has been teaching at FSI for approximately 12 years and has been recognized as an outstanding French language teacher, having received work performance awards for many years. In support of his statement that Ms Fyfe picked on him, Dr Coulibaly informed me that Ms Fyfe sent him an email asking him to report to her immediately and she was offended when he did not report to her immediately. Dr Coulibaly stated that he was teaching a class when the email was sent to him and Ms Fyfe as a supervisor who is knowledgeable of his teaching schedule and should have known that he was in class was hostile to him, criticizing him that he had ignored her email.

In addition, Dr Coulibaly complained to me that he had encountered discriminatory behaviour from his supervisors because he stated that a french language teacher was favored over and was given a direct hire position in spite of the fact that this person was unqualified, does not have a degree from a university or college and has absolutely no teaching experience. This language teacher is Mr. Hmimiche, who prior to being hired as a teacher was a television technician.

c. How did you or management respond? Explain in detail.

I declare under penalty of perjury that the foregoing is true and correct.

Affiant Signature                Fine                                Date Signed: 06.27.2012

Form 3589, March 2001

Affidavit N
Page 2 of 3

011-464

29.JUN.2512 09:14 338696101          USAID-SENLGAL                    #1239 P.204 '004

| EEO Investigative Affidavit (Continuation Sheet) | Page No | No. Pages | Case No |
|---|---|---|---|
| | 3 | 3 | DOS-F-025-12 |

After hearing Dr Coulibaly's complaint about the email that was sent to him, I cautioned him to be careful as it is evident that they are looking for reasons to not tenure him so that they can fire him.

Q5.  Did you notice any changes in Complainant's work habits after the alleged hostile work environment occurred (or claims in this complaint which support his assertions of hostile work environment)? If so, what did you notice?

I did not notice any change. As a matter of fact, he became so worried that he showed a common friend and colleague all his reading preparations to be checked. This was a surprise to me as Dr. Coulibaly is known as one of the best teachers and was often selected to teach Ambassadors assigned overseas.

Q6.  What actions/incidents did you witness directly? Please describe and explain what occurred, when it occurred and what the Complainant did in response.

I would like to corroborate Dr. Coulibaly's statement as I witnessed inappropriate and unprofessional behavior by Debra Blake. As Dr Coulibaly mentioned, it was evident that Ms Blake has developed an intimate and seemingly romantic relationship with Mr. Hmimiche who cleared received preferential treatment from Ms Blake and Ms Fyfe as he was clearly and evidently not qualified as a French Language instructor. Whereas Dr Coulibaly is highly qualified with a Phd and has numerous years and is a seasoned French language teacher with many many years of experience, Mr. Hmimiche does not have the education or the teaching experience comparable to Dr Coulibaly's. However, Mr. Hmimiche's teaching approach was never questioned by either Ms Fyfe or Ms Blake and has been tenured. This is a clear and unequivocally unjust discriminatory action against Dr Coulibaly.

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | | |
|---|---|---|
| *[signature]* palunell | *[signature]* Sru K | **Date Signed** 06.27.2012 |

Form 2569, March 2001

Affidavit N

Page 3 of 3

| EEO Investigative Affidavit *(Witness)* | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | **1** | **2** | **DOS-F-025-12** |

| 1. Affiant's Name (Last, First, MI) | | 2. Employing Facility | |
|---|---|---|---|
| De Launay-Fogg, Paulette | | FSI/SLS/EUA/French section | |

| 3. Position Title | 4. Grade Level | 5. Employment Address | 6. Unit Assigned |
|---|---|---|---|
| French teacher | GS 11 | SA-42 | F-2832 |

Privacy Act Notice

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967 as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973 as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes, where pertinent, in a legal proceeding to which the Agency is a party or has an interest, to a government agency in order to obtain information relevant to a Agency decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to the decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits;

to a congressional office at your request; to an expert, consultant, or other person under contract with the agency to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of agency finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction, and to a labor organization as required by the FLRA/National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for agency employees and other witnesses.

Statement (Continue on Form 2558 if additional space is required Form will auto-create if using Microsoft Word)

You have been named as a responding management official in an EEO claim filed by Dr. Tiemoko Coulibaly alleging he was discriminated against due to race, color, national origin and and reprisal for opposant discriminatory practices and policies, when:

(1) On December 27, 2011, he received a negative performance appraisal report (PAR);
(2) Subjected to a hostile work environment characterized by, but not limited to, false accusations and inappropriate comments;
(3) Not properly compensated for work in Pay Periods 6 & 7;
(4) Limited Excepted Service Appointment was terminated effective April 6, 2012; and,
(5) Management required Complainant to use his sick and annual leave to address his health issues that resulted from the alleged discrimination.

*Note: In order to ensure your affidavit is clear and detailed, you must answer every question and every subpart of every question. If you cannot answer a question, explain why you cannot answer the question. You may give approximations, but only when you cannot be more specific and only when you indicate that your answer is an approximation. You must provide any documentation requested and any documentation you feel supports your testimony. If you cannot provide the documentation, you must state why you cannot provide the documentation.*

Please respond in detail to the questions below based on these allegations:

Q1. State your name, job title, grade level and your work location at the time of the alleged action.
Paulette De Launay-Fogg, French teacher, GS 11 SA-42

Q2. Are you currently employed by DOS? If not, what date did you leave the Agency?

Yes but answering your investigation questions could cost me my job as we work in a very hostile environment

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| Paulette de Launay-Fogg | 6/28/2012 |

Form 2558-II, March 2001

Affidavit Q
Page 1 of 5

06/29/2012 17 47 FAX  70330275⁻⁻⁻          FSI/SES/CLA                              ☑003/004

| | Page No. | No. Pages | Case No |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | 2 | 2 | DOS-F-025-12 |

Q3.  What was your working relationship with the Complainant?
    He was a colleague since June 1999 when I was his trainer we taught a class together

**Hostile Work Environment Allegations**

Q4.   Are you aware of the Complainant reporting to you or anyone else in mangement that he felt he had been subjected
    to a hostile work environment? If so when did he do so?
Yes, it is common knowledge in the French section that we are working under a very hostile work environment.Many
    teachers are becoming depressed and sick.

