**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| TIEMOKO COULIBALY, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 14-00712 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 9, 11, 16 |
| | : | | |
| JOHN KERRY, *U.S. Secretary of State*, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

<u>**MEMORANDUM OPINION**</u>

**GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING AS MOOT PLAINTIFF'S MOTION
TO EXPEDITE**

## I. INTRODUCTION

Dr. Tiemoko Coulibaly, proceeding *pro se* and *in forma pauperis*, brings this action

against the Secretary of State and fifteen other individuals who are current or former employees

of the U.S. Department of State.  Dr. Coulibaly alleges that, by terminating his employment,

Defendants violated the District of Columbia Accrued Sick and Safe Leave Act, as amended, and

Title I of the federal Family and Medical Leave Act.  Currently pending before the Court are the

defendants' motion to dismiss, Dr. Coulibaly's motion for summary judgment, and his motion to

expedite.  Because the Court's jurisdiction over the D.C. law claim is precluded by the Civil

Service Reform Act, the Court dismisses that claim.  Because, however, the Court has

jurisdiction over Dr. Coulibaly's claim under Title I of the Family and Medical Leave Act, and

because the defendants have not shown that the complaint fails to state a claim, the Court denies

the motion to dismiss as to that claim.  Because there remain genuine issues of material fact as to

the defendants' liability under the Family and Medical Leave Act, the Court denies Dr.

Coulibaly's motion for summary judgment.  Because the court resolves the pending dispositive motions, the Court denies as moot the motion to expedite.

## II.  FACTUAL BACKGROUND[1]

Dr. Coulibaly joined the Department of State's Foreign Service Institute ("FSI") as a French instructor in 1999.  Compl. ¶ 4, ECF No. 1.  He was hired originally as a contractor under a Blanket Purchase Agreement.  *See id.* ¶¶ 75, 83.  On June 19, 2011, Dr. Coulibaly commenced a two-year Excepted Service appointment within the Department of State as a French instructor, performing substantially the same duties as he had while a contractor.  Limaye letter of May 27, 2011, Compl. Ex. at 113, ECF No. 1-1; Compl. ¶¶ 75, 83.  His appointment was subject to an initial one-year trial or probationary period.  *See id.*

In November 2011, Dr. Coulibaly met with an Equal Employment Opportunity ("EEO") counselor to discuss alleged discrimination, and on December 20, 2011, he filed a formal EEO complaint alleging that FSI management had discriminated against him on the basis of race, color, and national origin.  *See* Compl. ¶¶ 2, 8–9; EEO Counselor's Report, Compl. Ex. at 102–06, ECF No. 1-1.  As a result of that EEO complaint, FSI management subjected Dr. Coulibaly to extensive harassment, causing his physical and mental health to deteriorate.  *See* Compl. ¶¶ 11, 14.

---

[1] Because the majority of the Court's analysis concerns Defendants' motion to dismiss, the Court's factual background assumes the truth of the well-pleaded factual allegations in the complaint, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and draws on documents referenced in and integral to the complaint, *see Marshall v. Honeywell Tech. Solutions, Inc.*, 536 F. Supp. 2d 59, 65 (D.D.C. 2008).  To his complaint, Dr. Coulibaly has attached a large exhibit consisting of many documents that could constitute competent summary judgment evidence.  *See* ECF No. 1-1.  Indeed, many of those documents are re-attached to Dr. Coulibaly's later filings.  Mindful that Dr. Coulibaly is proceeding *pro se*, in considering both the motion to dismiss and the motion for summary judgment, the Court has reviewed all of the complaint exhibits, in addition to the exhibits attached to later filings.  But for simplicity, in this factual background, the Court cites only the complaint and the exhibit attached to the complaint.

In February 2012, Dr. Coulibaly's primary care physician instructed him not to return to work and referred him to a psychiatrist. *Id.* ¶¶ 12, 13. Dr. Coulibaly was absent from work for approximately six weeks, from February 15, 2012, until March 26, 2012. *Id.* ¶ 12. During this absence, Dr. Coulibaly submitted to FSI a letter from the psychiatrist explaining his diagnosis of depression, anxiety, and post-traumatic stress disorder, which conditions the psychiatrist attributed to Dr. Coulibaly's "hostile work environment." *See id.* ¶ 14; *see also* Hamlin report of Mar. 10, 2012, Compl. Ex. at 1–2, ECF No. 1-1. Despite Dr. Coulibaly's multiple submissions of his leave request, FSI management refused to process the request on the basis that his psychiatrist had "provided too much information" and that approval of the request would jeopardize Dr. Coulibaly's privacy. Compl. ¶ 15.

On March 26, 2012, per his psychiatrist's instructions, Dr. Coulibaly returned to work and requested a change in supervisor. *See id.* ¶ 14. Upon his return, he again submitted his leave request and medical records, which FSI policies required that he submit within fifteen days after his return. *See id.* ¶ 17. On March 28, 2012, FSI management approved his leave request by email. *Id.* ¶ 18; *see also* Leave approval email of Mar. 28, 2012, Compl. Ex. at 18, ECF No. 1-1. Later that day, Dr. Coulibaly requested approval of eight hours of advance sick leave based on his health issues; his supervisor Philippe Casteuble explained that he had no authority to approve such a request and instead entered the eight hours as leave without pay pending further management approval. *See* Coulibaly-Casteuble emails of Mar. 28, 2012, Compl. Ex. at 27, ECF No. 1-1.

