*Let this be filed.*

*[signature] 4/4/2022*

## PREAMBLE

Now that you have heard the evidence and the arguments of counsel, it is my duty to instruct you on the law applicable to this case. It is your duty as jurors to follow the law as I shall state it to you, and to apply that law to the facts as you find them from the evidence in the case. You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole. Nor are you to be concerned with the wisdom of any rule of law stated by me.

Counsel have quite properly referred to some of the governing rules of law in their arguments. If, however, any difference appears to you between the law as stated by counsel and as stated by me in these instructions, you are, of course, to be governed by my instructions. Nothing I say is to be taken as an indication that I have any opinions about the facts of the case. It is not my function to determine the facts; rather, it is your responsibility.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be governed by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

My instructions will be roughly divided into four parts. First, I will talk about some general principles of law. Next, I will instruct you on evaluating the evidence. Then, I will discuss with you instructions that apply to the elements of the particular claim in this case. Finally, I will have some closing instructions about how you are to conduct your deliberations.

For those of you taking notes, I want to let you know that, if you request them, a written copy of these instructions will be available for you as you start your deliberations.

## Preliminary Instruction (Adapted D.C. Std. Civ. Jury Instr. No. 1-2)

Your responsibility as jurors is to determine the facts in the case and to apply those facts consistent with the legal principles that I will explain to you. You—and only you—are the judges of the facts. You alone determine the weight of the evidence, including the believability of each witness.

My responsibility has been to conduct this trial in a fair and efficient manner. It is your sworn duty as jurors to accept and apply the law as I explain it to you.

However, you should not take anything I do or say as any indication of my opinion about how you should decide the facts or what your verdict should be. If, during the course of this trial, or the giving of these instructions, I have made or make any comment on any evidence, you are free to disregard the comment. Likewise, during the trial, I occasionally asked questions of witnesses to obtain information or to bring out the facts, but you should not take my questions to witnesses as any indication of my opinion about how you should determine the facts. If I have said or done anything at any time during this case, including giving these instructions, which seemed to indicate my opinion on any of these matters, then I instruct you to disregard that indication. Nothing I have said or done should influence or suggest to you that I favor any party in this case. I have not meant to express, or to suggest, any opinion about which witnesses should be believed, or which facts are established.

**Evidence in the Case (Adapted D.C. Std. Civ. Jury Instr. No. 2-1)**

You may consider only the evidence admitted in the case. The evidence consists of the sworn testimony of witnesses, exhibits admitted into evidence, and facts stipulated to by the parties. You may consider any facts to which the parties have stipulated or agreed to be undisputed.

Statements and arguments of the lawyers, including objections, opening statements, and closing arguments are not evidence. They are intended only to help you to understand the evidence. Similarly, the questions of the lawyers are not evidence. A lawyer's question that contains an assertion of a fact does not provide evidence of that fact. Only a witness's answer is evidence.

If I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded.

If anyone describes the evidence you have heard differently from the way you remember it, it is your memory that should control during your deliberations.

You must rely on your own recollection of the testimony and on any notes you may have taken during the trial. If any reference by me or the attorneys to the evidence is different from your own memory of the evidence, it is your memory that should control during your deliberations. Although the court reporter has been transcribing the trial, a transcript will not be available for you to review during your deliberations.

## Direct and Circumstantial Evidence (D.C. Std. Civ. Jury Instr. No. 2-2)

There are two types of evidence from which you may determine what the facts are in this case—direct evidence and circumstantial evidence. When a witness, such as an eyewitness, asserts actual knowledge of a fact, that witness's testimony is direct evidence. On the other hand, evidence of facts from which reasonable conclusions may be drawn is circumstantial evidence.

Let me give you an example. Assume a person looked out a window and saw that snow was falling. If he later testified in court about what he had seen, his testimony would be direct evidence that snow was falling at the time he saw it happen. Assume, however, that he looked out a window and saw no snow on the ground, and then went to sleep and saw snow on the ground after he woke up. His testimony about what he had seen would be circumstantial evidence that it had snowed while he was asleep.

The law says that both direct and circumstantial evidence are acceptable as a means of proving a fact. The law does not favor one form of evidence over another. It is for you to decide how much weight to give to any particular evidence, whether it is direct or circumstantial. You are permitted to give equal weight to both. In reaching a verdict in this case, you should consider all of the evidence presented, both direct and circumstantial.

## Inferences

In arriving at your verdict, you are to consider only the evidence in the case. When you are considering the evidence; however, you are not limited solely to the statements of the witnesses and exhibits. You are permitted to draw from the evidence any inferences or conclusions that reason and common sense lead you to make. An inference is a deduction or conclusion which reason and common sense lead you to make from facts which have been proved.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from the facts. The plaintiff may ask you to draw one set of inferences, while the defendant may ask you to draw another. It is for you and you alone to decide what inferences to draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you are permitted to draw - but are not required to draw - from the facts which have been established by the evidence. In drawing inferences, you should exercise your reasonable judgment and your common sense and consider the evidence in light of your own observations in life.

## Significance of Party Designations

During the course of the trial, you have heard references to the terms plaintiff and defendant. To put it simply, the plaintiff is the person who starts a lawsuit and the defendant is the person who is sued by the plaintiff.

During your deliberations you must not attach any significance in weighing the evidence to the terms plaintiff and defendant. In other words, the fact that the plaintiff has filed a lawsuit against the defendant does not mean that the plaintiff is entitled to your verdict or that his evidence is entitled to greater weight than the defendant's evidence. A plaintiff must prove every element of his claims against a defendant by a preponderance of the evidence before he is entitled to prevail.

## Equality of Litigants

Our system of justice requires that you decide the facts of this case in an impartial manner. You must not be influenced by bias, sympathy, prejudice or public opinion. It is a violation of your sworn duty to base your verdict upon anything other than the evidence in the case.

In reaching a just verdict, you must consider and decide this case as an action between persons of equal standing in the community and of equal worth. A government agency, whether large or small, and an individual have the same rights to a fair trial. All parties, including government agencies and individuals, stand equal before the law and are to be treated as equals in this court. In other words, whether a party is an individual or the government must not affect your decision.