Dr. Tiemoko Coulibaly was under extreme pressure since we got the new management

Chairperson Debra Blake, Dr. Laura Fyfe, Hilary Sachs, Philippe Casteuble. Before their arrivals the working conditions
    were much better under the supervision of previous LTS s : Monique Bilezikian & Solomon Atayi and others

Since the new management arrived, many colleagues were fired and dismissed even after working  at FSI many years
The moral of the French section became very low and toxic. Several teachers asked for early retirement and some resigned
    being discouraged by the unfair treatment. We have been losing our best teachers since the last 3 years. Even one
    LTS got fired  and he was doing a superb job

    a.  Who did he notify? Provide full name, job title, phone number and email address.
EEO
    b.  What did he say?
    c   He told us that he was seeking justice for unfair treatment and harassement
    d   How did you or mangement respond? Explain in detail.
Not sure but they retaliated by getting him fired claiming he did not follow the proper procedure to take his sick leave
I met him in the hallway  He showed me both letters, one signed by our Assistant Dean Jim North authorizing his leave
    and the other letter stating his last day of work would be April 6ᵗʰ, 2012. He was disraught.
Q5.    Did you notice any changes in Complainant's work habits after the alleged hostile work environment occurred (or
    claims in this complaint which support his assertions of hostile work environment)? If so, what did you notice?
After Dr. Coulibaly started his EEO complaint, management fell on him, he was given poor performing classes to prove he
    was a bad teacher. I know he was asked to take a training class twice when he asked why
He received a letter of disciplinary action from Philippe Casteuble
Dr. Coulibaly was considered as an outstanding teacher getting his students achieve their language goals, for years , he was
    a respected teacher until the new management came in. After I observed that he was showing great distress and
    anxiety losing weight to finally being forced to take sick leave in order to follow his doctors 'orders

Q6.   What actions/incidents did you witness directly? Please describe and explain what occurred, when it occurred and
    what the Complainant did in response.
I know that Dr. Coulibaly became Direct Hire the same day Mr. Aitmouloud Hmimiche became direct-Hire but both
    teachers were treated very differently.
Because it is common knowledge that the chairwoman Debra Blake and Mr. Hmimiche Aitmouloud became a couple, all
    the students and teachers know about their illegal affair. Many times, they were seen together leaving the school
    together.
I personally saw Debra Blake caressing Mr  Aitmouloud Hmimiche's neck. He always running into her office.
Many teachers who are personal friends of Mr. Hmimiche Aitmouloud were promoted unfairly. Many instances of unfair
    promotions and awards were observed. Djanette Khadraoui was promoted to GS 12 without any merit but Debra
    Blake treated her with favoritism in front of everyone. Many Federal Laws were broken

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature   Paulette De Launay-Fogg | Date Signed   6/28/2012 |
|---|---|

Form 2569, March 2001

Affidavit  Q
Page   2   of   5

01175

## Certification

| Case No. |
|---|
| DOS-F-025-12 |

I have read the foregoing attached statement, consisting of ___ 2 ___ pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S Code which states

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

**Privacy Act Notice**

Privacy Act Notice. The collection of this information is authorized by The Equal Employment Opportunity Act of 1972, 42 U.S.C. 2000e-16, The Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.633a, The Rehabilitation Act of 1973, as amended, 29 U.S.C. 794a, and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes, where pertinent, in a legal proceeding to which the Agency is a party or has an interest, to a government agency in order to obtain information relevant to an Agency decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the Agency to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation, to an independent certified public accountant during an official audit of Agency finances, to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614, to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and is a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision the information requested is voluntary for the complainant, and for Agency employees and other witnesses.

**Declaration**

I declare, under penalty of perjury, that the foregoing is true and correct.

| Signature of Affiant | Date Signed |
|---|---|
| Paulette De Launay-Fogg | 6 / 28 / 2012 |

October 2005



U.S. Department of State
Office of Civil Rights (S/OCR)
**EEO COUNSELOR'S REPORT**

*ToTAL Report*
*10 6 pages*

This form is to be used by U.S. Department of State certified EEO counselors to report on counseling activities in accordance with 29 C.F.R. § 1614.105(c). Questions concerning completion of this form should be directed to the Intake and Resolution Section Chief, Office of Civil Rights (S/OCR).

**PRIVACY ACT STATEMENT (5 U.S.C. § 552a)**

| | |
|---|---|
| AUTHORITY | Public Law 92-261 |
| PRINCIPAL PURPOSE | Used for processing complaints of discrimination because of race, color, national origin, sex, age, physical and/or mental disability, reprisal, or sexual orientation by Department of State employees, former employees, applicants for employment, and some contract employees. |
| ROUTINE USES | Information will be used (a) as a data source for complaint information for production of summary descriptive statistics and analytical studies of complaints processing and resolution efforts; (b) to respond to general requests for information under the Freedom of Information Act; (c) to respond to requests from legitimate outside individuals or agencies (White House, Congress, Equal Employment Opportunity Commission) regarding the status of a complaint or appeal; or (d) to adjudicate a complaint or appeal. |
| DISCLOSURE | Voluntary, however, failure to complete all appropriate portions of this form may lead to a delay in processing and/or rejection of the complaint on the basis of inadequate data to continue processing. |

**SECTION I. AGGRIEVED PERSON**

| 1. Name *(Last, First, MI.)* | 2. U.S. Citizen | 3. Is the aggrieved working for the Federal government? |
|---|---|---|
| Coulibaly          Tiemoko | [X] Yes   [ ] No | [X] Yes   [ ] No |

4. Aggrieved is a(n):

[X] Employee   [ ] Applicant   [ ] FSN   [ ] Contractor   [ ] Other *(Specify)*

| 5. Current Employer | 6. Bureau/Office/Post Where Discrimination Allegedly Took Place |
|---|---|
| Department of State | Foreign Service Institute |

| 7. Work Telephone Number *(Include area code)* | 8. Home Telephone Number *(Include area code)* |
|---|---|
| cell 301 221 7646 | 301 578 8570 |

9. Home Address *(Include ZIP code)*

2013 Grace Church Road; Silver Spring MD 20910

| 10a. Work E-Mail Address | 10b. Home E-Mail Address |
|---|---|
| CoulibalyT@state.gov | Tiemoko2005@yahoo.com |

**SECTION II. CHRONOLOGY OF EEO COUNSELING**

| 11. Initial Contact Person | 12. EEO Counselor Assigned by S/OCR | 13. Date EEO Counselor Assigned *(mm-dd-yyyy)* |
|---|---|---|
| Erica Hall | Sheila Weir | 11-18-2011 |

| 14. Date of Initial Contact with EEO Counselor or S/OCR *(mm-dd-yyyy)* | 15. Date of Alleged Discriminatory Act *(mm-dd-yyyy) (Include one date)* | 16. 45th Day After Alleged Discriminatory Act *(mm-dd-yyyy)* |
|---|---|---|
| 11-18-2011 | 10-26-2011 | 12-10-2011 |