On April 2, 2012, FSI terminated Dr. Coulibaly's employment prior to the completion of his one-year trial period. *See* Compl. ¶ 19; Termination letter of Apr. 2, 2012, Compl. Ex. at 3, ECF No. 1-1. The termination letter explained that Dr. Coulibaly was discharged for

"unacceptable conduct," including "inappropriate interactions with supervisors, and . . . failure to follow established procedures for requesting leave."  Termination letter of Apr. 2, 2012, Compl. Ex. at 3.  His termination became effective on April 6, 2012.  *See id.*  FSI declined to pay Dr. Coulibaly for the time he was on sick leave, claiming that because he failed to follow proper procedure for requesting leave, his leave was never in fact approved.  *See* Compl. ¶¶ 23, 32.

Thereafter, Dr. Coulibaly continued to pursue his EEO complaint.  *Id.* ¶ 27; *see also* EEO filings and investigative documents, Compl. Ex. at 28–101, ECF No. 1-1.  He also asserted certain whistleblower claims before the Merit Systems Protection Board ("MSPB").  *See* Compl. ¶ 73.

In April 2014, Dr. Coulibaly filed the instant action against the Secretary of State and fifteen other individuals who are current or former employees of the U.S. Department of State (collectively "Defendants").  *See generally* Compl.[2]  The complaint alleges that his termination violated the federal Family and Medical Leave Act of 1993 ("FMLA"), Pub. L. No. 103–3, 107 Stat. 6 (1993), *as codified at* 29 U.S.C. §§ 2601 *et seq.*, and the District of Columbia Accrued Sick and Safe Leave Act of 2008, 2008 D.C. Laws 17–152, *as codified at* D.C. Code §§ 32–131.01 *et seq.*, as amended by the Earned Sick and Safe Leave Amendment Act of 2013, 2014 D.C. Laws 20–89.[3]  By way of relief, Dr. Coulibaly seeks compensatory damages for lost wages and benefits along with equitable relief.  *See* Compl. 46–47.

---

[2] Dr. Coulibaly alleges that three of the defendants were terminated from their posts at FSI in January 2013.  *See* Compl. ¶ 27.

[3] Dr. Coulibaly previously filed a separate complaint against many of the same Defendants, challenging his termination on numerous other grounds distinct from those asserted in the complaint in this instant action.  *See* Third Am. Compl., *Coulibaly v. Kerry et. al.*, No. 14-cv-00189, ECF No. 28.  This Memorandum Opinion addresses only the claims presented in this case, No. 14-cv-00712, under the Family and Medical Leave Act and the D.C. Accrued Sick and Safe Leave Act.

Defendants have filed a motion to dismiss.  *See* ECF No. 9.  Dr. Coulibaly has filed a motion for summary judgment, *see* ECF No. 11, and has submitted a letter that the Court construed as a motion to expedite, *see* ECF No. 16.  All motions are ripe for adjudication.

## III.  LEGAL STANDARDS

### A.  Rule 12(b)(1)

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction[.]"  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Thus, to survive a Rule 12(b)(1) motion to dismiss, a plaintiff bears the burden of establishing that a court has jurisdiction over his claim.  *See Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007) (subject-matter jurisdiction).  In determining whether jurisdiction exists, a court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).

"If sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction."  *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 200 (D.D.C. 2013) (citing *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature.")).  Courts "may not find a waiver unless Congress' intent is unequivocally expressed in the relevant statute."  *Hubbard v. Adm'r, E.P.A.*, 982 F.2d 531, 532 (D.C. Cir. 1992) (citation and internal quotation marks omitted).

### B.  Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).

### C.  Rule 56

A court may grant summary judgment when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  A party moving for summary judgment bears the "initial responsibility" of

demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986); *see also id.* at 330–31 (Brennan, J., dissenting on other grounds)

(explaining that "ultimate burden of persuasion" to establish the lack of a genuine dispute of

material fact "always remains on the moving party").

### IV.  ANALYSIS

Dr. Coulibaly alleges that his termination violated both the FMLA and the D.C. Accrued

Sick and Safe Leave Act, as amended.  *See generally* Compl.  In their motion to dismiss,

Defendants contend that the Court lacks jurisdiction over Dr. Coulibaly's claims, that he has

failed to state plausible claims, and that he failed to perfect service on those defendants sued in

their individual capacities.  *See* Mem. Supp. Defs.' Mot. Dismiss 5–12.  In his motion for

summary judgment, Dr. Coulibaly contends that because his evidence demonstrates the absence

of any issue for trial, he is entitled to summary judgment.  *See generally* Mem. Supp. Pl.'s Mot.

Summ. J.

Because the Court's jurisdiction over Dr. Coulibaly's D.C. law claim is precluded by the

Civil Service Reform Act, the Court dismisses that claim.  *See infra* Part IV.A.1.  Because,

however, the Court has jurisdiction over Dr. Coulibaly's claim under Title I of the FMLA, *see infra* Part IV.A, and because Defendants have not shown that the complaint fails to state a claim, *see infra* Part IV.B, the Court denies the motion to dismiss as to that claim.  Because there remain genuine issues of material fact as to Defendants' liability under the FMLA, the Court denies Dr. Coulibaly's motion for summary judgment.  *See infra* Part IV.C.