## Burden of Proof (Adapted D.C. Std. Civ. Jury Instr. No. 2-3)

The party who makes a claim has the burden of proving it. This burden of proof means that the Dr. Coulibaly, the plaintiff, must prove every element of his claim by a preponderance of the evidence.

To establish an element by a preponderance of the evidence, the party must show evidence that produces in your mind the belief that the thing in question is more likely true than not true. The party need not prove any element beyond a reasonable doubt, the standard of proof in criminal cases, or to an absolute or mathematical certainty.

If you believe that the evidence is evenly balanced on an issue the plaintiff had to prove, then your finding on that issue must be for the defendant. Similarly, if you believe that the evidence is evenly balanced on an issue the defendant had to prove, then your finding on that issue must be for the plaintiff.

In arriving at your verdict, you should consider only the evidence in this case. That said, in determining whether a party has carried its burden of proof, you are permitted to draw, from the facts that you find have been proven, such reasonable inferences and conclusions as you feel are justified in the light of your experience and common sense. You should not rely on speculation or guesswork.

You should consider all the evidence bearing on each claim, regardless of who produced it. A party is entitled to benefit from all evidence that favors that party, whether that party or the adversary produced it. You should not give more or less weight to evidence just because it happened to be produced by one side or the other.

## All Available Evidence Need Not Be Produced

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in a case, or who may appear to have some knowledge of the matters at issue in a trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

**Inadmissible and Stricken Evidence (Adapted D.C. Std. Civ. Jury Instr. No. 2-5)**

The lawyers in this case sometimes objected when the other side asked a question, made an argument, or offered evidence that the objecting lawyer believed was not proper. Objections are not evidence. You must not hold such objections against the lawyer who made them or the party he or she represents. It is the lawyers' responsibility to object to evidence that he or she believes is not admissible.

If, during the course of the trial, I sustained an objection to a lawyer's question, then you should ignore the question and you must not guess about what the answer would have been. If, after a witness answered a question, I ruled that the answer should be stricken, then you should ignore both the question and the answer, and they should play no part in your deliberations.

Similarly, if I sustained an objection to an exhibit, then you should ignore the exhibit and it should play no part in your deliberations.

## Stipulations (D.C. Std. Civ. Jury Instr. No. 2-6)

Stipulation of Fact: The parties may stipulate—that is, agree—to certain facts. You should consider any stipulation of fact to be undisputed evidence.

## Credibility of Witnesses (D.C. Std. Civ. Jury Instr. No. 2-9)

In deciding what the facts are, you must weigh the testimony of all the witnesses who have appeared before you. You are the sole judges of the credibility of the witnesses. In other words, you alone determine whether to believe any witness and to what extent any witness should be believed. Judging a witness's credibility means evaluating whether the witness has testified truthfully and also whether the witness accurately observed, recalled, and described the matters about which the witness testified.

You may consider anything that in your judgment affects the credibility of any witness. For example, you may consider the witness's demeanor, capacity to observe and recollect facts, and any other facts and circumstances bearing on credibility. You may consider whether the witness has any motive for not telling the truth, any interest in the outcome of this case, or any friendship or animosity toward other persons involved in this case. You may consider the plausibility or implausibility of the testimony of a witness. You may also consider whether the witness's testimony has been contradicted or supported by other evidence.

## Number of Witnesses and Exhibits (D.C. Std. Civ. Jury Instr. No. 2-10)

The relative weight of the evidence on a particular issue is not determined by the number of witnesses testifying for either side or the number of exhibits on either side—it depends on the quality, and not the quantity, of the evidence. It is up to you to decide whether to credit the testimony of a smaller number of witnesses or a small number of exhibits on one side or the testimony of a greater number of witnesses or a greater number of exhibits on the other side.

**Depositions as Evidence (D.C. Std. Civ. Jury Instr. No. 2-12)**

A deposition is the testimony of a person taken before trial. The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions. A court reporter is present and records the questions and answers. During the trial, you saw video of deposition testimony taken in this case. You should give deposition testimony the same fair and impartial consideration you give any other testimony. You should not give more weight or less weight to deposition testimony, whether or not that witness testified in court.

**Impeachment by Prior Inconsistent Statement (D.C. Std. Civ. Jury Instr. No. 2-13)**

You have heard evidence that a witness previously made statements and that these statements may be inconsistent with the witness' testimony here at trial. It is for you to decide whether any of these prior statements was made and, if one or more was made, whether it is inconsistent with the witness' testimony during this trial. If you find that any prior statement is inconsistent with the witness' testimony here in court, you may consider this inconsistency in judging the credibility of the witness.

In one respect, the law treats prior statements that are inconsistent with court testimony differently depending on whether or not the prior statement was made under oath. If the prior inconsistent statement was made under oath, you may consider the statement as evidence that what the witness originally said was true. If the prior inconsistent statement was not under oath, you may not consider it as evidence that what the witness said in the earlier unsworn statement was true. Whether or not the prior inconsistent statement was under oath, you may consider the inconsistency in judging the witness' credibility.

## Adopting Prior Inconsistent Statements (D.C. Std. Civ. Jury Instr. No. 2-14)

If a witness testifies that a prior inconsistent statement is the truth, then you may consider the prior inconsistent statement both to evaluate the witness's credibility and as evidence of the truth of any fact contained in that statement.

## Charts and Summaries as Demonstrative or Instructional Aids (D.C. Std. Civ. Jury Instr. No. 2-15)

The lawyers have shown to you charts and summaries to help explain the facts. For example, Plaintiff presented a demonstrative chronology of events. The charts or summaries themselves, however, are not evidence or proof of any facts. If any chart or summary does not correctly reflect facts or figures shown by the evidence in the case, then you should disregard that chart or summary.

In other words, the charts or summaries are used only as a convenience; you should disregard any chart or summary that does not state the truth based on the evidence.