17. Aggrieved's Reason for Delayed Contact with Counselor Beyond 45 Days *(if applicable)*



| 18. 30th Day from Initial Contact *(mm-dd-yyyy)* | 20. Extension Granted/Denied and Date *(mm-dd-yyyy)* |
|---|---|
| 12-17-2011 | [ ] Date Granted *(mm-dd-yyyy)* _____ |
| 19. Date of Extension Request *(mm-dd-yyyy)* | [ ] Date Denied *(mm-dd-yyyy)* _____  S/OCR Approval   [ ] Yes   [ ] No |

DS-3080
03-2008

Page 1 of 5

| 21. Date Notice of Rights and Responsibilities Issued (mm-dd-yyyy) | 22. Date ADR Offered (mm-dd-yyyy) | 23. Date ADR Accepted by Aggrieved (mm-dd-yyyy) |
|---|---|---|
| 11-23-2011 | 11-23-2011 | |
| 24. Date ADR Rejected by Aggrieved (mm-dd-yyyy) | 25. Date ADR Election Form to S/OCR (mm-dd-yyyy) | 26. Date Final Interview/Report Discussed (mm-dd-yyyy) |
| 12-14-2011 | | 12-14-2011 |
| 27. Date Notice of Right to File Issued (mm-dd-yyyy) | 28. Date Notice Signed/Dated by Aggrieved (mm-dd-yyyy) | 29. Date Counseling Report Submitted to S/OCR (mm-dd-yyyy) |
| 12-14-2011 | 12-16-2011 | 12-27-2011 |

### SECTION III. BASIS/ES FOR ALLEGED DISCRIMINATION (Complete as appropriate)

| 30. Race (Specify, e.g., African-American, Caucasian, Native American) | 31. Color (Specify, e.g., dark-skinned, brown, light, white) | 32. National Origin (Specify, e.g., Hispanic, Asian, African, Mexican) |
|---|---|---|
| African-American | Black, Dark-skinned | Cote d'Ivorian |

| 33. Sex | 34. Age - Provide DOB (mm-dd-yyyy) | 35. Religion (Specify, e.g., Christian, Muslim, Jewish, no religion) |
|---|---|---|
| ☐ Male    ☐ Female | | |

36. Disability (State disability)

☐ Mental ____                                              ☐ Physical ____

| 37. Sexual Orientation (Specify, e.g., Lesbian, Heterosexual, Homosexual, Transsexual) | 38. Reprisal |
|---|---|
| | Date (mm-dd-yyyy) _____ 03-26-2009 |
| | ☐ Engaging in prior protected activity and/or |
| | ☐ Opposing discriminatory policies or practices |

### SECTION IV. SPECIFIC ALLEGATION(S) OF DISCRIMINATION

39. How was the aggrieved treated differently from other employees or applicants because of Race, Color, Sex, National Origin, Age, Mental or Physical Disability, Sexual Orientation, or Reprisal? Specify who, what, where, and when.
(Space will expand to fit. Attach additional sheets if necessary. To print the additional pages, check the print addendum box in the right hand corner of the print dialog box.)

Mr. Coulibaly claims discrimination based on race (African-American), national origin (Cote d'Ivorian), color (black, dark-skinned) and retaliation by the French Management section at the Foreign Service Institute (FSI).

Mr. Coulibaly claims ongoing discrimination between Black and White teacher in French Section for many years. Black teachers in the past have complained that they are not treated fairly by the Management. He believes there has been an EEO investigation on the issue in the past.

Mr. Coulibaly claims discrimination by Ms. Laura Fyfe on the basis of National Origin based on the following events:
In June 2010; Mr. Coulibaly became a direct hire and received a new supervisor, Ms. Fyfe. She was very aggressive and wrote negative reports to try and get him fired during his probation period. On November 8, 2011 Ms Fyfe started crying and accused Mr. Coulibaly of discrimination because her former husband was from Ivory Coast. This was a culmination of mistreatment and retaliation. Mr. Coulibaly claims she transferred her frustration against him because Mr. Coulibaly's National origin was the same of her former husband's.

Mr. Coulibaly claims discrimination by Laura Fyfe on the basis of Race due to the following events:
On October 26th, 2011 Mr. Coulibaly (Cote d'ivorian-black) and a colleague, Mr. Cazeau (Haitian-black) were called into a follow up meeting by Hillary Sachs (one of their supervisors) and told their comments at a previous meeting (October 25, 2011) were considered 'not professional'. Mr. Coulibaly and others in the meeting had made some comments about Ms. Laura Fyfe (one of the alleged discriminators). He feels that there is collusion between the teachers/supervisors. Two other attendees at the meeting (Valerie-white & Amanda -white) also had attended the October 25, 2011 meeting and were not chastised for similar comments at the meeting.

Mr. Coulibaly claims discrimination due to Race against Debra Blake and Laura Fyfe based on the following events:
On 26th March 2009, Mr. Coulibaly was victim of physical agression and verbal abuse by Mrs. Dalanda Diallo who in front of all the people present, yelled loudly several times: "impolite, inadequately raised-up". Management did not make any effort to protect Mr. Coulibaly from this outburst. Later Mr. Ngandu Mulumba accompanied Mrs. Diallo into his office and tried to physically attack him but he was restrained by other teachers. He wrote an email to inform his Supervisors, Monique Bilezikian and Joshua Sanders. He claims they did nothing for two days in violation of the Department's policy on workplace violence. Management was angry with him as he went to Diplomatic Security (DS) and was told by Ms. Blake that "this investigation must be closed and she assured me there will be no retaliation against me...I was lucky because I didn't lose my job. I was scared and felt the hostility against me."

In June, 2009 as a result of his complaint to DS, he believes that he was not hired for a job for which he believes he was "clearly the best candidate." He states: "Valerie who was hired in 2009 was objectively less qualified than me and she is White and I am Black: this is another element of discrimination based on race... Debra Blake, the boss, explained to me that she didn't know why I was not hired even if she is the person making the decision."

He requested that Debra Blake assign a new supervisor due to conflict with Ms. Fyfe. She refused to do so which he believes (see Addendum 1),

DS-3080                                                                                                          Page 2 of 5

## SECTION V - RELIEF/REMEDY SOUGHT

**40. Remedy 1-**

Mr. Coulibaly seeks to be removed from the chain of command of Ms. Fyfe and to stop the culture of discrimination, favoritism, realization and the French Management [at FSI] must follow State Department policy and Federal laws.