## A.  Jurisdiction

### 1.  Jurisdictional Preclusion by the Civil Service Reform Act

"[F]ederal employees are ordinarily not permitted to split a challenge to an adverse personnel action between the MSPB and a federal district court . . . ."  *Lacson v. U.S. Dep't of Homeland Sec.*, 726 F.3d 170, 174 (D.C. Cir. 2013).  "Rather, the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. §§ 1101 *et seq.*, generally requires employees to bring such claims first in an action before the MSPB and thereafter to the Federal Circuit."  *Id.* (citing 5 U.S.C. §§ 1204, 7701, 7703(b)(1)).  The CSRA's exclusive remedial scheme can therefore preclude a district or appeals court from exercising jurisdiction over certain employment-related claims brought by federal employees.  *See id.*

Underscoring the breadth of the CSRA's preclusive effect, the Supreme Court has taught that even federal employees without any review rights under the CSRA may not use other statutory vehicles such as the Back Pay Act to challenge employment actions, and that employees with review rights may not pursue claims outside of the CSRA's remedial scheme by invoking the federal courts' federal-question jurisdiction.  In *United States v. Fausto*, the Supreme Court held that given the CSRA's "comprehensive system for reviewing personnel action taken against federal employees," where the CSRA did not enable a nonpreference Excepted Service employee to seek relief before the MSPB and Federal Circuit, the absence of

such a remedy foreclosed his action in the Claims Court for damages under the Back Pay Act. 484 U.S. 439, 455 (1988).  More recently, in *Elgin v. Department of Treasury*, the Supreme Court explained that just as the CSRA's comprehensive scheme "foreclose[s] judicial review to employees to whom the CSRA *denies* statutory review" as in *Fausto*, "extrastatutory review is not available to those employees to whom the CSRA *grants* administrative and judicial review." 132 S. Ct. 2126, 2133 (2012).  The *Elgin* Court held that the district court could not exercise jurisdiction under 28 U.S.C. § 1331 over a facial constitutional challenge brought by a former competitive service employee, who had rights to review in the MSPB and Federal Circuit.  *Id.* at 2133–36.

The D.C. Circuit and other courts of appeals have reinforced the expansive reach of CSRA jurisdictional preclusion.  Like the Back Pay Act and § 1331, the Administrative Procedure Act ("APA") offers no workaround for CSRA preclusion: Federal employees may not use the APA to grieve an employment-related matter by challenging an agency's failure to abide by its own procedures and regulations, *see Graham v. Ashcroft*, 358 F.3d 931, 934–36 (D.C. Cir. 2004), a personnel policy at a systemic level, *Fornaro v. James*, 416 F.3d 63, 68–69 (D.C. Cir. 2005), or an agency's statutory interpretation, *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 448–49 (D.C. Cir. 2009).  Additionally, the CSRA forecloses federal employees from challenging employment actions using state-law remedies.  *See Guitart v. United States*, 3 F.3d 439, 439 (5th Cir. 1993) (affirming dismissal of FTCA claim incorporating state-law claims and following "[e]very circuit" that had considered CSRA preclusion of state-law remedies); *Berrios v. Dep't of the Army*, 884 F.2d 28, 31–33 (1st Cir. 1989); *Broughton v. Courtney*, 861 F.2d 639, 641–44 (11th Cir. 1988).  As a general rule, then, "so far as review of determinations under the CSRA is concerned, what you get under the CSRA is what you get."  *Fornaro*, 416 F.3d at 67.

In certain instances, however, the CSRA leaves the courthouse doors open to federal employees. The D.C. Circuit in *Lacson v. United States Department of Homeland Security* held that CSRA preclusion does not extend to a federal employee's suit brought under 49 U.S.C. § 46110, which authorizes appeals courts to review determinations relating to the protection of Sensitive Security Information ("SSI") issued by the Transportation Security Administration. *Lacson*, 726 F.3d at 173–77. The *Lacson* court explained that there was "something special about § 46110's grant of jurisdiction" that enabled it to avoid CSRA preclusion. *Id.* at 176. First, the court explained that § 46110 is free of the APA and § 1331's "defect of generality" because it "specifically addresses" SSI orders and is "narrowly drawn" so as to avoid upending the CSRA's remedial scheme. *Id.* Second, the court found it "significant" that § 46110 was an "independent source of federal court jurisdiction," noting that the section "uses the word 'jurisdiction'" and had long been read "as a jurisdictional grant." *Id.* (citing 49 U.S.C. § 46110(c)). Third, the court explained that in contrast to the APA and § 1331, which were enacted before the CSRA, Congress gave the courts of appeals jurisdiction over SSI orders "a full 25 years after the CSRA was enacted and 15 years after *Fausto*," thus making it "reasonable to assume that Congress knew that this later grant of jurisdiction would affect those earlier authorities." *Id.*[4]

Applying the above principles, this Court concludes that the CSRA's comprehensive scheme precludes this Court from considering Dr. Coulibaly's D.C. law claim.[5] Dr. Coulibaly's claim under the D.C. Accrued Sick and Safe Leave Act, as amended, is unquestionably a claim

---

[4] The CSRA also contains an express exception for actions brought under federal anti-discrimination statutes, but this case does not implicate any such statute. 5 U.S.C. § 2302(d); *accord Nyunt*, 589 F.3d at 448.