**Nature of Plaintiff's Claims**

In this case, plaintiff Dr. Tiemoko Coulibaly asserts claims against
Defendant the U.S. Secretary of State, or the Department of State, for
violations of Title VII of the Civil Rights Act of 1964 and
the federal Family Medical Leave Act ("FMLA") arising from his
employment as a federal civil servant and French foreign language
instructor at the Department of State's Foreign Service Institute ("FSI").

Dr. Coulibaly alleges that he experienced willful and reckless unlawful
discriminatory conduct and retaliatory actions by the State Department's
agents, and that as a direct result of this conduct and these actions, he
was terminated on April 6, 2012. Specifically, Dr. Coulibaly alleges that
his supervisor and other agents of the State Department discriminated
against him on account of his race, color, and/or national origin in
violation of Title VII, and this discrimination resulted in a hostile work
environment, disparate treatment, adverse employment actions, and an
untimely termination.

Dr. Coulibaly further claims that this discriminatory treatment caused
mental and emotional pain, lost wages, family stress, and medical
problems, and the latter led him to take leave from his employment at
FSI pursuant to the FMLA. During the leave period, according to Dr.
Coulibaly, the State Department's agents continued to harass him and
thus interfered with his FMLA right to take medical leave; further, Dr.
Coulibaly contends that the State Department's agents retaliated against
him for exercising his FMLA rights.  Finally, Dr. Coulibaly alleges that
the State Department's agents denied him his 12-weeks of
leave guaranteed by the FMLA, and terminated him during what would
have been his leave period.

The State Department alleges that Dr. Coulibaly had significantly
disrupted the efficient operation of FSI's French Language section due
to a persistent pattern of unprofessional conduct over a period of
months.  In addition, the State Department claims that Dr. Coulibaly

failed to comply with the procedures for requesting leave and was absent without leave on March 29, 2012 and March 30, 2012.  For these reasons, the State Department says that its decisions to deny the requested leave and to terminate Dr. Coulibaly's employment were reasonable and not motivated by discrimination based on Dr. Coulibaly's race, color, or national origin or in retaliation for his protected activity.

I will now instruct you more fully on the issues you must address in this case.

**Agency/Multiple Actors**

The defendant is a government agency, which can only act through individuals as its agents or employees. A government agency is responsible for the acts of its supervisors and managers.

## Elements of Proof for Title VII Disparate Treatment Claims

Title VII of the Civil Rights Act of 1964 bars discrimination in the workplace because of an individual's race, color, religion, sex or national origin with respect to compensation, terms, conditions or privileges of employment.

Dr. Coulibaly brings three types of claims under Title VII: a claim of disparate treatment, a claim of retaliation, and a claim of a hostile work environment.  Dr. Coulibaly's first Title VII claim is a disparate treatment claim.  He claims that the Department of State discriminated against him because of his race, color, and national origin when during various times between 2011-2012 he was denied requested time off and was ultimately terminated.  In order to prove discrimination based on his race, or his color, or his national origin or more than one of these, Dr. Coulibaly must prove by a preponderance of the evidence that (1) he is a member of a protected class, here, that he is African American and that he is born in the Ivory Coast; (2) that he suffered an adverse action; and (3) that but for his race or color or but for his national origin, he would not have suffered the adverse action. First, there is no dispute that Dr. Coulibaly is African American and that he was born in the Ivory Coast. Thus, Dr. Coulibaly has proved the first element of these claims.

Second, Dr. Coulibaly must prove by a preponderance of the evidence that he suffered an adverse employment action. Discrimination and retaliation claims have different standards for what constitutes an adverse action. For discrimination claims, an "adverse action" is a term of art in Title VII law that means a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. Here, Dr. Coulibaly was fired.

Third, Dr. Coulibaly must prove by a preponderance of the evidence that but for discrimination because of his race or color or but for discrimination because of his national origin, or but for his race or color

or national origin, the Department of State would not have taken an adverse employment action against him. Dr. Coulibaly does not need to prove that discrimination based on his race or his nationality or both was the sole factor behind an adverse action. However, he must prove that discrimination based on his race or his nationality or both was not just one factor among many, but was a determinative factor, or the real reason behind an adverse action. In other words, he must prove that if he were not African American or if he were not of Ivory Coast descent (or both), the Department of State would not have taken the adverse employment action, even if the Department of State had other reasons as well.

Dr. Coulibaly also must prove by a preponderance of the evidence that an act of alleged discrimination was intentional. An act is intentional if it is done voluntarily and not by mistake. Discriminatory intent may be proved either by direct evidence such as statements made by a person whose intent is at issue, or by circumstantial evidence from which you can infer a person's intent. In making a determination as to whether there was intentional discrimination in this case, you may consider any statements made or acts done or omitted by a person whose intent is in issue, and all other facts and circumstances that indicate a person's state of mind. You may also infer that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

Even if the ultimate decision-maker did not act with a discriminatory motive, you may still find that Dr. Coulibaly's termination was causally connected with discrimination based on Dr. Coulibaly's race or color or national origin if someone who held a discriminatory motive influenced the decision-maker against Dr. Coulibaly, and because of that influence, the decision-maker terminated Dr. Coulibaly.  The person who influenced the decision-maker must have been motivated by discriminatory intent, but the decision-maker does not need to have had discriminatory intent and need not have known about the discriminatory motive on the part of the person who held the influence.

In this case, the Department of State claims that it terminated Dr. Coulibaly based on legitimate, non-discriminatory reasons. Dr. Coulibaly responds that the Department of State's stated reasons are untrue, or are pretext for what he claims is the true reason for its actions—discrimination. If you find that Defendant's stated reasons for its actions are pretext—that is, untrue—you may, but are not required to, conclude that the State Department's real motivation was to discriminate against Dr. Coulibaly. In determining whether the reasons put forward by the State Department's agents for the termination were the real reasons for the termination, you may consider whether the State Department's agents treated employees outside the protected group better than Dr. Coulibaly, whether the State Department's agents gave inconsistent explanations for Dr. Coulibaly's termination, whether the State Department's agents deviated from established procedures or criteria, whether the State Department's agents engaged in a pattern of poor treatment of other employees in the same protected class as Dr. Coulibaly, or whether there is other evidence that you conclude shows an improper motive. To prove discrimination, Dr. Coulibaly bears the burden of proving by a preponderance of the evidence that Department of State's asserted non-discriminatory reason was not the actual reason and that it discriminated against him because of his race. The Department of State does not have to prove that it did not discriminate against Dr. Coulibaly.