**41. Remedy 2-**

Mr. Coulibaly believes Ms. Blake and Ms. Fyfe should be fired by the Department for violation of the Department's policy and violation of Federal law. He claims in the last two years, these two people unfairly fired about 10 teachers, something he have never seen in 12 years of working at FSI.

**42. Remedy 3-**

In addition, the Department should put in place in French section a clear policy and better leadership to avoid discrimination and retaliation in the French section in the future. He also wants a transparent and serious review of the cases of all people Ms. Blake and Ms. Fyfe unfairly fired the last two years: He believe they should be re-hired.

**43. Remedy 4-**

The Department should put in place a clear policy of hiring and firing in the French Section to avoid favoritism, retaliation and discrimination in this process. The Department's policy and federal law must be respected in the French Section.

**44. Remedy 5-**

## SECTION VI - RIGHTS AND RESPONSIBILITIES

**45. The Aggrieved was provided with the Notice of Rights and Responsibilities and was specifically advised of the following:**

[X] The basis(es) for filing an Informal, formal, and class complaint.

[X] The right to file a formal complaint of discrimination.

[X] The 45-calendar day requirement to contact an EEO Counselor or S/OCR from the effective date of a personnel action or of the date of the matter alleged to be discriminatory.

[X] The role of an EEO Counselor, including that the Counselor is not an advocate for either the aggrieved person or the agency and acts strictly as a neutral party.

[X] The possible availability of utilizing the Alternative Dispute Resolution (ADR) program and the right to elect either ADR or traditional EEO counseling.

[X] The right to remain anonymous during the informal complaint process. *(Choose one)*

     [ ] Election to remain anonymous      [X] Election to waive right to remain anonymous

[X] The right to representation throughout the complaint process.

[X] Responsibility of the aggrieved to notify S/OCR in writing of any change in contact information.

[X] Responsibility of the aggrieved to notify S/OCR in writing of any non-attorney or attorney representation and provide representative's contact information.

[X] The possible election requirement between a negotiated grievance procedure, MSPB procedure, and the EEO complaint process.

[ ] The election options in age and wage-based discrimination complaints.

## SECTION VII - ELECTION OF REPRESENTATIVE

[ ] Attorney      [ ] Non-Attorney

| 46. Name of Representative | 47. Address |
|---|---|

| 48. Telephone Number | 49. Fax Number | 50. E-Mail |
|---|---|---|

**SECTION VIII. INFORMAL RESOLUTION ATTEMPT(S)**

51. Management Official(s) who is/are alleged to have taken action and/or who can assist in resolution or other employees that may assist in resolution efforts.

| Contact Person 1 | Title |
|---|---|

Summary of Contact Person 1's Response to the Allegation(s)
*(Space will expand to fit. Attach additional sheets if necessary. To print the additional pages, check the print addendum box in the right hand corner of the print dialog box.)*

| Contact Person 2 | Title |
|---|---|

Summary of Contact Person 2's Response to the Allegation(s)
*(Space will expand to fit. Attach additional sheets if necessary. To print the additional pages, check the print addendum box in the right hand corner of the print dialog box.)*

| Contact Person 3 | Title |
|---|---|

Summary of Contact Person 3's Response to the Allegation(s)
*(Space will expand to fit. Attach additional sheets if necessary. To print the additional pages, check the print addendum box in the right hand corner of the print dialog box.)*
*(Add all contacts, if any. Refer to the note at the bottom of this page.)*

NOTE: If there are more than 3 Contact Persons, include all information (i.e., Contact Person Name, Title, and Summary) in the addendum.

52. Documents Reviewed *(List)*

1. Email exchanges Re: Tiemoko syllabus 19-23 decembre 2011.

2. Email exchanges Re: Investigation on event occured on Thursday 26, 2009 in French section.

3. Email exchanges Re: Memo of Conversation.

4. Email exchanges Re: Midyear performance review.

5. Email exchanges Re: Check in

6.

7.

8.

NOTE: If there are more than 8 documents reviewed, include additional documents in the addendum.

## SECTION IX: OUTCOME OF INFORMAL COUNSELING

53. [X] Resolution was not accomplished; therefore, I conducted the final interview with the Aggrieved on *(mm-dd-yyyy)* **12-14-2011** at which time I informed the Aggrieved of the full scope of my inquiry and the reason(s) articulated by management for action(s) taken. I provided the Aggrieved with a "Notice of Right to File a Formal Complaint of Discrimination" and a "Formal Complaint Form". The Aggrieved is aware of the requirement to file a formal complaint **within 15 calendar days** of the final interview if not satisfied with the results of my inquiry.

54. [ ] Resolution was accomplished. A negotiated settlement agreement was signed on *(mm-dd-yyyy)* _____

55. [ ] Withdrawal; the aggrieved withdrew their complaint on *(mm-dd-yyyy)* _____.

56. [ ] ADR elected *(mm-dd-yyyy)* _____ Counselor's report submitted **within 5 days** to OCR *(mm-dd-yyyy)* _____.

## SECTION X: SUMMARY OF COUNSELING ACTIVITIES

57. Provide a detail of your counseling activities.

After initial contact and meeting, I requested aggrieved to clarify claims of discrimination as related to EEO. Several claims we discussed in initial meeting were not specifically EEO related. I advised the aggrieved on looking into grievance process and sent hyperlinks to relevant documents. Due to the delay in receiving more specific details from the aggrieved, I was unable to contact the Management Officials in sufficient time before the 30 days of counseling ended.

Aggrieved has been very firm in wanting to move forward in a Formal complaint.

## SECTION XI: COUNSELOR CONTACT INFORMATION

| 58. Total Time Spent Counseling *(Calculate In hours)* | 59. Telephone Number | 60. Office Symbol/Post/Address |
|---|---|---|
| 6.00 | 202 632 9950 | IIP/RCA/AS |

61. Name of Counselor

Sheila Weir

| 62. Signature | 63. Date Signed *(mm-dd-yyyy)* |
|---|---|
| eSigned Using eForms  Weir, Sheila M | 12-27-2011 |

## SECTION III: ATTACHMENTS

64. The following documents must be included with this report:

1. Signed/Dated Notice of Rights and Responsibilities
2. Designation of Representation Form *(If applicable)*
3. Granted/Approved Extension *(If applicable)*
4. ADR Election Form *(If applicable)*
5. Signed/Dated Notice of Right to File *(if mailed, must be by FEDEX or DHL only)*
6. Signed/Dated Notice of Withdrawal Form *(If applicable)*

NOTE - DO NOT ACCEPT AND/OR INCLUDE THE FORMAL COMPLAINT FORM. COUNSELORS ARE NOT AUTHORIZED TO ACCEPT THE FORMAL COMPLAINT.