[5] Defendants do not question the Court's jurisdiction over Dr. Coulibaly's D.C. law claim. But this Court must confirm its jurisdiction even in the absence of a challenge. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

based on a local law not contemplated by the CSRA.  *See Guitart*, 3 F.3d at 439; *Berrios*, 884

F.2d at 31–33; *Broughton*, 861 F.2d at 641–44.  The CSRA provides the exclusive means for

covered federal employees to challenge employment actions "except where Congress specifies

otherwise," and here, Congress has not "specifie[d] otherwise" through a D.C. statute that it did

not enact.  *Nyunt*, 589 F.3d at 448 (citation omitted).  Even assuming *arguendo* that Congress

could overcome CSRA preclusion by merely approving of a D.C. statute, *see Gross v. Winter*,

876 F.2d 165, 168 n.6 (D.C. Cir. 1989), the Court still concludes that Dr. Coulibaly cannot rely

on the D.C. Accrued Sick and Safe Leave Act because it does not "specif[y]" that a federal

employee has any right of action against his employing agency[6] and contains no provision that

could be construed as an "independent source of federal court jurisdiction," *Lacson*, 726 F.3d at

176.

Accordingly, the Court concludes that the CSRA precludes it from exercising jurisdiction

over Dr. Coulibaly's claim under the D.C. Accrued Sick and Safe Leave Act, as amended.

## 2.  Sovereign Immunity

The United States is "immune from suit save as it consents to be sued, and the terms of

consent to be sued in any court define that court's jurisdiction to entertain the suit."  *Fornaro v.

James*, 416 F.3d 63, 66 (D.C. Cir. 2005) (citation omitted).  Courts cannot find that "the United

---

[6] The D.C. Accrued Sick and Safe Leave Act does not include the federal government or its agencies in its definition of "employer" or mention federal employees in its definition of "employee."  *See* D.C. Code § 32–131.01(2), (3).  Dr. Coulibaly asserts in his filings that another D.C. statute—the Wage Theft Prevention Amendment Act of 2014—"applies to any federal employee."  Pl.'s Reply Ex. P, ECF No. 15.  The complaint nowhere cites this statute, and "a party may not amend its complaint or broaden its claims through summary judgment briefing."  *District of Columbia v. Barrie*, 741 F. Supp. 2d 250, 263 (D.D.C. 2010).  Even if Dr. Coulibaly were to amend his complaint to include a claim under the Wage Theft Prevention Amendment Act of 2014, the Court discerns nothing in the cited portion of the statute that gives federal employees a right of action against their employer.  The section cited by Dr. Coulibaly amended a portion of the Minimum Wage Act Revision Act of 1992, which expressly excludes the federal government from its definition of "employer."  *See* D.C. Code § 32–1002(3).

States has waived its sovereign immunity unless the waiver is 'unequivocally expressed' in an Act of Congress." *Rochon v. Gonzales*, 438 F.3d 1211, 1215 (D.C. Cir. 2006).  However, "[i]f a plaintiff seeks to recover damages from a defendant in his personal, individual capacity then there is no sovereign immunity bar."  *Clark v. Library of Cong.*, 750 F.2d 89, 103 (D.C. Cir. 1984).

The Court concludes that Title I of the FMLA contains an express waiver of sovereign immunity.  Because Dr. Coulibaly has sued the Secretary of State "in his official capacity," Compl. ¶ 5, and because the State Department received notice of the suit, any official-capacity claim against the Secretary "is, in all respects other than name, to be treated as a suit against the [State Department]." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Title I of the FMLA contains an express authorization for private individuals to sue federal agencies for the commission of any "prohibited acts" enumerated in § 2615.  *See* 29 U.S.C. §§ 2617(a)(1) (defining liability), (a)(2) (providing for right of action against "any employer (including a public agency)" in federal or state court); *id.* §§ 203(x), 2611(4)(A) (defining "public agency" for purposes of FMLA to include federal agencies); *see also Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1018 (9th Cir. 1999) (contrasting Title I with Title II and concluding that the "absence of express statutory authorization for . . . suits under Title II" renders sovereign immunity applicable).  Accordingly, sovereign immunity does not bar any claims under Title I brought against the Secretary of State or any other defendant sued in his or her official capacity.[7]

---

[7] Although the complaint suggests that Dr. Coulibaly proceeds against the other fifteen State Department officials in their individual capacity, it is unclear whether those defendants are sued *solely* in their individual capacity.  *See* Compl. ¶¶ 6–7.  Even if Dr. Coulibaly proceeds against those defendants in both their official *and* individual capacities, the Court's conclusion as to sovereign immunity would be the same.  *See Kentucky*, 473 U.S. at 166 (treating suit against officer sued in official capacity as suit against state entity); *Clark*, 750 F.2d at 103 (explaining that sovereign immunity is not implicated in suits against officials in their individual capacity).

Dr. Coulibaly does not appear to advance any claim under Title II of the FMLA.  *See* Compl. ¶¶ 1, 2, 82 (expressly invoking Title I); *see also id.* ¶ 82 (asserting that Title II "cannot be applied here to prevent Plaintiff" from seeking relief).  But because *pro se* filings must be generously construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), to the extent that Dr. Coulibaly does assert any claim under Title II, the Court concludes that such a claim would be barred by sovereign immunity, at least as to any defendants sued in their official capacity,[8] given that Title II does not expressly authorize suits against the federal government.  *See Russell*, 191 F.3d at 1019.[9]

The Court thus concludes that sovereign immunity does not bar Dr. Coulibaly's claim under Title I of the FMLA.

---

[8] To the extent that Dr. Coulibaly brings any claims under Title II against defendants *in their individual capacity*, the Court disposes of those claims below.  *See infra* note 12.