If you determine that Dr. Coulibaly was discriminated against, you must be unanimous on the basis of that discrimination. In other words, if you decide that the Department of State discriminated against Dr. Coulibaly, some jurors cannot believe that the discrimination was based only on national origin while other jurors believe that the discrimination was based only on race.

However, the Civil Rights Act is not intended as a vehicle for judicial review of employment decisions that are not the result of discrimination. An employer has the right to make business decisions, including

termination decisions such as the one at issue in this case, for good, bad, or no reason at all, as long as the employer does not unlawfully discriminate. The law does not expose an employer to liability because the employer may have misjudged an employee's job performance or made a personnel decision that was unwise or ill-advised. Thus, even if you personally disagree with the actions that were taken or believe they were harsh or unreasonable, if you find that the Department of State did not discriminate against Dr. Coulibaly because of his race, color, or national origin, or more than one of these, you must enter a verdict for the Department of State. Dr. Coulibaly bears the burden of proving discrimination in violation Title VII. The Department of State is not required to prove that it did not intentionally discriminate.  In rendering a verdict for either Dr. Coulibaly or the Department of State, you must consider only the action listed above, namely Dr. Coulibaly's termination, as a possible act of discrimination, not any other actions. You may not return a verdict for Dr. Coulibaly on the basis of any other action.

## Elements of Proof for Title VII Retaliation Claim

Title VII of the Civil Rights Act of 1964 also bars retaliation because an employee has opposed a discriminatory practice or participated in any way in a proceeding until Title VII, such as by filing a claim of discrimination, testifying, or otherwise.  Retaliation is not limited to discriminatory actions that affect the terms and conditions of employment but includes, more broadly, those acts that might well dissuade a reasonable worker from making or supporting a charge of discrimination.

In addition to claims of discrimination because of his race or his color or his national origin or more than one of these, Dr. Coulibaly has also advanced claims of retaliation because of prior Title VII activities. While the elements of proof for each kind of claim are similar, there are important differences as well, which I will explain.

To prevail on a retaliation claim, Dr. Coulibaly must prove all of the following by a preponderance of the evidence.

First, that he engaged in conduct protected by Title VII of the Civil Rights Act of 1964, that is he opposed a discriminatory practice made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing regarding unlawful discrimination or harassment under Title VII.  In this case, Dr. Coulibaly alleges that he made an Equal Opportunity ("EEO") complaint.  Dr. Coulibaly need not prove the merits of his EEO complaint, but only that he was acting under a reasonable, good faith belief that his right to be free from discrimination on the basis of race or color or national origin was violated.

Second, Dr. Coulibaly must prove that he was subjected to a materially adverse action at the time, or after, the protected conduct took place. There is no dispute that Dr. Coulibaly was terminated and that termination is an adverse employment action, so this element may be

satisfied that way. Additionally, any action serious enough that it may have discouraged a reasonable person from pursuing protected activity can constitute adverse action, even if it was not severe or pervasive enough to alter the conditions of Dr. Coulibaly's employment and create a hostile work environment.

Third, Dr. Coulibaly must prove by a preponderance of the evidence that there was a causal connection between his protected activities and any materially adverse action taken by the Department of State. This connection may be shown in many ways. Evidence that may bear on causation includes, but is not limited to: temporal proximity of an adverse action close on the heels of protected activity; evidence that an employer is lying about the underlying facts of its decisions; changes or inconsistencies in an employer's reasons for a decision; an employer's failure to follow established procedures or criteria; an employer's relatively worse treatment of employees who have asserted their Title VII rights as compared with those who have not; antagonism shown toward Dr. Coulibaly or a change in demeanor toward Dr. Coulibaly; and evidence that an employer has retaliated against other employees for asserting their Title VII rights. It is up to you to draw whatever reasonable inferences and conclusions you feel are justified in the light of your experience and common sense based on the evidence presented.

Ultimately, you must decide whether Dr. Coulibaly's protected activity had a determinative effect on his termination or on any other actions taken by Department of State that you may find were serious enough to discourage a reasonable person from pursuing protected activity. "Determinative effect" means that if not for the protected activity, Dr. Coulibaly would not have been subjected to the adverse action. If he was subject to adverse action for any other reason, i.e., for legitimate employment reasons or because he complained about some other conduct that may, or may not be protected by another law, it is not protected activity for the purposes of this matter.

Even if the ultimate decision-maker did not act with a retaliatory motive,

you may still find that a materially adverse employment action was causally connected with Dr. Coulibaly's protected activity if someone who knew about the protected activity influenced the decision-maker against Dr. Coulibaly, and because of that influence, the decision-maker took a materially adverse employment action against Dr. Coulibaly. The person who influenced the decision-maker must have been motivated by an intent to retaliate against Dr. Coulibaly, but the decision-maker does not need to have had a retaliatory motive and need not have known about the retaliatory motive on the part of the person who held the influence.

In this case, the Department of State claims that it undertook the actions challenged by Dr. Coulibaly based on legitimate, non-retaliatory reasons. Dr. Coulibaly responds that the Department of State's stated reasons are untrue, or are pretext for what he claims is the true reason for its actions—retaliation. If you find that Defendant's stated reasons for its actions are pretext—that is, untrue—you may, but are not required to, conclude that the State Department's real motivation was to retaliate against Dr. Coulibaly for engaging in protected activity. In determining whether the reasons put forward by the State Department's agents for the challenged actions were the real reasons for the challenged actions, you may consider whether the State Department's agents treated employees who did not engage in protected activity better than Dr. Coulibaly, whether the State Department's agents gave inconsistent explanations for the challenged actions, whether the State Department's agents deviated from established procedures or criteria, whether the State Department's agents engaged in a pattern of poor treatment of other employees who engaged in protected activity, or whether there is other evidence that you conclude shows an improper motive. To prove retaliation, Dr. Coulibaly bears the burden of proving by a preponderance of the evidence that the Department of State's asserted non-retaliatory reason was not the actual reason and that it retaliated against him based on protected activity. The Department of State does not have to prove that it did not retaliate against Dr. Coulibaly.