**_Addendum 1_**
collusion and that he is being punished due to his issues with Ms. Fyfe and his Ivorian Origin.

12/16/2011 14:03 FAX  7033027075          FSI/SLS/RON                    ☑001/002



**U.S. Department of State**
**Office of Civil Rights (S/OCR)**
## NOTICE OF RIGHT TO FILE A DISCRIMINATION COMPLAINT

Date *(mm-dd-yyyy)* _____ 12-14-2011 _____

To:  Aggrieved - _____ Tiemoko Coulibaly _____

From:  EEO Counselor - _____ Sheila Weir _____

This is to inform you that I have concluded my inquiry into your complaint in which you alleged discrimination based on your:  *(Check all that apply and specify.)*

| | |
|---|---|
| [X] Race _____ | [ ] Disability _____ |
| [X] Color _____ | [ ] Age _____ |
| [ ] Religion _____ | [X] Reprisal _____ |
| [ ] Sex _____ | [ ] Sexual Orientation _____ |
| [X] National Origin _____ | [ ] No Basis Identified _____ |

During this counseling period, the following allegations were brought to my attention, in my role as your EEO counselor. A more detailed description of your allegations will be included in the EEO Counselor's Report, a copy of which you will be provided by the Office of Civil Rights (S/OCR) .

1. Allegation                                    Date Occurred *(mm-dd-yyyy)* ___ 11-08-2011 ___
                    ~~2010~~ 2011
In June, ~~2010,~~ Mr. Coulibaly became a direct hire and rec'd a new supervisor, Ms. Fyfe. She was very aggressive and wrote negative reports to try and get him fired during the 13 month probationary period. November 8, 2011 Ms Fyfe started crying and she accused me of discrimination because her former husband was from Ivory Coast. This was a culmination of mistreatment and retaliation transferred her frustration against him because Mr. Coulibaly's National origin was the same of her former husband's.

2. Allegation                                    Date Occurred *(mm-dd-yyyy)* ___ 10-26-2011 ___

On October 26th, 2011 Mr. Coulibaly (Cote d'ivorian-black) and a colleague, Mr. Cazeau (Haitian-black) were called into a follow up meeting by Hillary Sachs (one of their supervisors) and told their comments at a previous meeting (October 25,2011) were considered 'not professional' . Mr. Coulibaly and others in the meeting had made some comments about Ms. Laura Fyfe (one of the alleged discriminators). He feels that there is collusion between the teachers/supervisors. Two other attendees at the meeting (Valerie Henric -white & Amanda Maugrian-white) also had attended the October 25, 2011 meeting and were not chastised for similar comments at the meeting.

3. Allegation                                    Date Occurred *(mm-dd-yyyy)* ___ 03-26-2009 ___

On Thursday 26th March 2009, Mr. Coulibaly was victim of workplace violence and informed supervisors Monique Bilezikian and Joshua Sanders. They ignored his claim and did nothing.  Management was angry with him as he went to Diplomatic Security (DS) and was told by Debra Blake that "this investigation must be closed and she assured me there will be no retaliation against me...I was lucky because I didn't lose my job. I was scared and felt the hostility against me." In June, 2009 As a result of his complaint to DS, he believes that he was not hired for a job that he was" clearly the best candidate .

DS-5081
08-2007                                                                    Page 1 of 2

Because the matter has not been resolved, you are now entitled to file a formal discrimination complaint on the bases and allegations identified above.

If you decide to file a formal complaint, it must be submitted on the attached DS-3079 Formal Complaint of Discrimination Form within 16 calendar days of your receipt of this Notice. It may be filed in person, faxed, or mailed to the following official authorized to receive discrimination complaints:

> Director
> U.S. Department of State
> Office of Civil Rights (S/OCR)
> 2201 C Street, NW - Room 7428
> Washington, DC 20520-7428
> Fax Number: (202) 647-4969

You must not submit your formal complaint to me, as I am not authorized to receive it on behalf of S/OCR.

Your complaint must be specific and limited to the matters discussed with me. It must also state whether or not you have filed a grievance under a negotiated grievance procedure or an appeal to the Merit Systems Protection Board on the same issues.

If you retain an attorney or a representative, you must immediately notify S/OCR in writing of the name, address, and telephone number of your representative. You and/or your representative will receive a written notice of receipt of your discrimination complaint from the Office of Civil Rights.

In addition, you must keep the Department informed of your current home address. Failure to do so could result in the delay or dismissal of your complaint.

Attachment:
DS-3079 Formal Complaint of Discrimination Form

Acknowledgment of Receipt:      *Dr. Tiemoko Coulibaly*

_____          *12/16/2011*
Aggrieved's Signature                              Date (mm-dd-yyyy)

*E-mail: Tiemoko2005@yahoo.com*
*CoulibalyT@state.gov*
*Cel. 301 221 7646*
*2013 Grace Church Rd*
*Silver Spring, MD 20910*

DS-5061                                                              Page 2 of 2



U.S. Department of State
Office of Civil Rights (S/OCR)
**NOTICE OF RIGHTS AND RESPONSIBILITIES**

Date *(mm-dd-yyyy)* _____   11-23-2011 _____

To    Aggrieved - _____   Tiemoko Coulibaly _____

From    EEO Counselor - _____   Sheila Weir _____

1.   In regards to the EEO matter that you brought to my attention, and to the extent the issues relate to alleged discriminatory actions by U.S. Department of State employees, I am required to advise you of your rights and responsibilities. They are:

a    **Anonymity**

You have the right to remain anonymous during the EEO counseling process. I will divulge your name to others only if you authorize me to do so. You should know, however, that it may be very difficult to resolve your issues informally if you choose to remain anonymous. Please check one.

☐  I want to remain anonymous during counseling

☒  I do not want to remain anonymous during counseling.

b    **Representation**

You have the right to a representative during the EEO complaint process, including EEO counseling. You may select anyone to represent you, including a current Department of State employee as long as his/her official position would not present a conflict of interest with his/her duties as your representative. I cannot serve as your representative. Please check the box next to your election below.

☐  I have a representative. My representative will be.