[9] Defendants argue that although the APA functions as a waiver of sovereign immunity, the CSRA precludes Dr. Coulibaly from using the APA to obtain judicial review of his grievance.  *See* Mem. Supp. Defs.' Mot. Dismiss 7–8.  This is a correct proposition of law, *see supra* Part IV.A.1 (discussing CSRA preclusion of APA claims), but it has no bearing on this case.  Dr. Coulibaly need not invoke the APA's sovereign immunity waiver—and indeed does not do so—because he relies on Title I of the FMLA, which, as explained above, already contains an express waiver of sovereign immunity.  And to the extent that Dr. Coulibaly seeks reinstatement or any relief other than money damages, *see* Compl. ¶¶ 77, 79, he would still not need the APA's sovereign immunity waiver for actions for "relief other than money damages," 5 U.S.C. § 702, because Title I of the FMLA authorizes plaintiffs to seek from the federal government "such equitable relief as may be appropriate, including . . . reinstatement," 29 U.S.C. § 2617(a)(1)(B).

Defendants also argue that Dr. Coulibaly cannot rely on the Federal Tort Claims Act ("FTCA") for any waiver of sovereign immunity.  *See* Mem. Supp. Defs.' Mot. Dismiss 6–7.  But the Court does not discern an FTCA claim from the complaint, and because Dr. Coulibaly disclaims any reliance on the FTCA in his filings, the Court will not consider this issue.  *See* Mem. Supp. Pl.'s Mot. Summ. J. 19 ("FTCA and FMLA are two different cases and there is no issue of sovereign immunity for FMLA lawsuit.").

### 3.  Personal Jurisdiction

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  *Mwani v. bin Laden*, 417 F.3d 1, 8 (D.C. Cir. 2005) (citation omitted).  A federal official sued in his personal capacity must be personally served in accordance with Federal Rule of Civil Procedure 4(e).  *See Simpkins v. D.C. Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997) (holding that *Bivens* defendants "must be served as individuals, pursuant to Rule 4(e)").  When a plaintiff proceeds *in forma pauperis*, however, he is "entitled to rely on the United States Marshal[s] Service to effectuate service of process." *Dumaguin v. Sec'y of Health & Human Servs.*, 28 F.3d 1218, 1221 (D.C. Cir. 1994); *see also* 28 U.S.C. § 1915(d) (providing that "[t]he officers of the court shall issue and serve all process" in cases brought by a plaintiff proceeding *in forma pauperis*).  The U.S. Marshal's failure to perfect service is "automatically good cause" under Rule 4(m).  *Dumaguin*, 28 F.3d at 1221 (citation omitted); *see also* Fed. R. Civ. P. 4(m) (authorizing dismissal of action for failure to serve after 120 days absent showing of "good cause").

Defendants suggest that Dr. Coulibaly failed to perfect service on defendants sued in their personal capacity because the complaint was not delivered personally to any of the individual defendants or to an agent designated to receive service.  *See* Mem. Supp. Defs.' Mot. Dismiss 12.[10]  But as Dr. Coulibaly explains, he is proceeding *in forma pauperis* and relied on the U.S. Marshal to effect service.  *See* Mem. Supp. Pl.'s Mot. Summ. J. 25.  Moreover, the record shows

---

[10] The question of whether the FMLA permits actions against individuals as opposed to only employers is the subject of a circuit split.  *Compare Mitchell v. Chapman*, 343 F.3d 811, 829 (6th Cir. 2003) (holding that FMLA does not impose individual liability); *Wascura v. Carver*, 169 F.3d 683, 687 (11th Cir. 1999) (same), *with Modica v. Taylor*, 465 F.3d 174, 187 (5th Cir. 2006) (holding that FMLA permits individual liability for public officials); *Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002) (same).  Because Defendants do not raise this issue in their motion, the Court need not address it here.

that Dr. Coulibaly provided the names and business addresses of all defendants, and Defendants

have not contended that this information was insufficient.  *See* Process Receipt and Return, ECF

Nos. 4, 5.  Assuming (without deciding) that service by the U.S. Marshal was defective, the

Court will not penalize Dr. Coulibaly for any error not of his own making.  *See Dumaguin*, 28

F.3d at 1221.[11]

Accordingly, the Court will direct the Marshals Service to again attempt personal service

on the individual defendants (unless counsel agrees to accept service on their behalf).

*        *        *

The Court dismisses Dr. Coulibaly's claim under the D.C. Accrued Sick and Safe Leave

Act, as amended, because this Court's jurisdiction is precluded by the CSRA's comprehensive

remedial scheme.  The Court also holds that this Court's power to hear Dr. Coulibaly's claim

under Title I of the FMLA is not barred by sovereign immunity and not foreclosed by lack of

personal jurisdiction.

### B.  Failure to State a Claim

Having concluded that jurisdiction lies over Dr. Coulibaly's claim under Title I of the

FMLA, the Court now considers whether Dr. Coulibaly has adequately stated a claim.  In their

motion, Defendants contend that dismissal is warranted because, under any reading of the

complaint, Dr. Coulibaly is not an "eligible employee" under Title I of the FMLA.  *See* Mem.

Supp. Defs.' Mot. Dismiss 10.[12]

---

[11] Defendants contest the adequacy of service only as to those defendants sued in their
personal capacities.  *See* Mem. Supp. Defs.' Mot. Dismiss 11–12.  Accordingly, they have
waived any challenge to personal jurisdiction on the basis of defective service as to other
defendants or to any defendants sued in their official capacities.  *See Simpkins*, 108 F.3d at 368.