**Elements of Proof for Title VII Hostile Work Environment Claim**

Dr. Coulibaly also brings a third type of Title VII claim, in which he alleges that he was subjected to a hostile work environment by the Department of State and that this harassment was motivated by his race, color, or national origin.

To prevail on a hostile work environment claim, Dr. Coulibaly must first show that he was subjected to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. To determine whether the alleged harassment rises to this level, you must look to the totality of the circumstances, considering the frequency of the harassing conduct, its severity, whether it is physically threatening or humiliating, or just an offensive statement,  and whether it unreasonably interfered with Dr. Coulibaly's work performance. For example, one stray remark is not sufficient to establish a hostile work environment.

Except in extreme circumstances, one incident is rarely so severe to constitute a hostile work environment. Even a few isolated incidents of offensive conduct do not usually amount to actionable harassment.  The standard has an objective and subjective component. Not only must the plaintiff subjectively perceive the environment to be abusive, a reasonable person would also have to objectively conclude that the alleged conduct was so severe or pervasive to create an objectively hostile or abusive work environment.

Moreover, Dr. Coulibaly must prove that the alleged harassment occurred because of his race, color, or national origin, or more than one of these. An unpleasant work environment does not violate Title VII unless the harassment is discriminatory.  In determining whether the harassment occurred because of Dr. Coulibaly's race, color, or national origin, you may consider whether the State Department's agents treated employees outside the protected group better than Dr. Coulibaly, whether the State Department's agents made stereotyping remarks about his race, color, or

national origin, or whether there is other evidence that indicates a causal connection between Dr. Coulibaly's protected status and the harassment.

## Title VII Damages – Compensatory Damages

I am now going to instruct you about how to calculate damages with respect to each of Dr. Coulibaly's Title VII claims (for disparate treatment, for retaliation, and for a hostile work environment). When you hear the term damages in these instructions, that term refers to the amount of money you may decide to award the plaintiff as I have described. You should not consider the fact that I am giving you this instruction to suggest that you should decide for or against any party on any issue or that I think you should award damages at all.  Those decisions are entirely yours to make.  I am giving you these instructions solely for your guidance, in the event that you find in favor of Dr. Coulibaly on any of his Title VII claims against the State Department and you decide to award him damages.

If you find for Dr. Coulibaly on any of his Title VII claims, then you are to award him a sum of money that you determine will fairly and reasonably compensate him for any injuries that he proves were caused by any disparate treatment or retaliatory conduct you find was committed by the State Department or by any discriminatory hostile work environment.  The damages you award must be fair and reasonable compensation, no more, and no less.

In awarding compensatory damages, you are not to award damages for any wages or benefits that, absent any disparate treatment, retaliatory conduct, or discriminatory hostile work environment, Plaintiff would have earned either in the past or in the future. In other words, you should not consider any back- or future-pay that the Plaintiff lost. Those issues, should you find the Defendant liable, will be calculated and determined by the Court—that is by me—after your verdict. Similarly, you may not take into consideration the amount or effect of Dr. Coulibaly's attorney's fees, if any, and any interest or costs. The Court would decide those issues as well.

You may also not award any punitive damages.  That is, you may not

base any monetary award on a desire to punish the Defendant, to prevent unlawful conduct from being repeated in the future, or to warn other employers not to engage in unlawful conduct. Rather, any monetary award that you make must be calculated to provide fair compensation to the Plaintiff for his actual, non-economic injuries caused by unlawful disparate treatment, an unlawful discriminatory hostile work environment, and/or unlawful retaliation.

You may award damages for emotional pain and suffering, mental anguish, embarrassment, humiliation, inconvenience, loss of enjoyment of life, harm to professional reputation or career, and other non-monetary losses that you find Dr. Coulibaly has proved by a preponderance of the evidence that he experienced as a consequence of the alleged disparate treatment, retaliatory conduct, or discriminatory hostile work environment. Plaintiff is entitled to compensation for harm that Defendant's allegedly wrongful conduct caused. Conduct causes harm if it plays a substantial part in bringing about the harm. The harm must be either a direct result or a reasonably probable consequence of the conduct. Defendant is liable to pay damages only for the harm that Defendant's conduct caused. If you find that the Defendant's conduct caused only part of Dr. Coulibaly's damages, then the Defendant is liable only for that part.

You may not award damages to the Plaintiff for any inconvenience or stress induced by the prosecution and litigation of his claim. A defendant has the right to defend itself, and therefore a plaintiff may not recover for any inconvenience or stress caused by bringing, asserting, arguing, defending, or otherwise litigating his or her claim.

No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial. In determining the amount of any damages that you decide to award, you should be guided by

dispassionate common sense.  You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence.  You may not award damages based on sympathy, prejudice, speculation, or guesswork.  Dr. Coulibaly must prove his damages with reasonable certainty.  On the other hand, the law does not require that Plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.  The damages you award must be fair compensation, no more and no less.

**FMLA Interference Claim – General Elements**

Dr. Coulibaly has asserted a claim under Title I of a federal statute known as the Family and Medical Leave Act or FMLA. Title I of the FMLA entitles eligible employees to take up to 12 work weeks of unpaid leave because of, among other things, a serious health condition that makes the employee unable to perform the functions of his or her position.  To prove his FMLA interference claim, Dr. Coulibaly must prove five elements by a preponderance of the evidence:

First, that he was a covered employee. You will be given a separate instruction on this element.

Second, Dr. Coulibaly must prove that his employer was covered by the FMLA. In this case, there is no dispute that the Department of State is an employer covered by the FMLA, so that element is satisfied.

Third, Dr. Coulibaly must prove that he was entitled to take leave. You will be given a separate instruction on this element.