*(Please indicate)*   ☐ Attorney   ☐ Non-Attorney

Name  _____

Address  _____

_____

Phone  _____

E-mail  _____

☒  I do not have a representative at this time

I understand I may select a representative at any stage of the EEO process and that I must provide S/OCR a signed and completed Designation of Representative Form before S/OCR will discuss anything having to do with my case with my representative

c    **Alternative Dispute Resolution (ADR)**

During the informal stage, your claim(s) may be addressed through the agency's Alternative Dispute Resolution (ADR) program or EEO counseling. If you elect to participate in the ADR program as a voluntary means to resolve your dispute, the Office of Civil Rights will arrange for the appropriate management officials to engage in the dispute resolution process. If you elect to address your claim(s) through the ADR program, the counseling period will be extended up to, but not more than, 90 (ninety) calendar days. Election to participate in the ADR program must be in writing

Once I receive your signed ADR Election Form, I will gather enough information on your basis(es) and issue(s) to assist the agency in making a procedural decision on whether or not your case is appropriate for ADR. You will be notified in writing of S/OCR's decision either approving or disapproving your case for ADR and giving you further procedural rights.

DS-5083
08-2009

Page 1 of 4

# NOTIFICATION OF PERSONNEL ACTION

SF 50

Standard Form 50
Rev 7/91
U.S. Office of Personnel Management
Guide to Processing Personnel Actions, Chapter 4

| 1 Name  (Last First, Middle) | | | 2 Social Security Number | 3 Date of Birth | 4 Effective Date |
|---|---|---|---|---|---|
| COULIBALY,TIEMOKO NMN | | | ▓▓▓▓▓▓ | 01-25-1965 | 04-06-2012 |

## FIRST ACTION

## SECOND ACTION

| 5-A Code | 5-B Nature of Action | 6-A Code | 6-B Nature of Action |
|---|---|---|---|
| 385 | TERM. DURING PROB/TRIAL PERIOD | | |
| 5-C Code | 5-D Legal Authority | 6-C Code | 6-D Legal Authority |
| L4M | Reg 315.804 Eq. Sep-unsat perf/conduct-agency auth. | | |
| 5-E Code | 5-F Legal Authority | 6-E Code | 6-F Legal Authority |
| | | | |

| 7 FROM Position Title and Number   PD:104528  Position E0964617 | 15 TO Position Title and Number |
|---|---|
| TRAINING INSTRUCTOR FRENCH | |

| 8 Pay Plan | 9 Occ Code | 10 Grade/Level | 11 Step/Rate | 12 Total Salary | 13 Pay Basis | 16 Pay Plan | 17 Occ. Code | 18 Grade/Level | 19 Step/Rate | 20 Total Salary/Award | 21 Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GG | 01712 | 11 | 01 | $62,467.00 | PA | | | | | | |
| 12A Basic Pay | 12B Locality Adj | 12C Adj Basic Pay | 12D Other Pay | | | 20A Basic Pay | 20B Locality Adj | 20C Adj Basic Pay | 20D Other Pay | | |
| $50,287.00 | $12,180.00 | $62,467.00 | $0.00 | | | | | | | | |

| 14 Name and Location of Position's Organization | 260651 | 22 Name and Location of Position's Organization |
|---|---|---|
| EUROPEAN AND AFRICAN LANGUAGES<br>DOMESTIC LANGUAGE TRAINING<br>SCHOOL OF LANGUAGE STUDIES - DEAN'S OFFI<br>FOREIGN SERVICE INSTITUTE | | |

## EMPLOYEE DATA

| 23 Veterans Preference | | | 24 Tenure | | 25 DoS Tenure | 26 Veterans Preference for RIF | |
|---|---|---|---|---|---|---|---|
| 1 | 1 - None          3 - 10 Point/Disability        5 - 10 Point/Other<br>2 - 5 Point      4 - 10 Point/Compensable   6 - 10 Point/Compensable-30% | | 3 | 0 - None          2 - Conditional<br>1 - Permanent  3 - Indefinite | 12 | YES | X  NO |
| 27 FEGLI | | | 28 Annuitant Indicator | | | 29 Pay Rate Determinant | |
| C0 | Basic Only | | 9 | 9 - Not Applicable | | 0 | |
| 30 Retirement Plan | | 31 Service Comp Date (Leave) | 32 Work Schedule | | | 33 Part-Time Hours Per Biweekly<br>Pay Period | |
| K | K - FERS and FICA | 06-19-2011 | F | Full Time | | | |

## POSITION DATA

| 34 Position Occupied | | 35 FLSA Category | 36 Appropriation Code | 37 Bargaining Unit Status |
|---|---|---|---|---|
| 2 | 1 - Competitive Service     3 - SES General<br>2 - Excepted Service     4 - SES Career Reserved | E | E - Exempt<br>N - Nonexempt | 0113 0-1097  1121  0000 | 0010 |
| 38 Duty Station Code | | 39 Duty Station        (City-County-State or Overseas Location) | | |
| 110010001 | | WASHINGTON, DIST OF COLUMBIA | | |
| 40 DOG | 41 WGI Due | 42 Pam Skill | 43 HR Processor | 44 |
| 19-JUN-2011 | 17-JUN-2012 | | FSIEXBPN | EMPLID 156960 |

**45 Remarks**
- SF 2819 WAS PROVIDED.  LIFE INSURANCE COVERAGE IS EXTENDED FOR 31 DAYS DURING WHICH YOU ARE ELIGIBLE TO CONVERT TO AN INDIVIDUAL POLICY (NONGROUP CONTRACT).
- HEALTH BENEFITS COVERAGE IS EXTENDED FOR 31 DAYS DURING WHICH YOU ARE ELIGIBLE TO CONVERT TO AN INDIVIDUAL POLICY (NONGROUP CONTRACT). YOU ARE ALSO ELIGIBLE FOR TEMPORARY CONTINUATION OF YOUR FEHB COVERAGE FOR UP TO 18 MONTHS.
- SF-8 PROVIDED TO EMPLOYEE.
- LUMP-SUM PAYMENT TO BE MADE FOR ANY UNUSED ANNUAL LEAVE.
- FORWARDING ADDRESS: 2013 GRACE CHURCH RD, SILVER SPRING, MD 20910.

| 46 Employing Department or Agency | 50 Signature Authentication and Title of Approving Official |
|---|---|
| DEPARTMENT OF STATE | Electronically signed by |
| 47 Agency Code | 48 Personnel Office ID | 49 Approval Date | BROWNING,STEVEN ALAN |
| ST00 | 2951 | 04-06-2012 | ACTING |