[12] Defendants also argue that Dr. Coulibaly cannot state a claim under *Title II* of the
FMLA because that title does not provide a right of action.  *See* Mem. Supp. Defs.' Mot. Dismiss
9–10 (asserting that "Plaintiff has no private right of action under the FMLA" and citing cases

Title I of the FMLA protects the right of an "eligible employee" to take medical leave for a "serious health condition."  *See* FMLA, Pub. L. No. 103–3, § 102(a), 107 Stat. 6, 9 (1993), *as codified at* 29 U.S.C. § 2612(a)(1).  "Eligible employee" is defined under Title I to mean

> an employee who has been employed—
> (i)      for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and
> (ii)     for at least 1,250 hours of service with such employer during the previous 12-month period.

29 U.S.C. § 2611(2)(A).  Title I further provides that "employee" has the "same meanin[g]" as that given to the term under 29 U.S.C. § 203(e), which defines "employee" for the purposes of the Fair Labor Standards Act ("FLSA").  *See* 29 U.S.C. § 2611(3).  Courts, in turn, have determined "employee" status under the FLSA by looking to "economic reality" rather than "technical concepts" and examining "the extent to which typical employer prerogatives govern the relationship between the putative employer and employee."  *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001) (citations omitted).  Title I's coverage within the Executive Branch includes certain part-time employees and temporary employees serving terms of one year or shorter.  *See* 29 C.F.R. § 825.109(b).  A federal employee covered by the FMLA cannot be covered by both Title I and Title II, given that Title I's "eligible employee" definition expressly excludes all employees falling under Title II.  *See* 29 U.S.C. § 2611(2)(B)(i) ("The term 'eligible employee' does not include . . . any Federal officer or employee covered under subchapter V of chapter 63 of title 5[.]").

---

addressing Title II).  The Court has already concluded that sovereign immunity would bar any action under Title II as to any defendants sued in their official capacity.  *See supra* Part IV.A.2. To the extent that Dr. Coulibaly asserts a Title II claim against any defendants in their individual capacity, the Court agrees with Defendants and holds that Dr. Coulibaly has failed to state a claim because Title II does not create an implied right of action.  *See Mann v. Haigh*, 120 F.3d 34, 37 (4th Cir. 1997); *accord Russell*, 191 F.3d at 1019.

Title II covers "[m]ost employees of the [federal] government . . . , if they are covered by the FMLA."  29 C.F.R. § 825.109(a); *accord Mann v. Haigh*, 120 F.3d 34, 36 (4th Cir. 1997). As with "eligible" employees under Title I, employees covered under Title II must have "at least 12 months of service."  5 U.S.C. § 6381(1)(B).  Title II employees must also satisfy requirements relating to the manner of their appointment and nature of their work.  Specifically, Title II defines an "employee" to mean:

> an officer and an individual who is—
>> (1) appointed in the civil service by one of the following acting in an official capacity—
>>> (A) the President;
>>> (B) a Member or Members of Congress, or the Congress;
>>> (C) a member of a uniformed service;
>>> (D) an individual who is an employee under this section;
>>> (E) the head of a Government controlled corporation; or
>>> (F) an adjutant general designated by the Secretary concerned under section 709(c) of title 32;
>> (2) engaged in the performance of a Federal function under authority of law or an Executive act; and
>> (3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position.

5 U.S.C. § 2105(a); *see also id.* §§ 6381(1)(A); 6301(2) (incorporating § 2105 definition of "employee").  Applying this "restrictiv[e]" definition, the D.C. Circuit has taught that "[a]ll three of the statute's subsections must be satisfied" and that the third criterion pertaining to supervision "in importance far exceeds the others."  *Lodge 1858, Am. Fed'n of Gov't Emps. v. Webb*, 580 F.2d 496, 504 (D.C. Cir. 1978) (concluding that Civil Service Commission did not err in finding that certain contractors were not employees under NASA's enabling act, which incorporates § 2105).  "As used in this context, supervision means control of the individual workman's physical conduct, not just oversight."  *Id.* (citations omitted).  Excluded from

"employee" status under Title II are individuals "employed on a temporary or intermittent basis," 5 U.S.C. § 6381(1)(A), "part-time employee[s] who d[o] not have an established regular tour of duty during the administrative workweek," *id.* § 6301(2)(B)(ii), and other enumerated groups such as individuals employed by the District of Columbia and the U.S. Postal Service, *see id.* §§ 6381(1)(A), 6301(2)(B)(i)–(iv), (vi–viii), (x–xiii); § 2105(b)–(e).  *See also* 5 C.F.R. § 630.1201 (summarizing Title II's requirements for "employee" status).

Here, Defendants have not demonstrated that Dr. Coulibaly's allegations necessarily render him not an "eligible employee" under Title I of the FMLA.  Defendants' argument proceeds from a factual premise that would appear to make their task rather easy—that "Plaintiff claims that he was a federal employee for under a year."  Mem. Supp. Defs.' Mot. Dismiss 10. Such an allegation would indeed doom Dr. Coulibaly's claim given that service "for at least 12 months" is necessary to render an employee "eligible" for Title I's protections.  29 U.S.C. § 2611(2)(A).  But the problem with Defendants' factual premise is that the complaint plausibly alleges that Dr. Coulibaly worked for thirteen years for the Department of State "without interruption" and that he therefore satisfies Title I's time-in-service and hours requirements—*i.e.*, having "worked continuously for [his] employer for the last 12 months before his termination" and for "at least 1,250 hours over the last 12 months."  Compl. ¶ 84.  To be sure, the complaint alleges that Dr. Coulibaly had served in the Excepted Service for less than one year at the time of his termination, before which period he was a contractor.  *See* Compl. ¶¶ 75, 83; Limaye letter of May 27, 2011, Compl. Ex. at 113.  But "employee" status under Title I turns on "economic reality" rather than job titles, and Defendants do not explain why, as a matter of law, Dr.