Fourth, Dr. Coulibaly must prove that he provided notice of his intention to take leave. When an employee seeks leave for an FMLA-qualifying reason, he is not required to expressly mention the FMLA. Instead, he must provide sufficient information for the employer to reasonably determine whether the FMLA may apply, including information about the condition that renders the employee unable to work and the anticipated duration of his absence, if it is known.  You will be given a separate instruction on this element.

Fifth, Dr. Coulibaly must prove that the defendant interfered with his right to take leave.

The Department of State is a government agency, which can only act through individuals as its agents or employees. A government agency is responsible for the acts of its supervisors and managers.

Interference may take a number of forms, including inadequate notice. Applicable notice requirements are as follows: First, if Dr. Coulibaly made a proper request for FMLA leave, or if the State Department's agents acquired knowledge that his leave might be for an FMLA-qualifying reason, the State Department's agents were required to provide an "eligibility notice" notifying Dr. Coulibaly, orally or in writing, of his eligibility to take FMLA leave within five business days, absent extenuating circumstances. An eligibility notice must state whether the employee is eligible for FMLA leave, and if he is not, the notice must state at least one reason why the employee is not eligible. Employee eligibility is determined, and notice must be provided, at the commencement of the first instance of leave for each FMLA-qualifying reason in the applicable 12-month period. All FMLA absences for the same qualifying reason are considered a single leave and employee eligibility as to that reason for leave does not change during the applicable 12-month period.

Second, if Dr. Coulibaly gave adequate notice of his intention to take leave, then the Department of State was also required to provide written notice detailing the specific expectations and obligations of Dr. Coulibaly and explaining any consequences of a failure to meet these obligations. If Dr. Coulibaly's leave had already begun, the Department of State should have mailed the notice to his address of record. Any such "rights and responsibilities" notice would be required to include the following information:

- Any requirements for Dr. Coulibaly to furnish certification of a serious health condition, serious injury or illness, and the consequences of failing to do so;

- Dr. Coulibaly's right to substitute paid leave, whether the Department of State would require the substitution of paid leave, the conditions related to any substitution, and Dr. Coulibaly's entitlement to take unpaid FMLA leave if Dr. Coulibaly did not meet the conditions for paid leave;

- Any requirement for Dr. Coulibaly to make any premium payments to maintain health benefits and the arrangements for making such payments, and the possible consequences of failure to make such payments on a timely basis;

- Dr. Coulibaly's rights to maintenance of benefits during the FMLA leave and restoration to the same or an equivalent job upon return from FMLA leave.

Third, if and when the Department of State had enough information to determine whether Dr. Coulibaly was taking leave for an FMLA-qualifying reason, the Department of State was also required to provide a designation notice within five business days, absent extenuating circumstances, notifying Dr. Coulibaly, whether his leave would be designated and counted as FMLA leave. The State Department was also required to notify Dr. Coulibaly of the amount of leave counted against his FMLA leave entitlement.

If you find that the State Department's agents failed to follow any of these notice requirements with regard to Dr. Coulibaly after he provided notice of his intention to take leave, you may find that the State Department interfered with Dr. Coulibaly's FMLA rights.

Another form of interference occurs if the employer refuses to let the employee take leave. So if you find that the State Department's agents denied Dr. Coulibaly the right to take leave to which he was entitled under the FMLA, you must find that the State Department interfered with Dr. Coulibaly's FMLA rights.

A third form of interference occurs if the employer terminates the employee to prevent him from taking leave. So if you find that the State Department's agents terminated Dr. Coulibaly to prevent him from taking FMLA leave in the future, you must find that the State Department interfered with Dr. Coulibaly's FMLA rights.

Finally, in order to prove his FMLA interference claim, Dr. Coulibaly

must establish that he suffered prejudice as a result of any way or ways in which you conclude that the Department of State interfered with Dr. Coulibaly's FMLA rights.  In this case, Dr. Coulibaly argues that he suffered prejudice in the form of termination of his employment. Therefore, you must decide whether any form of interference you conclude the State Department engaged in played a substantial part in bringing about and directly resulted in Dr. Coulibaly's termination.  If it did, then you must find that Dr. Coulibaly has proven his FMLA interference claim.

**FMLA Interference Claim– Covered Employee**

To receive the protections of the FMLA, an employee must be what is called a covered employee. To become a covered employee, an employee must have been employed by his employer for at least 12 months and must have worked at least 1,250 hours during the 12-month period immediately preceding the beginning of the leave period.

In this case, the parties have stipulated that Dr. Coulibaly performed his job duties as a French language instructor at FSI for at least 1,250 hours of service during the 12-month period immediately preceding February 15, 2012, and also during the 12-month period immediately preceding March 28, 2012. The parties have also stipulated that Dr. Coulibaly worked as a contract French language instructor at FSI from June 1999 to June 19, 2011, when he was hired as a "direct-hire" French language instructor by FSI. The parties have also stipulated that Dr. Coulibaly was terminated on April 6, 2012. Thus, to meet the twelve-month requirement, Dr. Coulibaly must have qualified as a "covered employee" during his time as a contract instructor.

The employment status of an employee does not turn on technical concepts such as job title or whether the employee was characterized as an independent contractor during some of the employee's eligibility period. Rather, an employee's status turns on the economic reality of his employment. It is your task to consider whether Dr. Coulibaly should be considered a covered employee. The following factors are relevant to this determination, but are not exhaustive:

(1) Whether the State Department's agents had the power to hire and fire Dr. Coulibaly;

(2) Whether the State Department's agents supervised and controlled Dr. Coulibaly's work schedules or conditions of employment;

3) Whether the State Department's agents determined the rate and method of Dr. Coulibaly's compensation; and

(4) Whether the State Department's agents maintained Dr. Coulibaly's employment records.

**FMLA Interference Claim – Entitlement to Take Leave**

For the third element of Dr. Coulibaly's FMLA interference claim, you must decide whether Dr. Coulibaly was entitled to take leave. Dr. Coulibaly was entitled to take leave if he had what is known as a qualifying reason such as a serious health condition and gave the State Department appropriate notice of his need to be absent from work.