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

**2 - OPF Copy - Long-Term Record - DO NOT DESTROY**

**FEHB**
Federal Employees
Health Benefits Program

## Health Benefits Election Form

Form Approved
OMB No. 3206-0160

**Part A - Enrollee and Family Member Information (For additional family members use a separate sheet and attach):**

| 1. Enrollee name (last, first, middle initial) | 2. Social Security number | 3. Date of birth | 4. Sex | 5. Are you married? |
|---|---|---|---|---|
| Tiemoko Coulibaly | 214 55 2089 | 01/25/1965 | ☑ M ☐ F | ☑ Yes ☐ No |

| 6. Home mailing address (including ZIP Code) | 7. Medicare (See note - page 2) ☐ A ☐ B ☐ D | 8. TRICARE ☐ | 9. Other insurance ☐ |
|---|---|---|---|
| 2013 Grace Church Rd | 10. Name of insurance | | 11. Insurance policy no. |
| Silver Spring, MD 20910 | | | |

| 12. Name of family member (last, first, middle initial) | 13. Social Security number | 14. Date of birth | 15. Sex | 16. Relationship code |
|---|---|---|---|---|
| COULIBALY-GAYE, Fatou | 217 57 3171 | 11/8/1964 | ☐ M ☑ F | wife 01 |

| 17. Address (if different from enrollee) | 18. Medicare (See note - page 2) ☐ A ☐ B ☐ D | 19. TRICARE ☐ | 20. Other insurance ☐ |
|---|---|---|---|
| | 21. Name of insurance | | 22. Insurance policy no. |

| Name of family member (last, first, middle initial) | Social Security number | Date of birth | Sex | Relationship code |
|---|---|---|---|---|
| COULIBALY BINTA, N.M | 217 57 3163 | 5/25/1998 | ☐ M ☑ F | daughter 19 |

| Address (if different from enrollee) | Medicare (See note - page 2) ☐ A ☐ B ☐ D | TRICARE ☐ | Other insurance ☐ |
|---|---|---|---|
| | Name of insurance | | Insurance policy no. |

| Name of family member (last, first, middle initial) | Social Security number | Date of birth | Sex | Relationship code |
|---|---|---|---|---|
| COULIBALY, Reingtou T. K | 215 59 1988 | 10/22/2000 | ☐ M ☑ F | daughter 19 |

| Address (if different from enrollee) | Medicare (See note - page 2) ☐ A ☐ B ☐ D | TRICARE ☐ | Other insurance ☐ |
|---|---|---|---|
| | Name of insurance | | Insurance policy no. |

| Name of family member (last, first, middle initial) | Social Security number | Date of birth | Sex | Relationship code |
|---|---|---|---|---|
| Coulibaly Noura K | 213 71 7243 | 9/13/2004 | ☐ M ☑ F | daughter 19 |

| Address (if different from enrollee) | Medicare (See note - page 2) ☐ A ☐ B ☐ D | TRICARE ☐ | Other insurance ☐ |
|---|---|---|---|
| | Name of insurance | | Insurance policy no. |

**Part B - Present Plan**

| 1. Plan name | 2. Enrollment code |
|---|---|

**Part C - New Plan**

| 1. Plan name | 2. Enrollment code |
|---|---|
| Blue Cross and Blue Shield Service STD NATIONWIDE | 105 |

**Part D - Event Code**

| 1. Event code | 2. Date of event |
|---|---|
| 1 A | 6/19/2011 |

**Part E - Employees Only (Election NOT to Enroll)**

☐ I do NOT want to enroll in the FEHB Program.
My signature in Part II certifies that I have read and understand the information on page 3 regarding this election.

**Part F - Cancellation**

☐ I CANCEL my enrollment.
My signature in Part II certifies that I have read and understand the information on page 3 regarding cancellation of enrollment.

**Part G - Suspension (Annuitants/Former Spouses Only)**

☐ I SUSPEND my enrollment.
My signature in Part II certifies that I have read and understand the information on page 4 regarding suspension of enrollment.

**Part H - Signature**

WARNING: Any intentionally false statement in this application or willful misrepresentation relative thereto is a violation of the law punishable by a fine of not more than $10,000 or imprisonment of not more than 5 years, or both. (18 U.S.C. 1001.)

| 1. Your signature (do not print) | 2. Date (mm/dd/yyyy) | 3. Daytime telephone number |
|---|---|---|
| | 6/23/2011 | 301 221 7646 |

**Part I - To be completed by agency or retirement system**

REMARKS: new hire EOD 06/19/2011

| 1. Date received | 2. Effective date of action | 3. Personnel telephone number | 4. Name and address of agency or retirement system |
|---|---|---|---|
| 6/23/2011 | 7/3/2011 | 866-300-7419 | U.S Department of State |
| 5. Authorizing official (please print) Susan S Lumaye | 6. Signature of authorized agency official Susan S Lumaye | | National Foreign Affairs Trng center Foreign Service Institute |
| 7. Payroll office number 1900-0003 | 8. Payroll office contact (please print) Devrin Gholson | 9. Payroll telephone number 800-521-2553 | Washington, DC 20522-4201 |

This edition supersedes all previous editions of SF 2809 and SF 2809-1.
U.S. Office of Personnel Management

NSN 7540-01-231-0227
Copy 5 - Enrollee

Standard Form 2809
Revised October 2004
Previous editions are not usable.



United States Department of State

*Washington, D.C.  20520*

May 27, 2011

Mr. Tiemoko Coulibaly
2013 Grace Church Road
Silver Spring, MD 20910

Dear Mr. Coulibaly:

*[handwritten: Agency informed Plaintiff about his hiring for 2 years (probationary period of 1 year) Plaintiff worked for the Agency during thirteen (13) years as Plaintiff working (interim firm May, 1999 – 2012)]*

We are pleased to confirm your Excepted Service appointment to the Department of State as a Training Instructor-French, GG-1712-11 step 1, with a salary of $62,467 per annum. This two year appointment becomes effective June 19, 2011.

Please report to the National Foreign Affairs Training Center, 4000 Arlington Blvd., Arlington, Virginia, Room F2210, at 8:30 a.m. on Monday, June 20, 2011. If you are unable to report on this date or have any questions, please do not hesitate to contact Ms. Swati Limaye at 703-302-6813.

Please use the following link to access the Department of State's Entry on Duty (EOD) website, http://careers.state.gov/EOD. This new employee pre-appointment website contains important forms that must be completed prior to your first day of employment at the State Department. Click the new civil service employee button on the EOD homepage to view and complete all required forms before arriving on 06/20/11. Each form is in PDF format. To open the forms, you must have Adobe Acrobat Reader installed on your computer. You can download this software from the website if necessary. Please be sure to bring the forms with you on your first day.