Coulibaly's previous contractor work performed directly for the agency cannot be considered in evaluating his status as an "employee." *Morrison*, 253 F.3d at 11.[13]

Defendants apparently ignore Dr. Coulibaly's allegations that his time in service exceeded 12 months for purposes of their Title I analysis because they rely on another incorrect premise—a legal, rather than factual, premise concerning the structure of the FMLA. Defendants seem to be under the impression that if Dr. Coulibaly was an employee for 13 years, he is covered by Title II only and has no right of action, but that if he was an employee for less than one year, he would fall under Title I and have insufficient time in service to be eligible to bring an action. Proceeding from this view of the relationship between Title I and Title II and believing that an allegation of service exceeding 12 months would sweep Dr. Coulibaly back under the coverage of Title II, which lacks a private right of action, Defendants assume *arguendo* that the complaint alleges employment of less than 12 months. *See* Mem. Supp. Defs.' Mot. Dismiss 10. Defendants are correct, of course, insofar as Title I and Title II of the FMLA govern mutually exclusive groups of federal employees; as explained above, a federal employee can be covered under either Title I or Title II but not both. *See* 29 U.S.C. § 2611(2)(B)(i). But the determination of *which* title governs an employee does not hinge solely on that employee's time in service because *both* titles expressly require service of "at least 12 months." 5 U.S.C. § 6381(1)(B) (defining "employee" under Title II); 29 U.S.C. § 2611(2)(A) (defining "eligible employee" under Title I).

Here, if Dr. Coulibaly had more than 12 months of service as his complaint alleges, then determining whether he falls under Title I or Title II would require an analysis of both titles'

---

[13] This issue is further complicated by Dr. Coulibaly's allegation that the State Department had wrongfully classified him and others as contractors rather than employees. *See* Compl. ¶¶ 75, 83.

detailed statutory and regulatory framework, as set forth above.  But Defendants' motion to dismiss fails to set forth such an analysis based on the complaint's allegations and the exhibits in the record.  For instance, assuming the truth of Dr. Coulibaly's allegation that his time in service exceeded 12 months, the Court cannot determine whether his allegations concerning his employment history and status compel a conclusion that he satisfies the appointment, job function, and supervision requirements for Title II coverage, 5 U.S.C. § 2105(a); *Lodge 1858*, 580 F.2d at 504, such that he cannot be a Title I employee, *see* 29 U.S.C. § 2611(2)(B)(i).  In the alternative, even assuming that for some reason Dr. Coulibaly is not covered under Title II and thus not *automatically* excluded from Title I coverage, *see id.*, the Court has been presented with no argument that Dr. Coulibaly's alleged service as a contractor would fail the "economic reality" test, *Morrison*, 253 F.3d at 11, such that he would have insufficient time-in-service to qualify as an "eligible employee" under Title I, *see* 29 U.S.C. § 2611(2)(A).  Nor have Defendants advanced any other argument as to why Dr. Coulibaly's complaint fails to plausibly allege that he is an "eligible employee" under Title I.[14]

In sum, Defendants' incomplete analysis of the FMLA's structure leads them to assume away the complaint's allegation that Dr. Coulibaly satisfied Title I's time-in-service requirement and then conclude (conveniently for Defendants) that the complaint has not plausibly alleged that Dr. Coulibaly is an "eligible employee" under Title I.  Because Defendants may not ignore Dr. Coulibaly's non-conclusory factual allegations, and because Defendants do not move to dismiss the Title I claim on any grounds other than time in service, the Court denies the motion to

---

[14] Although an employee cannot be covered under *both* Title I and Title II, *see* 29 U.S.C. § 2611(2)(B)(i), it is entirely possible (and consistent with the FMLA's text and structure) that an employee is not covered by *either* Title.  *See* 29 C.F.R. § 825.109 ("Most employees of the government of the United States, *if they are covered by the FMLA*, are covered under Title II of the FMLA . . . ." (emphasis added)).

dismiss as to this claim.  *See Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 24 F. Supp. 3d 32, 48

n.10 (D.D.C. 2014) ("All federal courts are in agreement that the burden is on the moving party

in a Rule 12(b)(6) motion to prove that no legally cognizable claim for relief exists[.]"

(alterations and citation omitted)).

### C.  Summary Judgment

Dr. Coulibaly seeks summary judgment on his claim under Title I of the FMLA, which

the Court has concluded survives Defendants' motion to dismiss.  *See generally* Pl.'s Mot.

Summ. J.  Because Dr. Coulibaly has not shown the absence of a genuine issue for trial, the

Court declines to enter judgment in his favor on his FMLA claim.