A serious health condition is defined as an illness, injury, impairment, or physical or mental condition that involves inpatient care or continuing treatment by a healthcare provider.

A "serious health condition involving continuing treatment by a health care provider" includes any one or more of the following:

First, a serious health condition can involve a condition resulting in incapacity or continuing treatment that makes an employee unable to perform the functions of their position. This means a period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves one or both of the following:

> (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

A "health care provider" is defined as a doctor of medicine or osteopathy who is authorized to practice medicine or surgery by the State in which the doctor practices or persons determined by the

Secretary of Labor to be capable of providing health care services.

"Treatment by a health care provider" means an in-person visit to a health care provider. The first (or only) in-person treatment visit must take place within seven days of the first day of incapacity. The term "extenuating circumstances" in this context means circumstances beyond the employee's control that prevent the follow-up visit from occurring as planned by the health care provider. For example, extenuating circumstances exist if a health care provider determines that a second in-person visit is needed within the 30-day period, but the health care provider does not have any available appointments during that time period. Whether additional treatment visits or a regimen of continuing treatment is necessary within the 30-day period shall be determined by the health care provider.

Second, a chronic condition can be a serious health condition. A chronic condition is any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which satisfies each of three requirements:

> (1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;
>
> (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>
> (3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

An absence attributable to incapacity for a chronic condition qualifies for FMLA leave even if the employee does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three consecutive, full calendar days.

Third, a permanent or long-term condition can be a serious health

condition. This means a period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective. The employee or family member must be under the continuing supervision of, but need not be receiving active treatment by, a health care provider.

If you find that Dr. Coulibaly suffered from any of these types of conditions, then he suffered from a serious health condition and was entitled to take FMLA leave so long as he satisfied his duty to provide appropriate notice to his employer. Appropriate notice is defined in a separate instruction.

**FMLA Interference Claim – Appropriate Notice**

As I mentioned, for the fourth element of Dr. Coulibaly's FMLA interference claim, you must decide whether Dr. Coulibaly gave FSI appropriate notice of his intent to take FMLA leave.

Appropriate notice is given when: (1) an individual foresees the need for leave and notices the employer at least 30 days before the leave was to begin, or (2) if an individual could not foresee the need for leave, the individual notices the employer as soon as practicable after he learned of the need for leave.

Further, if the need for leave for a serious condition is foreseeable based on planned medical treatment, the employee

> (1) Shall make a reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the employer subject to the approval of the health care provider of the employee, as appropriate, and

> (2) Shall provide the employer with not less than 30 days' notice, before the date the leave is to begin, except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable.

An employee's notice must provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request, including information about the condition that renders the employee unable to work and the anticipated duration of his absence, if it is known. An employee need not specifically request FMLA leave. Calling in sick without providing more information will not be considered sufficient notice to trigger an employer's obligations under the FMLA. An employee has an obligation to respond to an employer's questions designed to determine whether an absence is potentially FMLA-qualifying.

Moreover, an employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave. Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied.

**FMLA – Elements of Retaliation Claim**

In addition to his FMLA interference claim, Dr. Coulibaly also brings a second claim under the FMLA, in which he alleges that the Department of State retaliated against him for engaging in protected activity under the FMLA. The Department of State is a government agency, which can only act through individuals as its agents or employees. A government agency is responsible for the acts of its supervisors and managers.

To prevail on this claim, Dr. Coulibaly must prove three elements by a preponderance of the evidence:

First, that he engaged in protected activity under the FMLA. If you find that Dr. Coulibaly was a covered employee who was entitled to take FMLA leave and properly notified the State Department of his intention to take leave, then you must find that this element is satisfied.

Second, that Dr. Coulibaly was subjected to an adverse employment action. There is no dispute that Dr. Coulibaly was terminated and that termination is an adverse employment action, so this element is satisfied.

Third, that there was a causal connection between the protected activity and the adverse employment action. This connection may be shown in many ways. Evidence that may bear on causation includes, but is not limited to: temporal proximity of an adverse action close on the heels of protected activity; evidence that an employer is lying about the underlying facts of its decisions; changes or inconsistencies in an employer's reasons for a decision; an employer's failure to follow established procedures or criteria; an employer's relatively worse treatment of employees who have asserted their FMLA rights as compared with those who have not; antagonism shown toward Dr. Coulibaly or a change in demeanor toward Dr. Coulibaly; and evidence that an employer has retaliated against other employees for asserting their FMLA rights. It is up to you to draw whatever reasonable inferences and conclusions you feel are justified in the light of your

experience and common sense based on the evidence presented.

Ultimately, you must decide whether Dr. Coulibaly's protected activity had a determinative effect on his termination. "Determinative effect" means that if not for the protected activity, Dr. Coulibaly would not have been subjected to the termination.

Even if the ultimate decision-maker did not act with a retaliatory motive, you may still find Dr. Coulibaly's termination was causally connected with Dr. Coulibaly's protected activity if someone who knew about the protected activity influenced the decision-maker against Dr. Coulibaly, and because of that influence, the decision-maker terminated Dr. Coulibaly. The person who influenced the decision-maker must have been motivated by an intent to retaliate against Dr. Coulibaly, but the decision-maker does not need to have had a retaliatory motive and need not have known about the retaliatory motive on the part of the person who held the influence.

In this case, the Department of State claims that it terminated Dr. Coulibaly based on legitimate, non-retaliatory reasons. Dr. Coulibaly responds that the Department of State's stated reasons are untrue, or are pretext for what he claims is the true reason for the termination— retaliation. If you find that Defendant's stated reasons for its actions are pretext—that is, untrue—you may, but are not required to, conclude that the State Department's real motivation was to retaliate against Dr. Coulibaly for engaging in activity protected under the FMLA. In determining whether the reasons put forward by the State Department's agents for the termination were the real reasons for the termination, you may consider whether the State Department's agents treated employees who did not engage in protected activity better than Dr. Coulibaly, whether the State Department's agents gave inconsistent explanations for the termination, whether the State Department's agents deviated from established procedures or criteria, whether the State Department's agents engaged in a pattern of poor treatment of others who engaged in protected activity, or whether there is other evidence that you conclude

shows an improper motive.  To prove retaliation, Dr. Coulibaly bears the burden of proving by a preponderance of the evidence that the Department of State's asserted non-retaliatory reason was not the actual reason and that it retaliated against him based on protected activity.  The Department of State does not have to prove that it did not retaliate against Dr. Coulibaly.