**The Immigration Reform and Control Act of 1986 requires employers to hire only individuals who are eligible to work in the United States. The Department of Justice Form I-9 must be completed and verified or your appointment cannot be confirmed. In addition, Homeland Security Presidential Directive 12 requires applicants for a federal government identification card provide two forms of identity source documents in original form, as well as one passport-sized photograph. One identity source document must be a valid Federal or State government issued picture ID. To satisfy both requirements, the identity source documents must come from the List of Acceptable Documents included in *Form I-9, OMB No. 1615-0047, Employment Eligibility Verification.* Submission of these documents is mandatory for your appointment to your new position.**

**Complete Section 1 and 2 of the I-9 form and bring the form, as well as the requested documentation (see List of Acceptable Documents) with you the first day. Please note that if you bring a document from List B, you must bring a document from List C as well in order to establish employment eligibility. The completed I-9 will become a part of your Official Personnel Folder.**

2

Under this appointment you will be contributing to the Federal Employees Retirement System (FERS). You are eligible for health and life insurance benefits. You will accrue annual and sick leave at the rate of 4 hours per pay period.

It may help you to know that pay day is every other Thursday. However, newly appointed employees may not receive their first check until approximately one month after entrance on duty.

All Federal payment must be paid by *Direct Deposit* through Electronic Funds Transfer (EFT) into a savings or checking account at a financial institution. The only legal exception is if you do not have a savings or checking account in any financial institution and do not establish one or have one established for you by an authorized payment agent. If you do not already have an account, and do not establish one or have one or have one established for you, you must certify that in writing. You will need to submit a blank check along with the Direct Deposit form, SF-1199A to establish the electronic transfer.

Welcome to the Department of State! We look forward to your arrival and entrance on duty.

Sincerely,

Swati Limaye
HR Specialist


Enclosure:
 New Employee Orientation CD

# Foreign Service (FS) and Civil Service (CS)

## Discipline Process Overview

Step 1 – Proposal Notice

Step 2 – Employee Reply

Step 3 – Decision

Step 4 – FSGB Hearing and Decision

The Agency violated but plan and its own policy by firing plaintiff without any basis, with the warning & suspension - plaintiff form had the right to defend himself - the Agency fired him only few days after his psychiatrist asked him to return to work on March 26, 2012 - Agency fired plaintiff without explanation on April 2, 2012 a week later in violation of FMLA and leave policy -

FOREIGN SERVICE (FS) AND CIVIL SERVICE (CS) DISCIPLINE PROCESS OVERVIEW –PROPOSAL NOTICE  Step I

3 FAM 4343 (FS Reprimand), 3 FAM 4353 (FS Suspension), 3 FAM 4364 (FS Removal), 3 FAM 4520 (Suspension), 3 FAM 4530 (Removal), 3 FAM 4555 (Performance)

| OIG,OCR,DS, BUREAU, Post | HR/ER | L/EMP HR/G | DGHR | Employee |
|---|---|---|---|---|
| Referral Package Request For Discipline 3 FAM 4320 | Draft Reprimand (CS only), Draft Proposed Reprimand Suspension Separation or Removal Letter | Review and Clear (as applicable) | | |
| | ER Director Review and/or Sign (as applicable) | | | |
| | Is the letter a proposed separation of a FS employee? | | Review and Sign | |
| | Yes → | | | |
| | No → The letter is a proposal for all other discipline, except a proposed separation of a FS employee | | | Employee Receipt of Proposed Letter |

# FOREIGN SERVICE AND CIVIL SERVICE DISCIPLINE PROCESS OVERVIEW – EMPLOYEE REPLY

**Step II**

| See Step III | DAS for HR | DGHR | Employee/Rep |
| --- | --- | --- | --- |

3 FAM 4344 (FS Reprimand), 3 FAM 4354 (FS Suspension), 3 FAM 4364.2 (FS Removal), 3 FAM 4520 (Suspension), 3 FAM 4530 (Removal), 3 FAM 4555 (Performance)

Written/Oral Reply
13 or 30 days (FS)
10 days (CS)

Is the reply for a proposed separation of a FS employee?

Yes

No

Sustain, Mitigate or Reverse Proposal

Sustain, Mitigate or Reverse Proposal

See Step III

The reply is to a proposed separation of a FS employee

The reply is to a proposed separation of a PM employee for all other disciplinary action

Reprimand (CS) issued or with no employee or formal right to reply

# DISCIPLINE PROCESS OVERVIEW (FS AND CS) – DECISION

Step III

3 FAM 4345 (FS Reprimand), 3 FAM 4355 (FS Suspension), 3 FAM 4354 3 (FS Removal), 3 FAM 4520 (Suspension), 3 FAM 4530 (Removal), Suspension), 3 FAM 4555 (Performance)

| Step IV | Employee | DGHR | DAS for HR | L/EMP HR/G | HR/ER |
|---|---|---|---|---|---|

HR/ER:
- Draft Decision Letter
- EP Director Review and Clear
- Is the Decision on a proposed separation of a FS employee?
  - Yes
  - No → The Decision is on all other proposed discipline, except a proposed separation of a FS employee

L/EMP HR/G:
- Review and Clear (as applicable)

DGHR:
- Review and Sign

DAS for HR:
- Review and Sign

Employee:
- Requests FSGB Hearing or files MSPB Appeal (as applicable), or files a grievance (agency grievance procedures or collective bargaining as applicable)
- NOTE: Grievance or MSPB Appeal regulations (3 FAM 4400/3 FAM 4363 (FS), 5 FAM 5630) and 4700 (CS)

FSGB Hearing regulations (3 FAM 4360)

Step IV:
- See Step IV

# DISCIPLINE PROCESS OVERVIEW (FS Only) – FSGB HEARING AND DECISION

**Step IV**

3 FAM 4325 (FS Reprimand)  3 FAM 4355 (FS Suspension)  3 FAM 4364  3 (FS Removal)  3 FAM 4520 (Suspension)  3 FAM 4530 (Removal)(Suspension)  3 FAM 4555 (Performance)

| END | Employee | Under Secretary for Management | L/EMP | HR/ER | FSGB |
|---|---|---|---|---|---|
| | | | Receive and Close | Draft Decision Letter | Adopts System, or Reverse D/C/HR Decision to Separate FS employee |
| | | | | ER Director Review and Close | |
| END | Requests Judicial Review (as applicable) | Review and Sign | | | |