Title I of the FMLA provides that a covered "eligible employee" has the right to take

medical leave for a "serious health condition."  29 U.S.C. § 2612(a)(1).  Section 105(a)(1) of

Title I makes it unlawful "for any employer to interfere with, restrain, or deny the exercise or the

attempt to exercise, any right" provided under Title I, *id.* § 2615(a)(1), while section 105(a)(2)

makes it unlawful "for any employer to discharge or in any other manner discriminate against

any individual for opposing any practice made unlawful" by Title I, *id.* § 2615(a)(2); *see also*

*Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161 (D.C. Cir. 2015) (noting that the two

subsections evince "a good deal of overlap").  At summary judgment, an employee with

circumstantial evidence supporting an FMLA retaliation claim can establish a prima facie case

by showing that (1) he "engaged in a protected activity under this statute"; (2) he "was adversely

affected by an employment decision"; and (3) "the protected activity and the adverse

employment action were causally connected."  *Gordon*, 778 F.3d at 161 (quoting *Gleklen v.*

*Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1368 (D.C. Cir. 2000) (applying

*McDonnell Douglas* burden-shifting framework and articulating prima facie elements for FMLA

retaliation claim)).[15]  "Temporal proximity is often found sufficient to establish the requisite causal connection" for FMLA retaliation claims.  *Gleklen*, 199 F.3d at 1368.

Remarkably, in opposing summary judgment, Defendants make no attempt to demonstrate a genuine dispute of material fact, instead resting entirely on the arguments advanced in their motion to dismiss.  *See generally* Defs.' Opp'n, ECF No. 13.  Nonetheless, Dr. Coulibaly, as the party seeking summary judgment, bears the "initial responsibility" of demonstrating "the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323; *see also id.* at 330–31 (Brennan, J., dissenting on other grounds) (explaining that "ultimate burden of persuasion" to establish the lack of a genuine dispute of material fact "always remains on the moving party").  For the reasons that follow, the Court concludes that Dr. Coulibaly has not carried this initial burden.

In short, it is unclear on this record whether Dr. Coulibaly is in fact an "eligible" federal employee under Title I of the FMLA.  29 U.S.C. § 2611(2).  Although Defendants have not explained why the complaint's allegations *foreclose* a finding that Dr. Coulibaly is covered under Title I (thus requiring the denial of Defendants' motion to dismiss), the limited record evidence does not *compel* such a finding, either, given the fact-intensive analysis required.  *See* 5 U.S.C. §§ 6381(1)(A), 6301(2), 2105; 29 C.F.R. § 825.109(b); *Morrison*, 253 F.3d at 11 (articulating "economic reality" test); *see also Celotex*, 477 U.S. at 331 (Brennan, J., dissenting on other grounds) ("If the moving party will bear the burden of persuasion at trial, that party must support

---

[15] Because Dr. Coulibaly's complaint styles his claim as one for "retaliation" under the FMLA, not "interference," the Court here opts for the former characterization.  *See* Compl. ¶¶ 1, 91, 93.  In any event, *Gordon* suggests that the legal framework would be the same regardless of whether Dr. Coulibaly's FMLA claim were styled or construed as one for retaliation or interference.  *See Gordon*, 778 F.3d at 161–62.

its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial.").[16]

Because the Court concludes that the record, as it currently stands, cannot conclusively establish Dr. Coulibaly's status as an eligible Title I employee, the Court need not decide whether Dr. Coulibaly has otherwise established the elements of an FMLA interference or retaliation claim.  The Court notes, however, that Dr. Coulibaly has proffered considerable evidence that might very well establish a prima facie case under Title I, aside from the unresolved issue of his employee status.  Dr. Coulibaly's evidence shows that his termination came only a few days after he returned from medical leave, *see* Termination letter of Apr. 2, 2012, Pl.'s Ex. 3, ECF No. 11-1; Hamlin report of Mar. 10, 2012, Pl.'s Ex. 1, ECF No. 11-1, and that at least one of the proffered reasons for his termination was his "failure to follow established procedures for requesting leave," notwithstanding the fact that his leave was already approved, *see* Leave approval email of Mar. 28, 2012, Pl.'s Ex. C, ECF No. 15; *see also* 29 U.S.C. § 2615(a)(1) (making it unlawful "to interfere with, restrain, or deny the exercise of or *the attempt to exercise*, any right" provided under Title I (emphasis added)).  Moreover, the Court reminds the parties that "if the plaintiff establishes the elements of a prima facie case, and the defendant remains silent or otherwise fails to meet its burden of production, judgment must be rendered for the plaintiff."  *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1151 (D.C. Cir. 2004) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).

---

[16] In support of his motion for summary judgment, Dr. Coulibaly has attached an exhibit that appears highly relevant to the "economic reality" test—his contract under the Blanket Purchase Agreement, which governed his employment prior to his appointment to the Excepted Service.  *See* BPA Contract, Pl.'s Ex. 5, ECF No. 11-1; *Morrison*, 253 F.3d at 11.  The contract contains a detailed description of "requirements" for Dr. Coulibaly's contract position.  Even assuming that the contract terms alone could satisfy the "economic reality" test, the Court still concludes that the current record does not compel a conclusion that Dr. Coulibaly satisfied the additional statutory criteria for "eligible employee" status under Title I.

Because Dr. Coulibaly has not demonstrated the absence of a genuine dispute of material fact at this stage in the litigation, the Court denies his motion for summary judgment.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 9) is **GRANTED IN PART** and **DENIED IN PART**; Dr. Coulibaly's motion for summary judgment (ECF No. 11) is **DENIED**; and Dr. Coulibaly's motion to expedite (ECF No. 16) is **DENIED AS MOOT**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 11, 2015                                      RUDOLPH CONTRERAS
                                                                                  United States District Judge