**Instructions to be Considered as a Whole (D.C. Std. Civ. Jury Instr. No. 3-1)**

Before I excuse you to deliberate, I want to discuss a few final matters with you.

During your deliberations, you must consider the instructions as a whole. All of the instructions are important. You must not ignore or treat any single instruction or part of an instruction differently than the other instructions.

**Selection of Foreperson (D.C. Std. Civ. Jury Instr. No. 3-2)**

When you return to the jury room, you should first select a foreperson to preside over your deliberations and to be your spokesperson here in court. Consider selecting a foreperson who will encourage civility and mutual respect, who will invite each juror to speak up regarding his or her views about the evidence, and who will promote full and fair consideration of the evidence.

## Notetaking By Jurors

During the trial, I have permitted those jurors who wanted to do so to take notes. You may take your notebooks with you to the jury room and use them during your deliberations if you wish. As I told you at the beginning of the trial, your notes are only to be an aid to your memory. They are not evidence in the case, and they should not replace your own memory of the evidence. Those jurors who have not taken notes should rely on their own memory of the evidence. The notes are intended to be for the notetaker's own personal use.

49

*Coulibaly v. Blinken*, 14-cv-712

**Unanimity and Duty to Deliberate (D.C. Std. Civ. Jury No. 3-3)**

The verdict must represent the considered judgment of each juror. In order to return a verdict, your verdict must be unanimous—that is, each juror must agree to the verdict.

Each of you has a duty to consult with other jurors in an attempt to reach a unanimous verdict. You must decide the case for yourself, and you should not surrender your honest beliefs about the effect or weight of evidence merely to return a verdict or solely because of other jurors' opinions. However, you should seriously consider the views of your fellow jurors, just as you expect them seriously to consider your views, and you should not hesitate to change an opinion if you are convinced by other jurors.

Remember that you are not advocates but neutral judges of the facts. You will make an important contribution to the cause of justice if you arrive at a just verdict in this case. Therefore, during your deliberations, your purpose should not be to support your own opinion but to determine the facts.

## Beginning of Deliberations (D.C. Std. Civ. Jury Instr. No. 3-4)

It may not be useful for a juror, at the start of deliberations, to announce a determination to stand for a particular verdict. When a juror announces a firm position at the outset, the juror may hesitate to back away after discussion with other jurors.

Furthermore, many juries find it useful to avoid a vote at the very beginning of deliberations. Calmly reviewing and discussing the case is often a more useful way to begin. Remember that you are not partisans or advocates, but judges of the facts.

## Communications Between Court and Jury (D.C. Std. Civ. Jury Instr. No. 3-5)

If it becomes necessary during your deliberations to communicate with me, you may send a note, signed by your foreperson or by one or more members of the jury. If you have a note, provide it to Ms. Johnson who will get the note and give it to me. If you are divided on any matter, you should not reveal in any note or otherwise how the jury is divided.

**Delivering the Verdict (D.C. Std. Civ. Jury Instr. No. 3-7)**

When you have reached your verdict, send me a note—signed by the foreperson—telling me you have reached your verdict. Do not tell me in the note what your verdict is. I will put a verdict form in the front of the binder with the instructions. The foreperson should fill out and sign the verdict form. I will then call you into the courtroom and ask the foreperson for the verdict form and for your verdict.

**Verdict Form Explanation**

You will be provided with a Verdict Form for use when you have concluded your deliberations.  The form is not evidence in this case, and nothing in it should be taken to suggest or convey any opinion by me as to what the verdict should be.  Nothing in the form replaces the instructions of law I have already given you, and nothing in it replaces or modifies the instructions about what the plaintiff or the defendant must prove by a preponderance of the evidence. The form is meant only to assist you in recording your verdict.

The form consists of some questions that you must answer.  You should record your verdict on that form only after you have reached a unanimous verdict.  It should then be signed and dated by the foreperson.

If you think it might help you in your deliberations, you may consider reviewing the verdict form early in your deliberations to get a sense of the issues you will need to address.

## Cautionary Instruction On Publicity, Communication, And Research

I would like to remind you again that, in some cases, although not necessarily this one, there may be reports in the newspaper or on the radio, internet, or television concerning this case.  If there should be such media coverage in this case, you may be tempted to read, listen to, or watch it.  As I have told you before, you must not read, listen to, or watch such reports because you must decide this case solely on the evidence presented in this courtroom.  If any publicity about this trial inadvertently comes to your attention, do not discuss it with other jurors or anyone else.  Just let me or Ms. Johnson know as soon after it happens as you can, and I will then briefly discuss it with you.

As you retire to the jury room to deliberate, I also wish to remind you of an instruction I gave you at the beginning of the trial.  During deliberations, you may not communicate with anyone not on the jury about this case or provide any information to them by any means.  This includes any electronic communication such as email, text or Facebook or any blogging about the case.  In other words, you cannot talk to anyone on the phone, correspond with anyone, or communicate with anyone, in any way, about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

In addition, you may not conduct any independent investigation during deliberations. This means you may not conduct any research in person or electronically via the internet or in another way.

In fairness to both sides, it is essential that you comply with this instruction.  Thus, I expect that one of you will inform me as soon as you become aware of another juror's violation of these instructions.

## Furnishing The Jury With A Copy Of The Instructions

Upon your request, I will provide you with a copy of these instructions. During your deliberations, you may, if you want to, refer to these instructions. While you may refer to any particular portion of the instructions, you are to consider the instructions as a whole and you may not follow some and ignore others. The fact that you have been provided a copy of these instructions should not discourage you from making an inquiry regarding the meaning of these instructions if necessary. Please return the instructions to Ms. Johnson when your verdict is rendered.